UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.: 05-11745RWZ

| | | |
|---|---|---|
| BARBARA DEIGHTON HAUPT, Trustee | ) | |
| of BD REALTY TRUST, | ) | |
|         Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THE TOWN OF WAREHAM acting by | ) | **CORRECTED** |
| and through the BOARD OF | ) | |
| SELECTMEN OF THE TOWN OF | ) | |
| WAREHAM, and the BOARD OF | ) | |
| SELECTMEN OF THE TOWN OF | ) | |
| WAREHAM, | ) | |
|         Defendants | ) | |

## JOINT PRETRIAL MEMORANDUM

**I.**      **Summary of Evidence**

    A.    Plaintiff's Evidence

        On August 31, 2000, Plaintiff Barbara Deighton Haupt, purchased the 5.35 acre parcel of beachfront property located at 200 Swifts Beach Road in Wareham, Massachusetts. Consistent with the use of the property dating back to the 1950's, Plaintiff operated a seasonal parking lot on the premises, where the public was allowed to pay a per diem fee to park and use the beach. During her ownership Plaintiff also undertook plans to develop a portion of the property as the site for a two-family dwelling and began to plan out a membership beach club use for the site adjacent to the residential dwelling. On December 31, 2003, the Town of Wareham made a taking of all of Plaintiff's property by eminent domain. The Plaintiff is entitled to compensation for the Town's taking based on the highest and best use of the premises. The highest and best use of the premises is as a 250-membership non-profit recreational beach club with clubhouse facility and attendant parking of 125 spaces, which has a fair market value of $3,125,000.00.

    B.    Defendant's Evidence

        The evidence will show that a very modest portion of the Property is free of the regulatory limitations of the Wareham Conservation Commission, Massachusetts Department of Environmental Protection and the United States Army Corps of Engineers. As a result any proposed plan by the plaintiff which requires significant use of the

Property for parking would not have been allowed. Thus, plaintiff's proposed c. 40B project which proposes a parking area within the aforesaid resource areas would not be legally feasible; likewise with the plaintiff's proposed non-profit beach club which, again requires significant parking areas in the resource areas.

Accordingly, the evidence will show that the Highest and Best use of the Property will be for the construction of a residential structure with limited attendant parking. Moreover, since environmentally sensitive open space/areas are often acquired by entities interested in their preservation the remaining open space could be conveyed to such a group, the open space has additional value. Therefore, the evidence will show that the fair cash value of the Property at the date of taking was $730,500.00

## II.    Joint Statement of Stipulated Facts

1.    This is an action pursuant to M.G.L. c. 79 for damages arising out of the eminent domain taking by the Town of Wareham of property located at 200 Swifts Beach Road in Wareham, Massachusetts (the "Premises") which was owned on the date of taking by Barbara Deighton (n/k/a Barbara Deighton Haupt), Trustee of BD Realty Trust ("Plaintiff") under Declaration of Trust dated September 9, 1997 and recorded with the Plymouth County Registry of Deeds in Book 15487, Page 245.

2.    The Town of Wareham took the Premises by Order of Taking duly recorded at the Plymouth County Registry of Deeds on December 31, 2003. This is the date on which damages vest.

3.    The taking was for a valid public purpose.

4.    The Premises are comprised of a parcel of land consisting of 5.35 acres of waterfront property with beach frontage on Buzzards Bay.

5.    The Premises are shown on the Town of Wareham Assessors Plat 50B as Lots B-1, E and an unnumbered lot.

6.    The Premises has frontage on both Swifts Beach Road and Wankinco Avenue.

7.    As of the date of taking, the Premises were designated by the Town of Wareham Zoning Bylaw as being located in the "Residential R-30 District".

8.    The Premises are located within a VE Zone as established by the Flood Insurance Rate Map for the Town of Wareham.

9.    On October 18, 2000, the Wareham Conservation Commission approved the Abbreviated Notice of Resource Area Delineation ("ANRAD") plan of the Premises entitled "Plan Accompanying Abbreviated Notice of Resource Area Delineation on Land in Wareham, MA prepared for Glick Realty Corporation", drawn by Thompson Surveying & Engineering, Inc., dated May 4, 2000 and

revised through June 19, 2000.

10.     Pursuant to 310 CMR 10.05(6)(a)(3), Orders of Resource Area Delineations ("ORAD") are valid for three (3) years once approved by a conservation commission.

11.     The ORAD for the Premises issued by the Wareham Conservation Commission to Plaintiff on October 18, 2000, expired on October 18, 2003.

12.     The ANRAD plan accurately depicts the extent and location of barrier beach (which is comprised of coastal dunes and coastal beach) that existed on the Premises on the date of taking.

13.     On August 12, 2003, the Massachusetts Department of Environmental Protection ("DEP") issued a Superceding Order of Conditions to the Plaintiff which authorized work to proceed on the Premises, as shown on a plan entitled "Plan of Land in Wareham, Mass. Prepared for BD Realty Trust", drawn by Vautrinot Land Surveying, Inc., dated May 7, 2001 and revised through March 28, 2003 ("3/28/2003 Vautrinot Plan").

14.     The location of the proposed dwelling shown on the 3/28/2003 Vautrinot Plan would not be located within coastal dune, barrier beach or land under the ocean on the date of taking.

15.     The Massachusetts Wetlands Protection Act does not include any performance standards for land subject to coastal storm flowage.

16.     The elevation of the Highest (Predictable) High or Highest Spring Tide line is higher in elevation than the elevation of Mean High Water.

17.     A structure could have been built on the Premises on the date of taking, which would have been in compliance with the Town of Wareham Zoning Bylaw, the Massachusetts Wetlands Protection Act (and the regulations promulgated thereunder), the Town of Wareham Wetlands Protection Bylaw and the Federal Clean Water Act-Section 404 Wetland Regulations.

18.     A sewer connection is available for the Premises.

19.     The Town of Wareham Zoning Bylaws, as revised through April 28, 2003, were in effect on the date of taking.

20.     The Wareham Zoning Bylaws do not contain parking regulations for the number of parking spaces needed for a beach club use or non-profit recreational purpose.

21.     As of the date of taking, the Premises were not within a Riverfront Area as defined by the Massachusetts Wetlands Protection Act and the regulations

promulgated thereunder.

22.     As of the date of taking, the Premises were not within an Area of Critical Environmental Concern.

23.     As of the date of taking, there were no Outstanding Resource Waters existing on the Premises.

24.     As of the date of taking, the Town of Wareham had not achieved either the ten (10%) percent threshold of its total housing units as being subsidized low and moderate income housing units, or the 1.1% threshold of sites comprising the total land area zoned for residential, commercial or industrial use as prescribed by 760 CMR 31.06(5).

25.     The parties' appraisers may testify to the sales price of the comparable sales they each used to determine the value of the Premises without the need to call the parties to those comparable sales to testify to the sales prices or the other circumstances of those sales.  Anthony's Pier Four, Inc. v. HBC Assoc., 411 Mass. 451 (1991).

**III.     Contested Issues Of Fact**

A.     Plaintiff's Contested Issues of Fact

1.     Plaintiff originally acquired the Premises on August 31, 2000.

2.     The Premises are comprised of a parcel of land consisting of 5.35 acres of waterfront property with beach frontage on Buzzards Bay.

3.     The Premises has approximately 660 feet of beach frontage along Buzzards Bay.

4.     Since the 1950's, the Premises has been used seasonally for beach use and attendant on-site parking, including, at various times a food concession stand and shower and rest rooms facilities.

5.     The Wareham Conservation Commission did not issue any enforcement orders pursuant to the state Wetlands Protection Act or the local Wareham wetlands bylaw relative to the use of the Premises for parking during the period that Plaintiff owned the Premises, including parking within or upon bordering vegetated wetlands, coastal dunes, barrier beach or salt marsh.

6.     The DEP did not issue any enforcement orders pursuant to the state Wetlands Protection Act relative to the use of the Premises including parking within or upon bordering vegetated wetlands, coastal dunes, barrier beach or salt marsh.

7.    The Premises are located within a VE Zone as established by the Flood Insurance Rate Map for the Town of Wareham.

8.    The ANRAD plan does not accurately depict the location and existence of "salt marsh" (as defined by 310 CMR 10.32) on the Premises as of the date of taking.

9.    The ANRAD plan does not accurately depict the location and existence of "bordering vegetated wetlands" (as defined by 310 CMR 10.55) as of the date of taking.

10.    The ANRAD plan accurately depicts the extent and location of coastal dunes that existed on the Premises as of the date of taking.

11.    The ANRAD plan accurately depicts the extent and location of barrier beach (which is comprised of coastal dunes and coastal beach) that existed on the Premises on the date of taking.

12.    The practice of the DEP has been to allow alteration to areas within land subject to coastal storm flowage when the performance standards for other overlapping coastal resource areas have been met.

13.    On August 25, 2003, the Wareham Conservation Commission, as authorized by the Board of Selectmen, sought an adjudicatory hearing appealing the DEP's Superceding Order of Conditions.

14.    The Massachusetts Division of Administrative Law Appeals has stayed the appeal of the Superceding Order of Conditions due to the present ongoing litigation.

15.    Projects within tidally influenced areas are exempt from Standard 2 of the DEP Stormwater Management Program.

16.    The Town of Wareham has issued and approved building permits in the VE zone.

17.    The Wareham Zoning Bylaw has not been applied or interpreted to prevent new construction or other land development in the VE zone.

18.    On the date of taking, the area shown as "limit of parking area" on the 3/28/2003 Vautrinot Plan did not contain salt marsh.

19.    On the date of taking, the area shown as "limit of parking area" on the 3/28/2003 Vautrinot Plan did not contain bordering vegetated wetland.

20.    On the date of taking, the area shown as "limit of parking area" on the 3/28/2003 Vautrinot Plan did not contain other resource areas that would prevent the use of this area for parking accessory to a non-profit recreational beach club use as shown on the "Conceptual Beach Club Plan [Dwg. C-2]" prepared by McKenzie

Engineering Group, Inc., dated March 28, 2006.

21.     On the date of taking, the area shown as "limit of parking area" on the 3/28/2003 Vautrinot Plan did not contain other resource areas that would prevent the use of this area for parking accessory to a non-profit recreational beach club use as shown on the "Conceptual Beach "Clubhouse" Building Plan [Dwg. C-3]" prepared by McKenzie Engineering Group, Inc., dated September 19, 2006.

22.     On the date of taking, the area shown as "limit of parking area" on the 3/28/2003 Vautrinot Plan did not contain other resource areas that would prevent the use of this area for parking accessory to a 40-unit M.G.L. c.40B project as shown on the "Conceptual Comprehensive Permit Plan [Dwg. C-1]" dated March 28, 2006, prepared by McKenzie Engineering Group, Inc.

23.     Vehicles have been permitted to park on the area shown as "limit of parking area" on the 3/28/2003 Vautrinot Plan since the 1950s.

24.     On the date of taking, 125 parking spaces could have been laid out within the area shown as "limit of parking area" on the 3/28/2003 Vautrinot Plan.

25.     A beach club would be permitted to operate at a ratio of two (2) memberships per one (1) parking space under the Article VI (Parking Regulations) of the Wareham Zoning Bylaw.

26.     The highest and best use of the Premises is a non-profit recreational beach club with attendant parking.

27.     The number of memberships of a beach club on the Premises would be limited by the size of the associated parking area that would be feasible under the provisions of the Wareham Zoning Bylaws pertaining to the design of parking areas and limits on the size of accessory uses.

28.     On the date of taking, the fair market value of the Premises for use as a 250-membership non-profit recreational beach club with clubhouse facility and attendant parking of 125 spaces, as shown on the "Conceptual Beach "Clubhouse" Building Plan [Dwg. C-3]" prepared by McKenzie Engineering Group, Inc., dated September 19, 2006, is $3,125,000.00.

29.     On the date of taking, the fair market value of the Premises for use as a 250-membership non-profit recreational beach club without clubhouse facility, but with attendant parking of 125 spaces, as shown on the "Conceptual Beach Club Plan [Dwg. C-2]" prepared by McKenzie Engineering Group, Inc., dated March 28, 2006, is $2,812,500.00.

30.     If the highest and best use of the Premises is as a 40-unit condominium development under M.G.L. c. 40B as shown on the "Conceptual Comprehensive

6

Permit Plan [Dwg. C-1]" dated March 28, 2006, prepared by McKenzie Engineering Group, Inc., then on the date of taking, the fair market value of the Premises is $3,000,000.00.

31.    A M.G.L. c. 40B project on the Premises would require review by the Wareham Conservation Commission to review impacts to wetlands, as required under the Massachusetts Wetland Protection Act, M.G.L. c. 131, § 40.

32.    If the highest and best use of the Premises is as a two-family residence sited approximately as shown on the "Plan of Land in Wareham, Mass. Prepared for BD Realty Trust", drawn by Vautrinot Land Surveying, Inc., dated May 7, 2001 and revised through March 28, 2003, then on the date of taking, the fair market value of the Premises is $1,200,000.00.

33.    Swimming in the ocean, kayaking, sunbathing, boating, picnicking and all recreational activities for which beach property is seasonally used are "recreational purposes".

34.    A beach area operated by a corporation organized under M.G.L. c. 180, at which a defined and limited membership can enjoy swimming, sunbathing, kayaking and other recreational pursuits, but from which the general public is excluded, which does not offer "temporary memberships", and which does not pay dividends to its members, officers or directors, would, at the time of the taking, have constituted a "nonprofit recreational use" allowed by right at the Premises under the Wareham Zoning Bylaw.

35.    The use of a portion of the Premises for parking accessory to a nonprofit recreational use at the Premises would be allowed by right under the Wareham Zoning Bylaw.  See Article VI of Wareham Zoning Bylaw.

36.    The use of the Premises as shown on the "Conceptual Beach "Clubhouse" Building Plan [Dwg. C-3]" prepared by McKenzie Engineering Group, Inc., dated September 19, 2006 would have complied with the Massachusetts Wetlands Protection Act (and regulations promulgated thereunder), Wareham Zoning Bylaw, Wareham wetlands bylaw and the federal Clean Water Act on the date of taking.

37.    The use of the Premises as shown on the "Conceptual Beach "Clubhouse" Building Plan [Dwg. C-3]" prepared by McKenzie Engineering Group, Inc., dated September 19, 2006 would have complied with the dimensional requirements set forth in the Wareham Zoning Bylaw on the date of taking.

38.    The use of the Premises as shown on the "Conceptual Beach "Clubhouse" Building Plan [Dwg. C-3]" prepared by McKenzie Engineering Group, Inc., dated September 19, 2006 would have been permitted to be constructed in the VE

Zone.

39.     The use of the Premises as shown on the "Conceptual Beach Club Plan [Dwg. C-2]" prepared by McKenzie Engineering Group, Inc., dated March 28, 2006 would have complied with the Massachusetts Wetlands Protection Act (and regulations promulgated thereunder), Wareham Zoning Bylaw, Wareham wetlands bylaw and the federal Clean Water Act on the date of taking.

40.     The use of the Premises as shown on the "Conceptual Beach Club Plan [Dwg. C-2]" prepared by McKenzie Engineering Group, Inc., dated March 28, 2006 would have complied with the dimensional requirements set forth in the Wareham Zoning Bylaw on the date of taking.

41.     The use of the Premises as shown on the "Conceptual Comprehensive Permit Plan [Dwg. C-1]" dated March 28, 2006, prepared by McKenzie Engineering Group, Inc. would have complied with the Massachusetts Wetlands Protection Act (and regulations promulgated thereunder), the federal Clean Water Act, the National Flood Insurance Program and the Massachusetts State Building Code on the date of taking.

42.     The Premises could lawfully have been used for a 40-unit condominium development, as shown on the "Conceptual Comprehensive Permit Plan [Dwg. C-1]" dated March 28, 2006, prepared by McKenzie Engineering Group, Inc., having a 25% affordable housing component under a comprehensive permit issued by the Wareham Zoning Board of Appeals pursuant to Massachusetts General Laws Chapter 40B.

43.     The existence and amount of the *pro tanto* payment shall not be disclosed to the jury.

44.     The original purchase price paid by the Plaintiff for the Premises shall not be disclosed to the jury.

45.     The assessed value of the Premises shall not be disclosed to the jury.

46.     There shall be no reference to or evidence concerning the impact that a jury verdict in favor of the Plaintiff could possibly have upon citizens and taxpayers, including but not limited to increased tax rates or increase in public project costs.

47.     There shall be no reference to or evidence concerning any purported general increase in property values or local economic boost, etc., which could purportedly result from the public taking project.

48.     The availability of pre- and post- judgment interest will not be divulged to the jury.

Plaintiff reserves the right to seasonably supplement this list of contested facts.

B.      Defendant's Contested Issues of Fact

1.      The Premises has approximately 660 feet of beach frontage along the Wareham River portion of Buzzards Bay.

2.      The use of any portion of the Premises for parking accessory to any recreational use or multifamily use is subject to MA Wetlands Protection Act and Federal Corps of Engineers Section 404-Wetlands approval.  Filling, alteration and destruction of vegetated wetland to provide parking area is not allowed.

3.      Even if a beach club would be permitted to operate at a ratio of two (2) memberships per one (1) parking space under the Article VI (Parking Regulations) of the Wareham Zoning Bylaw, the size of the parking area that could be permitted on the Premises remains in dispute.  The "Conceptual Beach "Clubhouse" Building Plan [Dwg. C-3]" prepared by McKenzie Engineering Group, Inc., dated September 19, 2006, shows a parking area that CANNOT be constructed under applicable 2003 MA Wetlands Protection Act Regulations at 310 CMR 10.00, as construction of portions of said parking area would destroy saltmarsh resource area and thus, NOT be permissible under those regulations.  In addition, the proposed parking area would destroy vegetated wetland subject to federal US Army Corps of Engineers jurisdiction under Section 404-Wetlands.

4.      The use of the Premises as shown on the "Conceptual Beach Club Plan [Dwg. C-2]" prepared by McKenzie Engineering Group, Inc., dated March 28, 2006 would NOT have complied with the wetlands permitting requirements set forth in the MA Wetlands Protection Act Regulations.

5.      The use of the Premises as shown on the "Conceptual Beach Club Plan [Dwg. C-2]" prepared by McKenzie Engineering Group, Inc., dated March 28, 2006 would NOT have complied with the requirements of the Federal Clean Water Act (33 U.S.C. 1344) and Section 404-Wetlands Regulations (33 CFR Parts 320 through 330) on the date of taking.

6.      The use of the Premises for G.L. c. 40B housing as proposed by the plaintiff would NOT comply with the requirements of the Federal Clean Water Act (33 U.S.C. 1344) and Section 404-Wetlands Regulations (33 CFR Parts 320 through 330) on the date of taking.

7.      The use of the Premises for G.L. c.40B housing as proposed by the plaintiff is too speculative as to the amount of units that ultimately would be permitted to serve as a basis for arriving at the Highest and Best use of Premises.

8. The ORAD for the Premises issued by the Wareham Conservation Commission to Plaintiff on October 18, 2000, expired on October 18, 2003. However, when the MA DEP issued their Superseding Order of Conditions on August 12, 2003 (prior to the ORAD expiration date), the Department adopted the ORAD delineation of the resource area boundaries, thus, effectively extending the wetland resource area delineations until August 12, 2006.

9. There is "saltmarsh" resource area on the Premises but, ANRAD plan does not accurately depict the location and extent of the "salt marsh" (as defined by 310 CMR 10.32) on the Premises as of the date of taking.

10. There is "bordering vegetated wetland" resource area on the Premises but, the ANRAD plan does not accurately depict the location and extent of "bordering vegetated wetlands" (as defined by 310 CMR 10.55) as of the date of taking.

11. The location of the proposed dwelling shown on the 3/28/2003 Vautrinot Plan would not be located within coastal dune, barrier beach or land under the ocean on the date of taking. The location of the proposed dwelling would be located within a coastal dune.

12. A structure could have been built on the Premises on the date of taking, which would have been in compliance with the Town of Wareham Zoning Bylaw, the Massachusetts Wetlands Protection Act (and the regulations promulgated thereunder), the Town of Wareham Wetlands Protection Bylaw and the Federal Clean Water Act-Section 404 Wetland Regulations. Said structure would have been limited to a pile supported 62.5-ft x 50-ft building with a first floor elevation of 21+-ft, sitting 13+ feet above the ground surface.

13. A c. 40B project on the Premises would require review by numerous state and federal regulatory agencies since the proposed project would fall within state and federally protected wetland resource areas.

14. The Premises are located within a FEMA designated VE Zone as established by the Flood Insurance Rate Map for the Town of Wareham. A VE-Zone is a High Hazard Area. The VE-Zone as delineated at this site is mapped as subject to wave impacts (a wave greater than 3-feet high) and subject to flooding up to a 100-year storm elevation of 20-ft NGVD, 12 feet higher than the highest ground elevation on this site.


**IV. Jurisdictional Questions**

None.

V.     **Questions Raised By Pending Motions**

A.     Plaintiff's Anticipated Pre-Trial Motions

   1.  Motion in limine to bar evidence of assessed value of Premises

   2.  Motion in limine to bar evidence of Plaintiff's purchase price for the Premises

   3.  Motion in limine to bar evidence of *pro tanto* payment (but that such sum will be deducted from any jury award of damages to Plaintiff)

   4.  Motion in limine to bar reference to or evidence of the availability of pre- and post-judgment interest

   5.  Motion in limine to bar reference to or evidence concerning the impact that a jury verdict in favor of the Plaintiff could possibly have upon citizens and taxpayers, including but not limited to increased tax rates or increase in public project costs.

   6.  Motion in limine to bar reference to or evidence concerning any purported general increase in property values or local economic boost, etc. which could purportedly result from the public taking project.

   7.  Motion in limine to bar any evidence of appraisal undertaken by John P. Mello on behalf of the Town of Wareham

   8.  Motion to strike comparable sales information of Richard Dennis

   9.  Motion in limine/Daubert challenge to bar/limit Robert Daylor's testimony regarding wetlands on the Premises

  10. Motion in limine/Daubert challenge to bar/limit Mark Bobrowski's testimony of opinions not previously disclosed to Plaintiff including
      1.  additional opinion or expert testimony regarding the permitting of a M.G.L. c.40B project
      2.  any opinion or expert testimony regarding the permitting of the premises as a non-profit beach club facility with our without associated building structure, and
      3.  any opinion or expert testimony regarding zoning interpretation of permissible/impermissible uses under the Wareham Zoning Bylaw

  11. Motions for legal rulings on various aspects of Wareham Zoning Bylaw including whether swimming in the ocean, kayaking, sunbathing, boating, etc. are "recreational purposes"; whether a nonprofit recreational beach club is allowed as of right; whether use of a portion of the Premises for parking accessory to a nonprofit recreational use is allowed as of right; and the ratio of parking spaces to

memberships required for a nonprofit recreational beach club.

12. Motions for legal rulings on various aspects of the federal Clean Water Act and the Massachusetts Wetland Protection Act.

B.    Defendant's Anticipated Pre-Trial Motions

Motion in limine to exclude evidence or testimony of a lease agreement between Sauvageau and BD Realty;

Motion in limine to exclude photographs of prior uses of the Premises;

Motion in limine to exclude plaintiff's August 31, 2003 video of the Premises;

Motion in limine to exclude the Draft Waterways License issued by DEP pursuant to 310 CMR 9.14(2)(b);

Motion in limine to exclude Army Corps of Engineers letter dated August 23, 2003 responding to Plaintiff's application for groin permit;

Motion in limine to exclude Town of Wareham Zoning Board of Appeals Chart entitled "40B Projects Approved and Pending"

Motion in limine to exclude all supplemental reports including all comparables used by plaintiff's expert appraiser Mr. Elliot filed by plaintiff's experts because said supplemental reports were untimely filed.

## VI.    Issues of Law and Supporting Authority

A.    Plaintiff's Issues of Law

1.    Whether a corporation organized under G.L. c. 180, at which a defined and limited membership can enjoy swimming, sunbathing, kayaking and other recreational pursuits, but from which the general public is excluded, which does not offer "temporary memberships," and which does not pay dividends to its members, officers or directors, would, at the time of the Taking, have constituted a "non-profit recreational use" allowed by right at the Premises under the Wareham Zoning By-law. See Kiss v. Bd. of Appeals of Longmeadow, 371 Mass. 147 (1976).

2.    Swimming in the ocean, kayaking, sunbathing, boating, picnicking and all recreational activities for which beach property is seasonally used are "recreational purposes".

3.    A beach area operated by a corporation organized under M.G.L. c. 180, at which a defined and limited membership can enjoy swimming, sunbathing, kayaking and

other recreational pursuits, but from which the general public is excluded, which does not offer "temporary memberships", and which does not pay dividends to its members, officers or directors, would, at the time of the taking, have constituted a "nonprofit recreational use" allowed by right at the Premises under the Wareham Zoning Bylaw.

4.      The use of a portion of the Premises for parking accessory to a nonprofit recreational use at the Premises would be allowed by right under the Wareham Zoning Bylaw.  See Article VI of Wareham Zoning Bylaw.

5.      The use of the Premises as shown on the "Conceptual Beach "Clubhouse" Building Plan [Dwg. C-3]" prepared by McKenzie Engineering Group, Inc., dated September 19, 2006 would have complied with the Massachusetts Wetlands Protection Act (and regulations promulgated thereunder), Wareham Zoning Bylaw, Wareham wetlands bylaw and the federal Clean Water Act on the date of taking.

6.      The use of the Premises as shown on the "Conceptual Beach "Clubhouse" Building Plan [Dwg. C-3]" prepared by McKenzie Engineering Group, Inc., dated September 19, 2006 would have complied with the dimensional requirements set forth in the Wareham Zoning Bylaw on the date of taking.

7.      The use of the Premises as shown on the "Conceptual Beach "Clubhouse" Building Plan [Dwg. C-3]" prepared by McKenzie Engineering Group, Inc., dated September 19, 2006 would have been permitted to be constructed in the VE Zone.

8.      The use of the Premises as shown on the "Conceptual Beach Club Plan [Dwg. C-2]" prepared by McKenzie Engineering Group, Inc., dated March 28, 2006 would have complied with the Massachusetts Wetlands Protection Act (and regulations promulgated thereunder), Wareham Zoning Bylaw, Wareham wetlands bylaw and the federal Clean Water Act on the date of taking.

9.      The use of the Premises as shown on the "Conceptual Beach Club Plan [Dwg. C-2]" prepared by McKenzie Engineering Group, Inc., dated March 28, 2006 would have complied with the dimensional requirements set forth in the Wareham Zoning Bylaw on the date of taking.

10.     The use of the Premises as shown on the "Conceptual Comprehensive Permit Plan [Dwg. C-1]" dated March 28, 2006, prepared by McKenzie Engineering Group, Inc. would have complied with the Massachusetts Wetlands Protection Act (and regulations promulgated thereunder), the federal Clean Water Act, the National Flood Insurance Program and the Massachusetts State Building Code on the date of taking.

11.     The Premises could lawfully have been used for a 40-unit condominium development, as shown on the "Conceptual Comprehensive Permit Plan [Dwg.

C-1]" dated March 28, 2006, prepared by McKenzie Engineering Group, Inc.,
having a 25% affordable housing component under a comprehensive permit
issued by the Wareham Zoning Board of Appeals pursuant to Massachusetts
General Laws Chapter 40B.

    B.    <u>Defendant's Issues of Law</u>

Whether the plaintiff can present three Highest and Best uses of the Premises for
consideration by the jury.

## VII.  <u>Requested Amendments to Pleadings</u>

Plaintiff reserves her right to amend the Complaint in advance of trial to assert a
claim that the calculation of interest on any award of damages is unconstitutional.

## VIII.  <u>Additional Matters To Aid In Disposition</u>

Defendants will conduct further depositions of the plaintiff's experts due to the
late supplementation of plaintiff's expert's reports.  Furthermore, plaintiff has indicated
that she will retain Alan C. Vautrinot Sr to testify regarding surveys of the Premises.  To
the extent that plaintiff does retain Mr. Vautrinot, defendants reserve the right to depose
Mr. Vautrinot.

Plaintiff reserves her right to further depose Mark Bobrowski as previously
agreed by the parties.

## IX.  <u>Probable Length Of Trial and Whether Jury/Nonjury</u>

This is a trial by jury.  The parties anticipate taking approximately 5 full days to
present the case to the jury.

## X.  <u>List of Witnesses and Purpose of Testimony</u>

A.    <u>Plaintiff's List of Witnesses</u>

1.    **Barbara Deighton Haupt** (Plaintiff) – Factual
    3716 Sandspur Lane, Nokomis, FL 34275

2.    **Michael S. Giaimo, Esq.** – Expert (zoning)
    Robinson & Cole, One Boston Place, Boston, MA 02108

3.    **Bradley C. McKenzie, P.E.** – Expert (engineer/land surveyor)
    McKenzie Engineering Group, 150 Longwater Drive, Norwell, MA 02061

4.      **Lenore White** – Expert (wetlands)
        Wetland Strategies, Inc., 5 Main Street Ext., Plymouth, MA 02360

5.      **Steven G. Elliott, SRA, MRA** – Expert (real estate appraiser)
        Elliott, Gottschalk & Assoc. Inc., 78 Thomas Street, Ashland, MA 01721

6.      **Joseph Melanson** – Authentication (1991 and 2005 aerial photos)
        Aerials Only, 801 Main Street, Wareham, MA 02571

7.      **Joyce DeWolf** – Authentication (1977 aerial photos)
        Aerial Surveys, P.O. Box 12554, Rochester, NY 14612

8.      **Luigi DiGioia** – Factual
        178 Plantation Street, Worcester, MA

9.      **Keeper of Records, Plymouth Co. Conservation District**, - Authentication
        (1952 aerial photo)
        15 Cranberry Highway, Wareham, MA 02576

10.     **Philip Schwachman** – Factual
        P.O. Box 646, Worcester, MA 01613

11.     **Herb Voss** – Factual
        38 Pleasant Street, Wareham, MA 02571

12.     **Elizabeth Voss** – Factual
        38 Pleasant Street, Wareham, MA 02571

13.     **Michael Hartman** – Factual
        Town of Wareham, Memorial Town Hall, 54 Marion Road, Wareham, MA 02571

13.     **Forrest Emery** – Factual
        P.O. Box 414, North Pembroke, MA 02358

15.     **Bruce Sauvageau** – Factual
        188 Swifts Beach, Wareham, MA 02571

16.     **Alan C. Vautrinot, Jr.** – Factual
        Vautrinot Land Surveying, Inc., P.O. Box 144, Plympton, MA 02367

17.     **Keeper of the Records, Wareham Zoning Board of Appeals** – Authentication
        Old Town Hall, 505 Main Street, Wareham, MA 02571

18.     **Keeper of the Records, Wareham Town Planner** – Authentication
        Old Town Hall, 505 Main Street, Wareham, MA 02571

19.    **David Pichette** – Factual
Town of Wareham, Conservation Agent, Old Town Hall, 505 Main Street,
Wareham, MA 02571

20.    **Dorothy Blickens** – Factual
MassDEP Southeast Region, 20 Riverside Drive, Lakeville, MA 02347

21.    **Matt Dacey** – Factual
Champion Builders, 600 Oak Street, Pembroke, MA

22.    **Patrick Mulligan** - Factual
PACOR, 110 Hodges Pond Road, Plymouth, MA

23.    **John Druley** - Factual
49 Locust Street, Falmouth, MA

24.    **Watie Akins** – Factual
*address to be provided*

25.    **Michael Mroz** – Factual
Endeavor Associates, 535 Boylston Street, 12th Floor, Boston, MA 02116

Plaintiff reserves the right to seasonally supplement this witness list and call rebuttal
witnesses at trial that do not appear on this list.

B.    Defendant's List of Witnesses

1.    Professor Mark Bobrowski
Blatman, Bobrowski & Mead, LLC

Professor Bobrowski is expected to testify as an expert witness with respect to
any issues regarding the use of the property.

2.    Richard J. Dennis, Sr., MAI, SRA, MRA
Casey and Dennis Real Estate Appraisal Consultants

Mr. Dennis is expected to testify as to the value of the Highest and Best use of the
Premises

3.    Robert F. Daylor, P.E., P.L.S.
Daylor Consulting Group, Inc.

Mr. Daylor is expected to testify as an expert witness with regard to the numerous
local, state, and federal regulatory issues present at the Premises.

4.      Mark Gifford
        Municipal Maintenance Director
        Town of Wareham

Mr. Gifford is expected to testify regarding the availability of town services to the Premises.

5.      Alan C. Vautrinot Sr.
        Vautrinot Land Surveying

Mr. Vautrinot is expected to testify with respect to numerous surveys he or his company conducted at the Premises.

6.      Robb B. Sykes
        Thompson Surveying & Engineering, Inc.

Mr. Sykes is expected to testify regarding surveys he or this company conducted at the Premises.

7.      The defendants reserve the right to seasonably supplement this witness list and call rebuttal witnesses at trial that do not appear on this list.


## XI.    **Proposed Exhibits**

Agreed Exhibits

1.      "Plan Accompanying Abbreviated Notice of Resource Area Delineation on Land in Wareham, MA prepared for Glick Realty Corporation", drawn by Thompson Surveying & Engineering, Inc., dated May 4, 2000 and revised through June 19, 2000

2.      "Plan of Land in Wareham, Mass. Prepared for BD Realty Trust", drawn by Vautrinot Land Surveying, Inc., dated May 7, 2001 and revised through March 28, 2003 ("3/28/2003 Vautrinot Plan"), to proceed on the Premises

3.      Flood Insurance Rate Map for Town of Wareham, Panel 7 of 17 for Community Panel Number 255223-0007-D, as revised through July 15, 1992

4.      Notice of Sewer Availability dated November 8, 2000

5.      Superceding Order of Conditions issued by DEP

6.      Notice of Taking

7.     Order of Taking

8.     Land Court Plan 12124D

9.     Town of Wareham Zoning Bylaws as revised through April 28, 2003

10.    Town of Wareham Zoning Map as revised through February 1, 1999

<u>Contested Exhibits</u>

A.     <u>Plaintiff's Exhibits</u>

A.     Deed conveying Premises to Plaintiff <u>with purchase price and tax stamp redacted</u>

B.     August 31, 2003 video of the Premises taken by Plaintiff

C.     Aerial photographs
       -   one (1) photo dated 1952
       -   three (3) photos dated July 14, 1977
       -   one (1) photo dated August 1991
       -   three (3) photos dated August 2005

D.     Architectural renderings of proposed two-family home dated December 10, 2003

E.     Architectural rendering of proposed two-family home and layout of beach club parking dated September 21, 2003

F.     "Foundation Plan – V-Zone Foundation BD Realty Trust" dated April 2, 2003, drawn by Field Engineering Co., Inc. (Sheets S-1 through S-3)

G.     Notice of Intent (#SE76-1303) dated May 8, 2001, filed by Plaintiff for the Premises.

H.     Order of Conditions denying Notice of Intent (#SE76-1303) and accompanying letter from Wareham Conservation Commission.

I.     Notice of Intent (#SE76-1380) dated January 4, 2002, filed by the Plaintiff for the Premises.

J.     Order of Conditions denying Notice of Intent (#SE76-1380) and accompanying letter from Wareham Conservation Commission.

K.     Draft Waterways License issued by DEP pursuant to 310 CMR 9.14(2)(b)

L.    Army Corps of Engineers letter dated August 23, 2003 responding to Plaintiff's application for groin permit

M.    Building Sewer Permit dated July 29, 1982

N.    Lease agreement between Bruce Sauvageau and BD Realty Trust

O.    "Existing Conditions" Plan prepared by McKenzie Engineering Group, Inc. originally dated January 30, 2006 and amended through March 7, 2006

P.    "Conceptual Comprehensive Permit Plan [Dwg. C-1]" dated March 28, 2006, prepared by McKenzie Engineering Group, Inc. ("Condominium Proposal Plan")

Q.    "Conceptual Beach Club Plan [Dwg. C-2]" prepared by McKenzie Engineering Group, Inc., dated March 28, 2006 ("Beach Club Plan")

R.    "Conceptual Beach "Clubhouse" Building Plan [Dwg. C-3]" prepared by McKenzie Engineering Group, Inc., dated September 19, 2006 ("Clubhouse Plan")

S.    Forty-seven (47) photographs

T.    Wareham Assessor's records from 1951-1953

U.    Town of Wareham Housing Plan dated June 21, 2004

V.    Town of Wareham Zoning Board of Appeals chart entitled "40B Projects Approved and Pending"

W.    Deeds and photographs for comparable sales analyzed by Steven Elliott for beach club use

X.    Deeds and photographs for comparable sales analyzed by Steven Elliott for 40B development

Y.    Deeds and photographs for comparable sales analyzed by Steven Elliott for two-family use

Plaintiff reserves the right to seasonably supplement this exhibit list.

B.    <u>Defendant's Exhibits</u>

A.    Deed conveying Premises to Plaintiff.

B.      Real Estate Appraisal Report with attachments of Richard J. Dennis re: value of the Premises as of the date of the taking.

C.      Land Court Plan No. 12124A 1926 Plan of Land Sheet 1 & Sheet 2.

D.      Land Court Plan No. 12124B 1931 Subdivision of Lot C.

E.      Land Court Plan No. 12124C 1931 Subdivision of Lot D.

F.      Land Court Plan No. 12124D 1938 Subdivision of Lots A & B.

G.      Land Court Plan No. 12124E 1940 Subdivision of Lot D.

H.      Land Court Plan No. 12124G 1948 Subdivision Plan.

I.      Soil Survey for Plymouth County Sheet No. 54 attachment 7 to the Daylor Report.

J.      Land Court Plan No. 12124I 1977 Subdivision Plan.

K.      FEMA Flood Insurance Rate Map Town of Wareham.

L.      Plan Accompanying Abbreviated Notice of Resource Area Delineation on Land In Wareham prepared for Glick Realty Corp. dated May 4, 2000 and revised May 17, June 7, and June 19, 2000.

M.      Plan of Land in Wareham, Mass. prepared for BD Realty Trust by Vautrinot Land Surveying, Inc. dated May 7, 2001.

N.      Existing Conditions Plan prepared for Philips and Angley by McKenzie Engineering Group dated March 28, 2006.

O.      Swifts Beach, 1893 USGS 15-Minute Series, Falmouth Quadrangle topographical map.

P.      Swifts Beach, 1941 USGS 7.5-Minute Series Quadrangle topographical map.

Q.      Swifts Beach, 1953 USGS 7.5-Minute Series Quadrangle topographical map.

R.      Swifts Beach, 1967 USGS 7.5-Minute Series Quadrangle topographical map.

S.      Swifts Beach, 1901 Coast Chart #112, Vineyard Sound and Buzzards Bay, August 1901.

T.      Swifts Beach, 1911 Navigation Chart #249 for Buzzards Bay, August 1911.

U.     Swifts Beach, 1931 Navigation Chart #251 for Head of Buzzards Bay, November 1931.

V.     Daylor Exhibit A - 2003 Wetland Resource Area Delineations dated June 28, 2006.

W.     Daylor Exhibit B – 2006 Wetland Resource Area Delineations dated June 28, 2006.

X.     Daylor Exhibit C - 2006 Resource Area Delineations by Daylor dated June 28, 2006.

Y.     Deeds and photographs for comparable sales analyzed by Richard Dennis.


BARBARA DEIGHTON HAUPT, TRUSTEE          TOWN OF WAREHAM,
OF BD REALTY TRUST,                                               By its attorneys,
By her attorneys,

/s/ Kristen M. Ploetz_____          /s/ Jeffrey T. Blake (with permission)
Jeffrey T. Angley, Esq.                                    Richard P. Bowen, Esq.
B.B.O. #543958                                              B.B.O. #552814
Kristen M. Ploetz, Esq.                                   Jeffrey T. Blake, Esq.
B.B.O. #654549                                              B.B.O. #655773
Phillips & Angley                                             Kopelman & Paige, P.C.
One Bowdoin Square                                       101 Arch Street
Boston, MA  02114                                         Boston, MA 02110-1109
(617) 367-8787                                               (617) 556-0007
Date:                                                               Date:


<u>CERTIFICATE OF SERVICE</u>
      I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and also served in hand, and paper copies will be sent to those indicated as non registered participants on this 15th day of November, 2006.

_____/S/ Kristen M. Ploetz_____
            Kristen M. Ploetz, Esq.


L:\Ditn002\pretrial.memo.joint.final.corrected.doc