UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.: 05-11745RWZ

| | |
|---|---|
| BARBARA DEIGHTON HAUPT, Trustee of BD REALTY TRUST,<br>        Plaintiff<br><br>v.<br><br>THE TOWN OF WAREHAM acting by and through the BOARD OF SELECTMEN OF THE TOWN OF WAREHAM, and the BOARD OF SELECTMEN OF THE TOWN OF WAREHAM,<br>        Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

### PLAINTIFF'S MOTION IN LIMINE TO BAR TESTIMONY OF CHRISTINE GODFREY AND KAREN ADAMS OF THE ARMY CORPS OF ENGINEERS AND TO BAR INTRODUCTION OF HER LETTER DATED JANUARY 17, 2007

Now comes the Plaintiff, Barbara Deighton Haupt, Trustee of BD Realty Trust ("the Trust"), and moves this Honorable Court to bar (1) the testimony of Christine Godfrey ("Godfrey"), Chief of the Regulatory Division of the New England District of the Army Corps of Engineers; (2) the introduction of Godfrey's letter dated January 17, 2007; and (3) the testimony of Karen Adams ("Adams") of the Regulatory Division of the New England District of the Army Corps of Engineers.

### RELEVANT FACTS AND PROCEDURAL HISTORY

The Town effected its taking of the premises located at 200 Swifts Beach Road, Wareham, Massachusetts ("the Premises") by recording an Order of Taking on December 31, 2003 ("the Date of Taking"). The Date of Taking is the date upon which the highest and best use of the Premises is to be valued for purposes of this litigation.

Early during the course of litigation, both parties realized that the feasibility of any theory of the highest and best use of the Premises is dependent on a determination as to the location and extent of wetland resource areas on the Premises on the Date of Taking. To that end, both the Trust and the Defendant Town of Wareham ("the Town") identified expert witnesses in this regard. Through its expert report submitted on March 30, 2006 pursuant to Fed. R. Civ. P. 26(a)(2), the Trust identified Lenore White ("White"), a professional wetlands scientist, as its expert to testify at trial regarding the presence of wetland resource areas which may have existed on the Premises on the Date of Taking. Based on White's wetland resource delineations, the Trust was able to determine alternate development schemes for the highest and best use of the Premises, namely a nonprofit recreational beach club or a M.G.L. c. 40B residential development. Neither of these development schemes required the unlawful filling or alteration of any wetland resource areas.[1]

In response, the Town identified its wetlands expert, Robert Daylor ("Daylor"), and submitted his expert report on June 29, 2006. In his expert report, Daylor disagreed with White's wetland resource delineations, and stated that under either of the Trust's two development scenarios, there would be filling and alteration of wetland resource areas which would, in turn, implicate the jurisdiction of the Army Corps of Engineers ("ACOE") under Section 404 of the federal Clean Water Act. The implicit suggestion in Daylor's expert report (as well as during his deposition) was that because ACOE jurisdiction is purportedly invoked, neither the beach club nor the 40B development could be used by the Trust as a highest and best use of the Premises.[2]

---

[1] White further supplemented her testimony subsequent to reviewing the Town's expert report, such that she opined that a clubhouse structure could be constructed as part of the nonprofit recreational beach club.

[2] Daylor opined that the only use of the Premises that did not involve the unlawful alteration of a wetland resource area would be a residential two-family use.

Daylor is not employed by ACOE, and thus his ability to opine about the certainty of ACOE jurisdiction is the same as White's,[3] for whatever either of their opinions may be worth on this issue.  In fact, until very recently, the Town has never identified <u>any</u> individual from ACOE—either in its Automatic Disclosures (filed more than a year ago on December 6, 2005), discovery responses (filed on May 4, 2006 and June 12, 2006) or witness list within the joint pretrial memorandum (filed on November 15, 2006)—that they intended to call to provide testimony regarding the jurisdiction of ACOE.  Indeed, it appeared that the only testimony regarding potential ACOE jurisdiction would be limited to the statements as set forth by Daylor in his expert report.

Yet, on January 26, 2007—more than two (2) months <u>after</u> the final pretrial conference, and a little over two months before the April 9, 2007 trial (and, indeed, barely more than one month before the motions in limine hearing)—counsel for the Town informed the Trust's undersigned counsel that they had received a letter from Christine Godfrey of the ACOE regarding a preliminary determination of ACOE jurisdiction that had been made relative to the Premises.  A copy of the ACOE letter was provided to the Trust by electronic mail on January 26, 2007.  <u>See</u> **Exhibit 1** attached hereto.  Based on the date and contents of the letter, representatives of the Town clearly had knowledge of the letter at least a week before it was disclosed to the undersigned counsel, and had even known that the ACOE would be visiting the site as early as December 5, 2006.  Even more egregious than this late disclosure is the fact that it was not until February 26, 2007 that the Town's counsel informed the Trust during a telephone conversation that it would be seeking to amend their pretrial witness list to include Godfrey as a

---

[3] In her Supplemental Expert Report submitted on September 21, 2006, White offered an opinion as to whether ACOE jurisdiction would be invoked by the beach club (with clubhouse structure) use of the Premises.  White stated that there would <u>not</u> be jurisdiction under this development scheme and thus that there would be no need for a permit from the ACOE.

fact witness.  Late on February 27, 2007, the Town faxed Defendants' Supplementation To Their

Witness List, identifying Christine Godfrey as a fact witness who "will testify as to <u>her</u>

observations of the tidal conditions and the extent of the jurisdiction of the Army Corps of

Engineers at the subject property."  <u>See</u> **Exhibit 2** attached hereto (emphasis added). On March

5, 2007, the Town emailed Defendants' Supplementation to Their Witness List, identifying

Karen Adams as an additional fact witness.  <u>See</u> **Exhibit 3** attached hereto.

For the reasons set forth below, the Town should be barred from introducing Godfrey or

her January 17, 2007 letter at trial.  Further, the Town should also be barred from introducing

Karen Adams, the ACOE employee who <u>actually</u> conducted the site visit and made visual

observations on behalf of ACOE, at trial.

**<u>ARGUMENT</u>**

I.    <u>The Late Disclosure and Any Admission of the Testimony of Christine Godfrey
      and/or Karen Adams Is Unfairly Prejudicial to the Trust and Violates the Rules of
      Discovery</u>.

The parties exchanged Automatic Disclosures in late December 2005, and the Town

responded to Interrogatories in May 2006 (including a response to individuals it intended to call

at trial).  Since those submissions, the Town has not seasonably supplemented either its

Automatic Disclosures or Answers to Interrogatories as required by Fed. R. Civ. P. 26(e), except

as attempted this past week to add Godfrey as a witness.

Since late March 2006, more than a year before the scheduled trial in this case, the Town

has been aware that the Trust intends to offer evidence that, as of the Date of Taking, the

Premises did not contain any wetland resource areas which would bar the development scenarios

proposed by the Trust as the highest and best use of the Premises for this assessment of damages

case.  It is almost certain that the very reason why the Town retained its own wetlands expert not

4

long after the Trust was to provide opposing testimony in this regard.  Certainly the Town had

plenty of opportunity, indeed at least seven and a half months between the time that the Trust

submitted the report of its wetlands expert until the time of the final pretrial conference, to

identify any potential need for a representative of ACOE to testify at trial, for whatever purpose.[4]

Thus, for the Town to now attempt to add Godfrey as a fact witness[5] wholly unreasonable and

highly prejudicial to the Trust for multiple reasons.

First, it is clear from the ACOE letter that only Adams has actual personal knowledge of

the "tidal conditions" which were observed on the Premises on December 5, 2006, yet the Town

is seeking to have Godfrey testify about such observations which she clearly did not make

herself.  Godfrey is simply not the person who is qualified to testify on behalf of ACOE.  Indeed,

Godfrey herself suggests that if the Town wants any additional information, they should contact

Adams.  See Exh. 1.

Second, due to the late disclosure of Godfrey as a potential witness, the Trust was

prevented from conducting meaningful discovery about Godfrey's anticipated testimony,

including depositions of Godfrey and/or Adams, well in advance of trial.  As a result, the Trust

has not been given an opportunity to cross-examine Godfrey or Adams about the prevailing

conditions on the date of ACOE's visit to the Premises or the relevance of ACOE jurisdiction to

this case.  The Trust has also not been provided with any opportunity to question either Godfrey

---

[4] Notwithstanding the procedural unfairness of allowing Godfrey to testify, as discussed *infra*, the Trust further objects on the grounds that Godfrey's testimony is completely irrelevant to the underlying determination of wetlands delineations that must be made by the jury based on the anticipated testimony of White (the Trust's wetlands expert) and Daylor (the Town's wetlands expert).

[5] The Trust further objects that the testimony that Godfrey may offer is merely factual as suggested by the Town. Indeed, the very nature of the contents of her letter dated January 17, 2007 indicate that Godfrey would be attempting to offer an expert opinion about the wetlands resource areas and tidal conditions on the Premises much like the ones being offered by the parties' experts, White and Daylor—although Godfrey's opinions would be based solely on the observations made by her colleague, which was limited to conditions on December 5, 2006, almost three years after the Date of Taking.   The type of testimony that the Town is seeking to introduce through Godfrey is easily recognized as expert testimony, yet Godfrey has not rendered an expert report and the Trust is completely ignorant as to what qualifications Godfrey may have to offer such testimony.  For these reasons alone Godfrey's testimony should be barred.

or Adams as to the relevance their purported determination made on or about December 5, 2006 in the context of what wetland resource areas may have existed on the Premises three years earlier on the Date of Taking in 2003.  Again, the wetland delineations on the Date of Taking in 2003 are central to the underlying issue at trial, not the conditions as they presently exist some three years later.   Moreover, the Trust has not been permitted to inquire about the significance of a preliminary determination from ACOE (such as the one rendered by Godfrey) instead of an approved determination.  The difference between the two determinations is that the latter is appealable while the former is not; if ACOE is being given information to render a non-appealable determination that is admissible at trial, it would be extraordinarily unfair to the Trust in this instance because it virtually closes the door on what would otherwise be an appealable process in the real world.   The Town should not have the benefit of choosing to disclose Godfrey at such a late stage in litigation, much less the manner by which information is exchanged with ACOE.

Further, the Town is attempting to impart greater significance to the meaning of Godfrey's letter and her ultimate opinion than is justified.  To wit, Godfrey's letter merely states as follows:

> Although the areas shown on the plan as salt marsh and bordering vegetated wetland were likely delineated based upon the Massachusetts Wetlands Protection Act criteria, they appear to be a close approximation of our jurisdictional area.  The specific wetland boundaries shown on the plan have not yet been verified by the Corps of Engineers. Please contact us if you want the federal wetland boundaries verified.

See ACOE Letter dated January 17, 2007 (emphasis added).  Yet the Town is attempting to introduce the letter and/or Godfrey's testimony to purportedly show that the ACOE has definitively claimed jurisdiction over all portions of the Premises where the Trust proposes development in support of its theories of highest and best use.  This is certainly not what is

suggested by the Godfrey letter.  Thus, the Town should not be permitted to taint evidence in this way because it is not only erroneous and unfair to the Trust from a discovery disclosure perspective, but it would be misleading to the jury as well.

Finally, Godfrey's letter indicates that the Town supplied a plan to the ACOE dated March 28, 2006, and possibly some photographs.  However, the Town has never disclosed to the Trust exactly what materials it provided to the ACOE in advance of the site view.  Although the date of the plan referenced in the letter indicates that the plan is likely one that was created by the Trust's own expert, Bradley McKenzie, P.E., it is uncertain whether there were any notes or other materials provided to the ACOE with the plan and which may have further factored into the determination of preliminary jurisdiction.  It is equally dubious as to what anecdotal (and likely partial or inaccurate) information may have been provided to ACOE by the Town. Without having the benefit of knowing <u>exactly</u> what materials were provided to the ACOE in conjunction with their recent site view—much less without having been given an opportunity to cross-examine the Adams or Godfrey regarding the significance of materials which were likely not provided by the Town but would most certainly help further describe the status of the Premises on the <u>Date of Taking</u> (the key date in the ultimate determination of fact in this case)—the Trust will be unfairly disadvantaged in its last minute trial preparations and will not be in a position to adequately cross-examine or impeach the witness at trial.

II.    <u>Any ACOE Jurisdiction Over the Premises Is Irrelevant to a Determination of the Highest and Best Use of the Premises and Therefore Inadmissible Under Fed. R. Civ. P. 402</u>.

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be

without the evidence." Fed. R. Civ. P. 401. "Evidence which is not relevant is not admissible." Fed. R. Civ. P. 402.

At trial, the ultimate factual issue that the Trust is seeking to have the jury determine is the highest and best use of the Premises on the Date of Taking, and to award damages in accordance therewith. However, in order to determine the viability of any highest and best use proposed by either party, a determination of the wetland resource areas on the Premises is first needed. To that end, the jury will be asked to weigh the credibility of the parties' two wetlands experts, White and Daylor. In the event that the jury agrees with White and finds that there were no wetland resource areas on the Date of Taking which would have impeded either the beach club or the 40B residential use, then there could be no areas subject to ACOE jurisdiction. On the other hand, if the jury agrees with Daylor and finds that there were wetland resource areas which would have impeded the beach club and 40B uses, then the inquiry stops as to the viability of these uses for valuation purposes, and the parties will be limited to arguing about the valuation of the one remaining use that does not implicate any wetlands on the Premises, namely the two-family residential structure. In this instance, ACOE jurisdiction over portions of the Premises which may have been the site of the beach club or 40B use becomes irrelevant because the Trust is essentially precluded from maintaining that either of these are a highest and best use of the Premises due to the jury's decision to find that there were wetlands in those areas.

Thus, the potential for ACOE jurisdiction on the Premises on the Date of Taking is completely independent of and irrelevant to one of the ultimate factual issues to be decided in this case (a determination of the scope and extent of wetlands on the Premises on the Date of Taking) and it does not have any tendency to make the wetlands resource area delineations of either party's expert more or less probable.

8

As a result, the Town should be barred from offering testimony or any other reference (*i.e.* during opening or closing statements) to the jury which discusses ACOE jurisdiction because it is not relevant to their determination of the wetlands that may have existed on the Premises on the Date of Taking. Indeed, the very purpose of the parties' wetlands experts is to allow the jury to make this determination before consideration of the valuation of the highest and best use can take place in a meaningful manner.

    III.    <u>Even If ACOE Jurisdiction Is Deemed Relevant By This Court, Its Probative Value is Substantially Outweighed by the Danger of Unfair Prejudice and Misleading the Jury</u>.

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . or misleading the jury . . . ." Fed. R. Civ. P. 403. Even assuming *arguendo* that ACOE jurisdiction over the Premises is deemed relevant to the jury's ultimate determination of the wetlands resource areas that existed on the Premises on the Date of Taking, and, in turn, the fair market value of the highest and best use of the Premises on the Date of Taking, it should be excluded from evidence because it is unfairly prejudicial to the Trust and will mislead the jury.

If Godfrey is allowed to testify as a fact witness at trial, the jury is likely to be mislead as to the status of the Premises on the Date of Taking. Indeed, the sole basis for Godfrey's (or Adams') opinion about the tidal conditions on the Premises is one observation made in December 2006, which is three years after the Date of Taking. Again, the conditions (including wetlands) of the Premises on the Date of Taking only are relevant for purposes of determining the highest and best use of the Premises for valuation purposes. Godfrey is not qualified to testify—certainly not as a fact witness—as to the probable wetlands that existed on the Date of Taking because she, unlike the two wetlands experts in this case, has not reviewed the entire

universe of available information, including photograph and video evidence which dates to around the time of the taking.  If Godfrey is permitted to testify about the potential ACOE jurisdiction that exists in 2006 and today, it will mislead the jury into thinking that such was the case at the Date of Taking.  Moreover, allowing Godfrey to testify at trial as a fact witness is unfairly prejudicial to the Trust largely because of the late disclosure of this witness, the inability of the Trust to have conducted discovery which included seeking information from Godfrey at a deposition and the ability to cross-examine her qualifications, methodologies and the relevance of the ACOE observations in 2006 to the conditions on the Date of Taking.   The Town should not have the benefit of identifying new and potentially significant witnesses at this late stage of litigation when there is a trial scheduled to begin in just over one month.

         For these reasons, Godfrey's testimony, Godfrey's letter and any related testimony from Adams must be excluded at trial.

## **CONCLUSION**

        For the foregoing reasons, this Court should allow the Trust's Motion in Limine and bar (1) the testimony of Christine Godfrey of the New England District of the Army Corps of Engineers; (2) the introduction of Godfrey's letter dated January 17, 2007; and (3) the testimony of Karen Adams of the New England District of the Army Corps of Engineers.

BARBARA DEIGHTON HAUPT,
Trustee of BD REALTY TRUST,

Date:    3/6/2007

By her attorneys,

_/s/ Kristen M. Ploetz_____
Jeffrey T. Angley, Esq.
B.B.O. #543958
Kristen M. Ploetz, Esq.
B.B.O. #654549
Phillips & Angley
One Bowdoin Square
Boston, MA 02114
(617) 367-8787

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on this 6th day of March, 2007.

_____/S/ Kristen M. Ploetz_____
Kristen M. Ploetz, Esq.

L:\Ditn002\Motions in limine\mot.bar.christine.godfrey.final.doc

**EXHIBIT 1**



**DEPARTMENT OF THE ARMY**
NEW ENGLAND DISTRICT, CORPS OF ENGINEERS
696 VIRGINIA ROAD
CONCORD, MASSACHUSETTS 01742-2751

REPLY TO:
ATTENTION OF:

Regulatory Division
CENAE-R-2006-3877

January 17, 2007

Sterling Wall
Daylor Consulting Group
10 Forbes Road
Braintree, MA 02184

Dear Mr. Wall:

This letter responds to your request for a preliminary determination of jurisdiction for the Town of Wareham at Swifts Beach between Swifts Beach Road, the Town of Wareham pump house and a tidal creek on the Wareham River, Wareham, MA.

Karen Adams of our Regulatory Division conducted a field inspection of the site on December 5, 2006 for the purpose of observing the landward extent reached by the rising tide which was expected at about 8:00 am that day. Our jurisdiction under Section 404 of the Clean Water Act is to the high tide line and any adjacent wetlands.

The **"high tide line"** is "the line of intersection of the land with the water's surface at the maximum height reached by a rising tide. The high tide line may be determined, in the absence of actual data, by a line of oil or scum along shore objects, a more or less continuous deposit of fine shell or debris on the foreshore or berm, other physical markings or characteristics, vegetation lines, tidal gages, or other suitable means that delineate the general height reached by a rising tide. The line encompasses spring high tides and other high tides that occur with periodic frequency but does not include storm surges in which there is a departure from the normal or predicted reach of the tide due to the piling up of water against a coast by strong winds such as those accompanying a hurricane or other intense storm" (33CFR Section 328.3).

Based upon Karen Adams' observations between 8:45 – 9:45 am on December 5, 2006, it was evident that water flowed from the tidal creek westward into the center of the lot labeled as existing parking lot and had reached areas shown as higher (on the plans you submitted entitled "SWIFTS BEACH ROAD (PLAT 50B, LOTS B-1, E AND AN UNNUMBERED LOT), IN WAREHAM, MASSACHUSETTS" on one sheet dated, "March 28, 2006") than the 4.52 ft NGVD elevation you had provided as the estimated high tide line. As the predicted tide elevation for that morning was 0.35 ft below the expected high tide as defined for purposes of our jurisdiction, and the photos were taken about an hour after the high tide, we expect the high tide line to be at an elevation higher than the inundated areas shown in the photos. In addition, any wetlands adjacent to waters of the United States are subject to our jurisdiction under Section 404 of the Clean Water Act. Although the areas shown on the plan as salt marsh and bordering

vegetated wetland were likely delineated based upon the Massachusetts Wetlands Protection Act criteria, they appear to be a close approximation of our jurisdictional area. The specific wetland boundaries shown on the plan have not yet been verified by the Corps of Engineers. Please contact us if you want the federal wetland boundaries verified.

If you have any questions please contact Karen Adams, of my staff, at (978)-318-8828.

Sincerely,

Christine Godfrey
Chief, Regulatory Division

Enclosures

JURISDICTIONAL DETERMINATION                                      Revised 8/13/04
U.S. Army Corps of Engineers

**DISTRICT OFFICE:** New England
**FILE NUMBER & APPLICANT:** NAE-2006-8777 Wareham, Town of

**PROJECT LOCATION INFORMATION:**
State:       MA
County:
Center coordinates of site (latitude/longitude):
Approximate size of area (parcel) reviewed, including uplands:       acres.
Name of nearest waterway: Wareham River
Name of watershed:    Coastal

**JURISDICTIONAL DETERMINATION**
Completed:   Desktop determination      ☐   Date:
             Site visit(s)               ☒   Date(s): December 5, 2006 approx 9am

**Jurisdictional Determination (JD):**

☒   Preliminary JD - Based on available information, ☒ *there appear to be* (or) ☐ *there appear to be no* "waters of the United States" and/or "navigable waters of the United States" on the project site. A preliminary JD is not appealable (Reference 33 CFR part 331).

☐   Approved JD – An approved JD is an appealable action (Reference 33 CFR part 331).
     Check all that apply:

     ☐   *There are* "navigable waters of the United States" (as defined by 33 CFR part 329 and associated guidance) within the reviewed area. Approximate size of jurisdictional area:

     ☐   *There are* "waters of the United States" (as defined by 33 CFR part 328 and associated guidance) within the reviewed area. Approximate size of jurisdictional area:     .

     ☐   *There are "isolated, non-navigable, intra-state* waters or wetlands" within the reviewed area.
          ☐          Decision supported by SWANCC/Migratory Bird Rule Information Sheet for Determination of No Jurisdiction.

**BASIS OF JURISDICTIONAL DETERMINATION:**
A.   **Waters defined under 33 CFR part 329 as "navigable waters of the United States":**
☒   The presence of waters that are subject to the ebb and flow of the tide and/or are presently used, or have been used in the past, or may be susceptible for use to transport interstate or foreign commerce.

B.   **Waters defined under 33 CFR part 328.3(a) as "waters of the United States":**
☐   (1) The presence of waters, which are currently used, or were used in the past, or may be susceptible to use in interstate or foreign commerce, including all waters which are subject to the ebb and flow of the tide.
☐   (2) The presence of interstate waters including interstate wetlands[1].
☐   (3) The presence of other waters such as intrastate lakes, rivers, streams (including intermittent streams), mudflats, sandflats, wetlands, sloughs, prairie potholes, wet meadows, playa lakes, or natural ponds, the use, degradation or destruction of which could affect interstate commerce including any such waters (check all that apply):
          ☐   (i) which are or could be used by interstate or foreign travelers for recreational or other purposes.
          ☐   (ii) from which fish or shellfish are or could be taken and sold in interstate or foreign commerce.
          ☐   (iii) which are or could be used for industrial purposes by industries in interstate commerce.
☐   (4) Impoundments of waters otherwise defined as waters of the US.
☐   (5) The presence of a tributary to a water identified in (1) – (4) above.
☐   (6) The presence of territorial seas.
☐   (7) The presence of wetlands adjacent[2] to other waters of the US, except for those wetlands adjacent to other wetlands.

**Rationale for the Basis of Jurisdictional Determination (applies to any boxes checked above).** *If the jurisdictional water or wetland is not itself a navigable water of the United States, describe connection(s) to the downstream navigable waters. If B(1) or B(3) is used as the Basis of Jurisdiction, document navigability and/or interstate commerce connection (i.e., discuss site conditions, including why the waterbody is navigable and/or how the destruction of the waterbody could affect interstate or foreign commerce). If B(2, 4, 5 or 6) is used as the Basis of Jurisdiction, document the rationale used to make the determination. If B(7) is used as the Basis of Jurisdiction, document the rationale used to make adjacency determination:*

2

**Lateral Extent of Jurisdiction:** (Reference: 33 CFR parts 328 and 329)
- ☐ Ordinary High Water Mark indicated by:
  - ☐ clear, natural line impressed on the bank
  - ☐ the presence of litter and debris
  - ☐ changes in the character of soil
  - ☐ destruction of terrestrial vegetation
  - ☐ shelving
  - ☐ other:
- ☒ High Tide Line indicated by:
  - ☐ oil or scum line along shore objects
  - ☐ fine shell or debris deposits (foreshore)
  - ☒ physical markings/characteristics
  - ☐ tidal gages
  - ☐ other:

- ☒ Mean High Water Mark indicated by:
  - ☐ survey to available datum; ☐ physical markings; ☐ vegetation lines/changes in vegetation types.

- ☐ Wetland boundaries, as shown on the attached wetland delineation map and/or in a delineation report prepared by:

**Basis For Not Asserting Jurisdiction:**
- ☐ The reviewed area consists entirely of uplands.
- ☐ Unable to confirm the presence of waters in 33 CFR part 328(a)(1, 2, or 4-7).
- ☐ Headquarters declined to approve jurisdiction on the basis of 33 CFR part 328.3(a)(3).
- ☐ The Corps has made a case-specific determination that the following waters present on the site are not Waters of the United States:
  - ☐ Waste treatment systems, including treatment ponds or lagoons, pursuant to 33 CFR part 328.3.
  - ☐ Artificially irrigated areas, which would revert to upland if the irrigation ceased.
  - ☐ Artificial lakes and ponds created by excavating and/or diking dry land to collect and retain water and which are used exclusively for such purposes as stock watering, irrigation, settling basins, or rice growing.
  - ☐ Artificial reflecting or swimming pools or other small ornamental bodies of water created by excavating and/or diking dry land to retain water for primarily aesthetic reasons.
  - ☐ Water-filled depressions created in dry land incidental to construction activity and pits excavated in dry land for the purpose of obtaining fill, sand, or gravel unless and until the construction or excavation operation is abandoned and the resulting body of water meets the definition of waters of the United States found at 33 CFR 328.3(a).
  - ☐ Isolated, intrastate wetland with no nexus to interstate commerce.
  - ☐ Prior converted cropland, as determined by the Natural Resources Conservation Service. Explain rationale:

  - ☐ Non-tidal drainage or irrigation ditches excavated on dry land. Explain rationale:
  - ☐ Other (explain):

**DATA REVIEWED FOR JURSIDICTIONAL DETERMINATION (mark all that apply):**
- ☒ Maps, plans, plots or plat submitted by or on behalf of the applicant.
- ☐ Data sheets prepared/submitted by or on behalf of the applicant.
  - ☐ This office concurs with the delineation report, dated    , prepared by (company):
  - ☐ This office does not concur with the delineation report, dated    , prepared by (company):
- ☐ Data sheets prepared by the Corps.
- ☐ Corps' navigable waters' studies:
- ☐ U.S. Geological Survey Hydrologic Atlas:
- ☐ U.S. Geological Survey 7.5 Minute Topographic maps:
- ☐ U.S. Geological Survey 7.5 Minute Historic quadrangles:
- ☐ U.S. Geological Survey 15 Minute Historic quadrangles:
- ☐ USDA Natural Resources Conservation Service Soil Survey:
- ☐ National wetlands inventory maps:
- ☐ State/Local wetland inventory maps:
- ☐ FEMA/FIRM maps (Map Name & Date):
- ☐ 100-year Floodplain Elevation is:    (NGVD)
- ☐ Aerial Photographs (Name & Date):
- ☐ Other photographs (Date):
- ☐ Advanced Identification Wetland maps:
- ☒ Site visit/determination conducted on: December 5 2006
- ☐ Applicable/supporting case law:
- ☐ Other information (please specify):

---

[1]Wetlands are identified and delineated using the methods and criteria established in the Corps Wetland Delineation Manual (87 Manual) (i.e., occurrence of hydrophytic vegetation, hydric soils and wetland hydrology).

[2]The term "adjacent" means bordering, contiguous, or neighboring. Wetlands separated from other waters of the U.S. by man-made dikes or barriers, natural river berms, beach dunes, and the like are also adjacent.

EXHIBIT 2

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05-11745RWZ

BARBARA DEIGHTON HAUPT, Trustee of
BD REALTY TRUST,

     Plaintiff

v.

TOWN OF WAREHAM acting by and
through the BOARD OF SELECTMEN OF
THE TOWN OF WAREHAM, and the
BOARD OF SELECTMEN OF THE TOWN
OF WAREHAM,

     Defendants

DEFENDANTS' SUPPLEMENTATION
TO THEIR WITNESS LIST

Now come the defendants in the above captioned matter and hereby supplement their list of witnesses expected to be called at the trial of this matter as follows.

    1.    Christine Godfrey (fact witness)
        Chief, Regulatory Division
        New England District, Corps of Engineers
        696 Virginia Road
        Concord, MA 01742-2751

The defendants anticipate that Ms. Godfrey will testify as to her observations of the tidal conditions and the extent of the jurisdiction of the Army Corps of Engineers at the subject property.

                    Defendants,

                    By their attorneys,

                    Richard Bowen (BBO# 552814)
                    Jeffrey T. Blake (BBO# 655773)
                    Kopelman and Paige, P.C.
                    101 Arch Street
                    Boston, MA  02110-1109
                    (617) 556-0007

307764/WARE/0224

CERTIFICATE OF SERVICE

I, Jeffrey T. Blake, hereby certify that on the below date, I served a copy of the foregoing Defendants' Supplementation of their Witness List, by first class mail, postage prepaid, and facsimile to the following counsel of record:

> Kristen M. Ploetz, Esq.
> Phillips & Angley
> One Bowdoin Square
> Boston, MA 02114

Dated: 2/27/07

Jeffrey T. Blake

**EXHIBIT 3**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05-11745RWZ

BARBARA DEIGHTON HAUPT, Trustee of
BD REALTY TRUST,

     Plaintiff

v.

TOWN OF WAREHAM acting by and
through the BOARD OF SELECTMEN OF
THE TOWN OF WAREHAM, and the
BOARD OF SELECTMEN OF THE TOWN
OF WAREHAM,

     Defendants

DEFENDANTS' SUPPLEMENTATION
TO THEIR WITNESS LIST

Now come the defendants in the above captioned matter and hereby supplement
their list of witnesses expected to be called at the trial of this matter as follows.

1.    Karen Adams (fact witness)
      Regulatory Division
      New England District, Corps of Engineers
      696 Virginia Road
      Concord, MA 01742-2751

The defendants anticipate that Ms. Adams will testify as to her observations of the
tidal conditions and the extent of the jurisdiction of the Army Corps of Engineers at the
subject property.

Defendants,

By their attorneys,

Richard Bowen (BBO# 552814)
Jeffrey T. Blake (BBO# 655773)
Kopelman and Paige, P.C.
101 Arch Street
Boston, MA 02110-1109
(617) 556-0007

307764/WARE/0224

CERTIFICATE OF SERVICE

I, Jeffrey T. Blake, hereby certify that on the below date, I served a copy of the foregoing Defendants' Supplementation of their Witness List, by first class mail, postage prepaid, and facsimile to the following counsel of record:

Kristen M. Ploetz, Esq.
Phillips & Angley
One Bowdoin Square
Boston, MA 02114

Dated: 3/5/07

Jeffrey T. Blake