UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05-11745RWZ

BARBARA DEIGHTON HAUPT, Trustee of
BD REALTY TRUST,

      Plaintiff

v.

TOWN OF WAREHAM acting by and
through the BOARD OF SELECTMEN OF
THE TOWN OF WAREHAM, and the
BOARD OF SELECTMEN OF THE TOWN
OF WAREHAM,

      Defendants

DEFENDANTS' MOTION FOR
LEGAL RULING RESTRICTING
PLAINTIFF'S EVIDENCE OF
WETLAND RESOURCE
DELINEATION AT SUBJECT
PROPERTY

Now come the defendants in the above captioned matter and hereby move and request that this Court declare that plaintiff is judicially estopped from presenting evidence of wetland resource delineation at the subject property that contradicts evidence presented when plaintiff requested a superseding order of conditions from the Massachusetts Department of Environmental Protection. For further reasons therefor, the defendants state as follows.

I.    <u>INTRODUCTION</u>

This is an eminent domain case arising out of the defendants taking of plaintiff's beach front property in the Town of Wareham. Plaintiff has brought this action pursuant to M.G.L. c. 79, claiming that the pro tanto awarded by the Town did not justly compensate her for the value of the taken property. As a result, plaintiff has engaged a wetland expert who has opined that there are no regulatory constraints on her developing

the subject property as a 250 membership non-profit beach club with an estimated value of $3,125,000.00.

## II.    RELEVANT FACTS

Plaintiff was denied an Order of Conditions to construct a duplex on the subject property by the Wareham Conservation Commission.  Plaintiff appealed the Wareham Conservation Commission's denial of the Order of Conditions to the Massachusetts Department of Environmental Protection.  On or about August 12, 2003, the Massachusetts Department of Environmental Protection issued a Superseding Order of Conditions regarding the development of a duplex home at the subject property.[1]  A true and accurate copy of the Superseding Order of Conditions is attached hereto as Exhibit A.  The Superseding Order allowed the plaintiff to construct the above referenced duplex. Thus, the issuance of the Superseding Order conveyed a significant benefit on the plaintiff.  In the Superseding Order, the plaintiff submitted and the DEP relied upon a plan depicting wetland resource areas at the subject property; Plan of Land in Wareham, Mass. Prepared for BD Realty Trust by Vautrinot Land Surveying, Inc. May 7, 2001 revised thru March 28, 2003 (the "Vautrinot Plan").  A true and accurate copy is attached to the Superseding Order of Conditions, see Exhibit A.  The Vautrinot Plan identifies a salt marsh area that encompasses a significant amount of an existing parking area.

As stated above, plaintiff has retained numerous experts in an attempt to establish the highest and best use of the subject property.  In arriving at their decision, plaintiff's wetland expert has determined that no regulatory barriers exist for the construction of a 250 member non-profit beach club with attendant parking.  See Expert Report of Lenore

---

[1] The issuance of a Superseding Order of Conditions in this instance preempted the Wareham Conservation Commission's denial of an Order of Conditions and allowed the plaintiff to construct the proposed duplex.

White at pp. 16-26. A true and accurate copy of Ms. White's Report is attached hereto as Exhibit B. That decision is based on plaintiff's wetland expert's delineation of wetland resources at the subject property which is contradictory to the delineation depicted on the Vautrinot Plan. Indeed, Ms. White while acknowledging the Vautrinot Plan, claims that "the area of the Vautrinot Plan which depicts 'existing parking lot' did not consist of salt marsh . . . at the time of the taking in December 2003 and therefore would not have been subject to the performance standards for salt marsh." See Exhibit B, White's Report at p. 17.

Notwithstanding Ms. White's opinion to the contrary, the Vautrinot Plan clearly delineates approximately 23,500 square feet of Salt Marsh in what was the existing parking area. See Exhibit A, Vautrinot Plan. The plaintiff's proposed highest and best use of the subject property is predicated on the use of this salt marsh area as parking. A true and accurate plan depicting the plaintiff's highest and best use of the subject property is attached hereto as Exhibit C.

III.    ARGUMENT

The plaintiff's wetland expert should be judicially estopped from presenting any evidence or testimony that contradicts any information submitted by the plaintiff in its application to the DEP for a Superseding Order of Conditions. As detailed above, the plaintiff's proposed highest and best use of the subject property, a non-profit beach club, is dependent upon a showing that the proposed parking area is not subject to wetland or other regulation. It is the plaintiff's position that the Vautrinot Plan depicts significantly more salt marsh than was actually present. The defendants' position is that the Vautrinot Plan depicts at least the extent of the salt marsh at the site at the time of taking.

3

Accordingly, if the plaintiff is estopped from presenting evidence that contradicts the Vautrinot Plan, plaintiff will have a heavy burden of establishing that a non-profit beach club would be the highest and best use of the subject property.

The doctrine of judicial estoppel or preclusion of inconsistent positions prevents a litigant from pressing a claim that is inconsistent with a position taken by that litigant either in a prior legal proceeding or in an earlier phase of the same proceeding. Patriot Cinemas, Inc. v. Gen. Cinema Corp., 834 F.2d 208, 212 (1st Cir. 1987); see also Intergen N.V. v. Grina, 344 F.3d 134, 144 (1st Cir. 2003) and cases cited. This circuit recognizes the doctrine. Id. The doctrine of judicial estoppel is invoked in those situations where "a party has adopted one position, secured a favorable decision, and then taken a contradictory position in search of legal advantage." See id. "Unlike the doctrine of issue preclusion, judicial estoppel does not require that the issue have been actually litigated in the prior proceeding. Thore v. Howe, 466 F.3d 173, 181 (1st Cir. 2006).

In this matter, this Court should invoke the doctrine of judicial estoppel and exclude any and all evidence presented by the plaintiff that would contradict the wetland resource delineation contained in the Vautrinot Plan. It is clear that plaintiff has adopted the position that the Vautrinot Plan was an accurate depiction of the wetland resource areas in order to gain approval for the construction of a duplex on the subject property from the Department of Environmental Protection. Yet now, when plaintiff is attempting to litigate this eminent domain case and stands to reap significantly more compensation if the Vautrinot Plan is not accurate, plaintiff takes the position that the Vautrinot Plan is not accurate.

On the one hand, plaintiff relied upon the Vautrinot Plan when it was convenient and would benefit her, but quickly abandons her position when the plan would no longer provide her with the maximum benefit.  The doctrine of judicial estoppel is "designed to ensure that parties proceed in a fair and aboveboard manner, without making improper use of the court system" and should be invoked in this matter  Id. citing New Hampshire v. Maine, 532 U.S. 742, 749-750 (2001).  Accordingly, this Court should exercise its discretion and find that plaintiff is judicially estopped from presenting evidence or testimony that would undercut her prior submission to the DEP.  See Patriot Cinemas, Inc. v. Gen. Cinema Corp., 834 F.2d 208, 212 (1st Cir. 1987).

Defendants,

By their attorneys,

Richard Bowen (BBO# 552814)
Jeffrey T. Blake (BBO# 655773)
Kopelman and Paige, P.C.
101 Arch Street
Boston, MA  02110-1109
(617) 556-0007

308496/WARH/0224

5



COMMONWEALTH OF MASSACHUSETTS
EXECUTIVE OFFICE OF ENVIRONMENTAL AFFAIRS
DEPARTMENT OF ENVIRONMENTAL PROTECTION
SOUTHEAST REGIONAL OFFICE
20 RIVERSIDE DRIVE, LAKEVILLE, MA 02347  508-946-2700

MITT ROMNEY
Governor

KERRY HEALEY
Lieutenant Governor

ELLEN ROY HERZFELDE
Secret

ROBERT W. GOLLEDGE,
Commission



1 2 AUG 2003

Bob Deighton and Barbara Deighton, Trustees
BD Realty Trust
P.O. Box 878
Marion, Massachusetts 02738

RE:    WAREHAM – Wetlands
       DEP File No. SE 76-1380,
       Superseding Order
       of Conditions.

Dear Mr. & Mrs. Deighton:

Following an in-depth review of the above-referenced file and in accordance with Massachusetts General Laws, Chapter 131, Section 40 (the Act), and its Wetlands Regulations at 310 CMR 10.00, the Department of Environmental Protection has issued the enclosed Superseding Order of Conditions (SOC). This Order approves the proposed work including the removal of an existing concrete pad, and construction of a duplex home on piles, pervious driveway, connection to existing municipal sewerage line and public drinking water supply service located within the following wetland resource areas: Coastal Dune [10.28], Riverfront Area [10.58], and Land Subject to Coastal Storm Flowage (Zone VE (el. 20')) [10.04] as indicated on the Federal Emergency Management Agency (FEMA), Flood Insurance Rate Map (FIRM), revised June 15, 1992. The project also includes nuisance species control (*Phragmites australis*) [10.53(4)] and coastal dune restoration within Barrier Beach [10.29] and salt marsh restoration [10.32]. No work is proposed in Bordering Vegetated Wetland (BVW) [10.55]. Please be advised that the Wareham Conservation Commission established the wetland resource area boundaries through an Order of Resource Area Delineation, DEP File No. SE 76-1222, issued October 18, 2000.

In regard to Riverfront Area, the Department finds that the site qualifies as redevelopment and degraded conditions exist; and, the proponent has provided coastal dune and salt marsh restoration pursuant to 310 CMR 10.58(5).

Any future work not approved within this Superseding Order that is subject to jurisdiction of the Wetlands Protection Act will require the filing, at a minimum, of a Request of Determination of Applicability or a new Notice of Intent with the Conservation Commission and the Department. Prior to commencement of any such future work subject to jurisdiction receipt of a Negative Determination or valid Order of Conditions will be required.

It is the Department's opinion that, as conditioned herein, the permitted portions of the proposed project adequately protect the interest of the Act as cited in the SOC. Please be advised that the Department reserves the right, should there be further proceedings in this matter, to raise additional issues and present further evidence as may be appropriate.

This information is available in alternate format. Call April McCabe, ADA Coordinator at 1-617-556-1171. TDD Service - 1-800-298-2207.

DEP on the World Wide Web: http://www.mass.gov/dep
♻ Printed on Recycled Paper

000000293

EXH. A

→→→ K&P

🖂004

2

If you have any questions concerning this Superseding Order of Conditions, please contact **Dorothy Blickens** at **(508) 946-2781**.

Very truly yours,

*Elizabeth A. Kouloheras*

Elizabeth A. Kouloheras,
Bureau of Resource Protection

K/DB/bh

Enclosure.

CERTIFIED MAIL #7099 3220 0002 0275 3267

cc:      Wareham Conservation Commission

         Vautrinot Land Surveying
         P.O. Box 144
         Plympton, MA 02367

         Susan Blais
         c/o Attorney Susan A. Bernstein, Esq.
         One Bowdoin Square, Suite One
         Boston, MA 02114-2919

ecc:     DEP-SERO-BRP-ATTN: Mitch Ziencina

000000294



**Massachusetts Department of Environmental Protection**
Bureau of Resource Protection – Wetlands

# WPA Form 5 – Superseding Order of Conditions

Massachusetts Wetlands Protection Act M.G.L. c. 131, §40

DEP File Numbe:

SE 76-1380
Provided by DEP

## A. General Information

From:  Department of Environmental Protection
<u>                                        </u>
Issuing Authority

This issuance is for (check one):

☒  Superseding Order of Conditions

☐  Amended Superseding Order of Conditions

To: Applicant:

Bob Deighton and Barbara Deighton, Trustees, BD Realty Trust
Name

P.O. Box 878
Mailing Address

Marion           MA          02738
City/Town       State       Zip Code

Property Owner (if different from applicant):

Same
Name

Mailing Address

City/Town       State       Zip Code

1.  Project Location:

Off Swifts Beach Rd and Wankinco Ave
Street Address

Plat 50B-2
Assessors Map/Plat Number

Wareham
City/Town

Lot B-1
Parcel/Lot Number

2.  Property recorded at the Registry of Deeds for:

Plymouth
County

90432
Certificate (if registered land)

18845
Book

224
Page

3.  Dates:

January 14, 2002
Date Notice of Intent Filed

March 6, 2002
Date Public Hearing Closed

March 26, 2002
Date of Issuance of Local Order

4.  Final Approved Plans and Other Documents (attach additional plan references as needed):

"Plan of Land in Wareham, Mass. Prepared For BD Realty Trust", 1 Sheet, hereinafter referenced as "Site Plan"
Title

Site 5/7/2001 revised thru 3/28/2003
Date

"Foundation Plan, V-Zone Foundation, BD Realty Trust, Plat: 50B-2, Lot B1, 200 Swift Beach Road, Wareham, MA" , 3 Sheets, hereinafter referenced as "Foundation Plan"
Title

4/2/2003 revised thru 4/9/2003
Date

5.  Final Plans and Documents Signed and Stamped by:

Plan 1: Alan C. Vautrinot, Jr., P.L.S.; and, Plan 2: Robert M. Field, P.E.
Name

6.  Total Fee:

$370.00
(from Appendix B: Wetland Fee Transmittal Form)

000000295

**Massachusetts Department of Environmental Protection**
Bureau of Resource Protection - Wetlands

# WPA Form 5 – Superseding Order of Conditions
Massachusetts Wetlands Protection Act M.G.L. c. 131, §40

DEP File Number

SE 76-1380
Provided by DEP

## B. Findings

Findings pursuant to the Massachusetts Wetlands Protection Act:

Following the review of the above-referenced Notice of Intent and based on the information provided in this application and presented at the public hearing, the Department finds that the areas in which work is proposed is significant to the following interests of the Wetlands Protection Act. Check all that apply:

☒ Public Water Supply ☐ Land Containing Shellfish ☒ Prevention of Pollution

☒ Private Water Supply ☒ Fisheries ☒ Protection of Wildlife Habitat

☒ Groundwater Supply ☒ Storm Damage Prevention ☒ Flood Control

Furthermore, the Department hereby finds the project, as proposed, is: (check one of the following boxes)

**Approved** subject to:

☒ the following conditions which are necessary, in accordance with the performance standards set forth in the wetlands regulations, to protect those interests checked above. The Department orders that all work shall be performed in accordance with the Notice of Intent referenced above, the following General Conditions, and any other special conditions attached to this Order. To the extent that the following conditions modify or differ from the plans, specifications, or other proposals submitted with the Notice of Intent, these conditions shall control.

**Denied** because:

☐ the proposed work cannot be conditioned to meet the performance standards set forth in the wetlands regulations to protect those interests checked above. Therefore, work on this project may not go forward unless and until a new Notice of Intent is submitted which provides measures which are adequate to protect these interests, and a final Order of Conditions is issued.

☐ the information submitted by the applicant is not sufficient to describe the site, the work, or the effect of the work on the interests identified in the Wetlands Protection Act. Therefore, work on this project may not go forward unless and until a revised Notice of Intent is submitted which provides sufficient information and includes measures which are adequate to protect the Act's interests, and a final Order of Conditions is issued. A description of the specific information which is lacking and why it is necessary is attached to this Order as per 310 CMR 10.05(6)(c).

**General Conditions** (only applicable to approved projects)

1. Failure to comply with all conditions stated herein, and with all related statutes and other regulatory measures, shall be deemed cause to revoke or modify this Order.

2. This Order does not grant any property rights or any exclusive privileges; it does not authorize any injury to private property or invasion of private rights.

3. This Order does not relieve the permittee or any other person of the necessity of complying with all other applicable federal, state, or local statutes, ordinances, bylaws, or regulations.



**Massachusetts Department of Environmental Protection**
Bureau of Resource Protection - Wetlands

# WPA Form 5 – Superseding Order of Conditions
Massachusetts Wetlands Protection Act M.G.L. c. 131, §40

DEP File Number:

SE 76-1380
Provided by DEP

## B. Findings (cont.)

4.  The work authorized hereunder shall be completed within three years from the date of this Order unless either of the following apply:
    a.  the work is a maintenance dredging project as provided for in the Act; or
    b.  the time for completion has been extended to a specified date more than three years, but less than five years, from the date of issuance. If this Order is intended to be valid for more than three years, the extension date and the special circumstances warranting the extended time period are set forth as a special condition in this Order.

5.  This Order may be extended by the issuing authority for one or more periods of up to three years each upon application to the issuing authority at least 30 days prior to the expiration date of the Order.

6.  Any fill used in connection with this project shall be clean fill. Any fill shall contain no trash, refuse, rubbish, or debris, including but not limited to lumber, bricks, plaster, wire, lath, paper, cardboard, pipe, tires, ashes, refrigerators, motor vehicles, or parts of any of the foregoing.

7.  This Order is not final until all administrative appeal periods from this Order have elapsed, or if such an appeal has been taken, until all proceedings before the Department have been completed.

8.  No work shall be undertaken until the Order has become final and then has been recorded in the Registry of Deeds or the Land Court for the district in which the land is located, within the chain of title of the affected property. In the case of recorded land, the Final Order shall also be noted in the Registry's Grantor Index under the name of the owner of the land upon which the proposed work is to be done. In the case of the registered land, the Final Order shall also be noted on the Land Court Certificate of Title of the owner of the land upon which the proposed work is done. The recording information shall be submitted to the Department on the form at the end of this Order, which form must be stamped by the Registry of Deeds, prior to the commencement of work.

9.  A sign shall be displayed at the site not less then two square feet or more than three square feet in size bearing the words,

    "Massachusetts Department of Environmental Protection" [or, "MA DEP"]

    "File Number SE 76-1380   "

10. Where the Department of Environmental Protection is requested to issue a Superseding Order, the Conservation Commission shall be a party to all agency proceedings and hearings before DEP.

11. Upon completion of the work described herein, the applicant shall submit a Request for Certificate of Compliance (WPA Form 8A) to the Department.

12. The work shall conform to the plans and special conditions referenced in this order.

13. Any change to the plans identified in Condition #12 above shall require the applicant to inquire of the Department in writing whether the change is significant enough to require the filing of a new Notice of Intent.

14. The Agent or members of the Conservation Commission and the Department of Environmental Protection shall have the right to enter and inspect the area subject to this Order at reasonable hours to evaluate compliance with the conditions stated in this Order, and may require the submittal of any data deemed necessary by the Department for that evaluation.

**000000297**



**Massachusetts Department of Environmental Protection**
Bureau of Resource Protection - Wetlands
# WPA Form 5 – Superseding Order of Conditions
Massachusetts Wetlands Protection Act M.G.L. c. 131, §40

DEP File Number:

SE 76-1380
Provided by DEP

## B. Findings (cont.)

15. This Order of Conditions shall apply to any successor in interest or successor in control of the property subject to this Order and to any contractor or other person performing work conditioned by this Order.

16. Prior to the start of work, and if the project involves work adjacent to a Bordering Vegetated Wetland, the boundary of the wetland in the vicinity of the proposed work area shall be marked by wooden stakes or flagging. Once in place, the wetland boundary markers shall be maintained until a Certificate of Compliance has been issued by the Department.

17. All sedimentation barriers shall be maintained in good repair until all disturbed areas have been fully stabilized with vegetation or other means. At no time shall sediments be deposited in a wetland or water body. During construction, the applicant or his/her designee shall inspect the erosion controls on a daily basis and shall remove accumulated sediments as needed. The applicant shall immediately control any erosion problems that occur at the site and shall also immediately notify the Department, which reserves the right to require additional erosion and/or damage prevention controls it may deem necessary. Sedimentation barriers shall serve as the limit of work unless another limit of work line has been approved by this Order.

Special Conditions:  See attached Special Conditions Nos. 1 through 23.

This Order is valid for three years, unless otherwise specified as a special condition pursuant to General Conditions #4, from the date of issuance.

1 2 AUG 2003
_____
Date

Signatures:   *Elizabeth A. Kouloheras*
_____
Elizabeth A. Kouloheras, Bureau of Resource Protection

On _2nd_                          Of _August    2003_
       Day                                     Month and Year

before me personally appeared Elizabeth A. Kouloheras to me known to be the person described in and who executed the foregoing instrument and acknowledged that he/she executed the same as his/her free act and deed.

*Paul P. Slivinski*                          _December 17, 2004_
_____          _____
Notary Public                                My Commission Expires

This Order is issued to the applicant as follows:

☐ by hand delivery on                    ☒ by certified mail on

                                              1 2 AUG 2003
_____          _____
Date                                      Date    7099 3220 0002 0275 3267

000000298



**Massachusetts Department of Environmental Protection**
Bureau of Resource Protection - Wetlands

**WPA Form 5 – Superseding Order of Conditions**
Massachusetts Wetlands Protection Act M.G.L. c. 131, §40

DEP File Number:

SE 76-1380
Provided by DEP

## C. Appeals

Notice of Appeal Rights:

### A)  Appeal Rights and Time Limits

The applicant, the owner, any person aggrieved by the Superseding Order, any owner of land abutting the land upon which the proposed work is to be done, or any ten (10) persons pursuant to M.G.L. c.30A, §10A, are hereby notified of their right to request an adjudicatory hearing pursuant to M.G.L. c.30A, § 10, providing the request is made by certified mail or hand delivery to the Department, with the appropriate filing fee and a DEP Fee Transmittal Form within ten (10) business days from the date of issuance of this Superseding Order, and addressed to:

> Docket Clerk
> Office of Administrative Appeals
> Department of Environmental Protection
> One Winter Street, 3rd Floor
> Boston, MA 02108.

A copy of the request shall at the same time be sent by certified mail or hand delivery to the Conservation Commission, the applicant, and the issuing office of the DEP at:

> DEP Southeast Region
> 20 Riverside Drive
> Lakeville, MA 02347

### B)  Contents of Hearing Request

A Notice of Claim for Adjudicatory Hearing shall comply with the Department's Rules for Adjudicatory Proceedings, 310 CMR 1.01(6), and shall contain the following information:

(a)   the DEP Wetlands File Number, name of the applicant and address of the project;
(b)   the complete name, address, and fax and telephone numbers of the party filing the request, and, if represented by consultant or counsel, the name, fax and telephone numbers, and address of the representative;
(c)   the names, telephone and fax numbers, and addresses of all other parties, if known;
(d)   a clear and concise statement of (1) the facts which are grounds for the proceedings, (2) the objections to this Superseding Order, including specifically the manner in which it is alleged to be inconsistent with the Department's Wetlands Regulations, 310 CMR 10.00, and does not contribute to the protection of the interests identified in the Act, and (3) the relief sought through the adjudicatory hearing, including specifically the changes desired in the Superseding Order
(e)   a statement that a copy of the request has been sent by certified mail or hand delivery to the applicant and the conservation commission.

### C)  Filing Fee and Address

A copy of the Notice of Claim along with a DEP Fee Transmittal Form and a valid check or money order payable to the Commonwealth of Massachusetts in the amount of one hundred dollars ($100) must be mailed to:

> Commonwealth of Massachusetts
> Department of Environmental Protection
> Commonwealth Master Lockbox
> P.O. Box 4062
> Boston, Massachusetts 02211

The request will be dismissed if the filing fee is not paid, unless the appellant is exempt or granted a waiver. The filing fee is not required if the appellant is a city or town (or municipal agency), county, or district of the Commonwealth of Massachusetts, or a municipal housing authority. The Department may waive the adjudicatory hearing filing fee pursuant to 310 CMR 4.06(2) for a person who shows that paying the fee will create an undue financial hardship. A person seeking a waiver must file an affidavit setting forth the facts believed to support the claim of undue financial hardship together with the hearing request as provided above.

Failure to submit all necessary information may result in a dismissal by the Department of the Notice of Claim for an Adjudicatory Hearing.

**Massachusetts Department of Environmental Protection**
Bureau of Resource Protection - Wetlands

DEP File Number

# WPA Form 5 – Superseding Order of Conditions

SE 76-1380

Massachusetts Wetlands Protection Act M.G.L. c. 131, §40

Provided by DEP

## D. Recording Information

This Order of Conditions must be recorded in the Registry of Deeds or the Land Court for the district in which the land is located, within the chain of title of the affected property. In the case of recorded land, the Final Order shall also be noted in the Registry's Grantor Index under the name of the owner of the land subject to the Order. In the case of registered land, this Order shall also be noted on the Land Court Certificate of Title of the owner of the land subject to the Order of Conditions. The recording information on Page 6 of Form 5 shall be submitted to the Department at the address listed below.

Department of Environmental Protection
Southeast Regional Office
20 Riverside Drive
Lakeville, Massachusetts 02347

Detach on dotted line, have stamped by the Registry of Deeds and submit to the Department.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

To:   Attn: Dorothy Blickens, Wetlands Section, Department of Environmental Protection, Southeast Regional Office, 20 Riverside
Drive, Lakeville, MA 02347
<u>Issuing Authority</u>

Please be advised that the Superseding Order of Conditions for the Project at:

Off Swifts Beach Rd and Wankinco Ave          SE 76-1380
<u>Project Location</u>                                         <u>DEP File Number</u>

Has been recorded at the Registry of Deeds of:

Plymouth
<u>County</u>                                    <u>Book</u>                              <u>Page</u>

for:

<u>Property Owner</u>

and has been noted in the chain of title of the affected property in:

<u>Book</u>                                    <u>Page</u>

In accordance with the Superseding Order of Conditions issued on:

<u>Date</u>

If recorded land, the instrument number identifying this transaction is:

<u>Instrument Number</u>

If registered land, the document number identifying this transaction is:

<u>Document Number</u>

<u>Signature of Applicant</u>

Superseding Order of Conditions for SE 76-1380
**Special Conditions:**

1. The Wareham Conservation Commission established the wetland resource area boundaries through an Order of Resource Area Delineation, DEP File No. SE 76-1222, issued October 18, 2000.

2. No work is proposed or permitted in Bordering Vegetated Wetland (BVW) [10.55].

3. *Prior to commencement of any construction*, and in an effort to protect existing vegetated dune areas, an erosion control barrier consisting of a row of hay bales staked end to end and a siltation fence firmly anchored with six (6) inches of soil shall be placed five feet outward from and parallel to the proposed duplex home *construction footprint*. This footprint includes the duplex building and deck(s), drywells and driveway. Access to the construction footprint can be achieved via the existing drive and directly adjacent degraded parking area. If the existing concrete pad cannot be removed within a 24-hour period, then anchored siltation fence shall be installed around this work area. The erosion control barrier shall serve as the limit of work. No equipment or vehicles are allowed beyond the limit or work for the duplex construction and concrete pad removal.

4. All areas disturbed during construction shall be immediately (within twenty-four hours) stabilized against erosion and revegetated with American Beach Grass [*Ammophila breviligulata*] within thirty (30) days of final on-site grading.

5. The applicant shall notify the Department and the Wareham Conservation Commission, in writing, after the installation of the erosion control barrier and 48 hours before any construction activity commences on the project site.

6. The proposed dwelling is to be constructed on a open pile foundation as shown on the plans of record and shall be in compliance with the structural and first floor elevation requirements of the Massachusetts Uniform Building Code (780 CMR 2102.0) and the Federal Emergency Management Agency as they relate to construction within the coastal high hazard area. The steel piles shall be driven into place and therefore dewatering is not necessary or permitted under this Superseding Order of Conditions.

7. Please refer to Special Condition #6 above. The only "slab" permitted to be constructed under this Superseding Order is a utility core slab with breakaway walls as proposed and shown on the plans of record. As proposed an shown on the "Site Plan" of record, the remainder of the area underneath the duplex shall be pervious consisting of natural sand and planted with American Beach Grass [*Ammophila breviligulata*]. This condition is ongoing and does not expire with the issuance of a Certificate of Compliance.

8. The applicant, owner and/or successor(s) shall provide written notification to the Department and the Wareham Conservation Commission upon installation of the proposed open pile foundation (prior to construction of the duplex dwelling). A statement from a registered Professional Engineer certifying that the proposed open pile foundation has been installed in compliance with the approved plans and conditions of this Superseding Order shall accompany the written notification.

9. As proposed, any driveway shall be constructed with pervious material, such as crushed shells, as shown on the "Site Plan" of record. This condition is ongoing and does not expire with the issuance of a Certificate of Compliance.

10. As proposed, all roof runoff shall be channeled into downspouts and directed into dry wells.

11. Water used to rinse concrete from equipment shall not be discharged to any wetland (i.e. coastal dune, beach, river and/or ocean...).

12. A qualified wetland scientist shall be present at the site during nuisance species control, coastal dune and salt marsh restoration [hereinafter "the restoration areas"] activities; shall supervise these activities; and shall monitor all wetland restoration activities.

13. As proposed the areas of nuisance species vegetation (*Phragmites australis*) adjacent to the existing concrete pad and along the line of boulders adjacent to the salt marsh shall be removed by hand and treated by applicati of an appropriate herbicide (such as RoundUp or similar product) that can be wiped (or brushed) directly on the

Superseding Order of Conditions for SE 76-1380
**Special Conditions Continued:**

the supervision of the previously noted wetland scientist. These areas shall be revegetated with American Beach Grass [*Ammophila breviligulata*].

14. As proposed and shown on the "Site Plan" of record, the four walking paths to coastal beach (2250 square feet), the concrete pad, and additional restoration area surrounding the proposed duplex (6371 square feet) shall be restored as coastal dune and planted with American Beach Grass [*Ammophila breviligulata*].

15. As proposed and shown on the "Site Plan" of record, the applicant shall allow approximately 525 square feet of degraded salt marsh to naturally re-vegetate. The salt marsh restoration area shall be protected from encroachment by the proposed post and rail fence. The split rail fence shall be installed by hand; the fence shall be installed so as to not impede the movement of any wildlife. The use of heavy equipment and/or installation of concrete footings or sono-tubes is prohibited.

16. All restoration activities shall take place in accordance with the Notice of Intent, additional information submitted under the "Notice of Project Change" to the Secretary of the Executive Office of Environmental Affairs pursuant to the Massachusetts Environmental Protection Act (MEPA), and plans of record except as conditioned within this Superseding Order.

17. No future activity, such as clearcutting, mowing or earth removal activities, that results in the alteration of the restoration areas is permitted. This condition is ongoing and shall not expire with the issuance of a Certificate of Compliance.

18. Any non-native invasive plant species (e.g. Phragmites, purple loosestrife, buckthorns, etc...) shall be removed b hand from the restoration areas under the supervision of the previously noted wetland scientist.

19. Should at least 75% of the surface area of the restoration areas fail to become re-established with greater than 50% salt marsh and dune species within two years of the restoration attempt, the Department reserves the right t require additional measures necessary to achieve compliance.

20. At the end of each growing season for a two-year period, a progress report on the relative success or failure of the restoration areas shall be submitted to the Department and the Wareham Conservation Commission. The inspection report shall include percent of vegetative cover, a list of the type of plants growing in the salt marsh and dune restoration areas, coverage of the vegetative species as a percentage of all plants, relative vigor of the plants, etc... The report shall also include the recommendations for improvement of poorly established salt mars and dune areas.

21. It is the responsibility of the applicant, owner and/or successor(s) to ensure that all conditions of this Superseding Order are complied with. The project engineer and contractors are to be provided with a copy of this Superseding Order and referenced documents before commencement of work.

22. This Superseding Order of Conditions (SOC) applies only to the removal of the concrete pad and construction of a duplex home on piles, pervious driveway, connection to existing municipal sewerage line and public drinking water supply service. The project under this SOC also includes nuisance species control (*Phragmites australis*), coastal dune and salt marsh restoration. Any future work not approved within this Superseding Order subject to jurisdiction of the Wetlands Protection Act will require the filing, at a minimum, of a Request of Determination of Applicability or a new Notice of Intent with the Conservation Commission and the Department. Prior to commencement of any such future work receipt of a Negative Determination or valid Order of Conditions will be required.

23. Upon completion of the project, a Certificate of Compliance shall be requested in accordance with General Condition No. 11, and under the provisions of 310 CMR 10.05(9)(d). Prior to issuance of the Certificate of Compliance, an "As-Built" plan and statement signed and stamped by a Registered Professional Engineer certifying compliance with the conditions of the Order shall be submitted to this Department with a copy to the Wareham Conservation Commission.

. EK/db



**Massachusetts Department of Environmental Protection**
*Bureau of Resource Protection – Wetlands*    "DENIED"

# WPA Form 5 - Order of Conditions

*Massachusetts Wetlands Protection Act M.G.L. c. 131, §40*

DEP File Number

_____

*for DEP use only*

## A  *Applicant Information*  AND WAREHAM WETLAND PROTECTIVE BY-LAW, DIVISION VI

From:

**Wareham**

Conservation Commission

For:

**SE76-1380**

Project File Number

To:

**BD Realty Trust**

Applicant Name

**P.O. Box 878**

Mailing Address

**Marion**

City/Town

**MA          02738**

State          Zip Code

The project site is located at:

**Wareham - Swifts Beach**

City/Town

**50B-2          B1**

Assessors Map/Plot #          Parcel/Lot #

and the property is recorded at the Registry of Deeds for:

**Plymouth          18845          224**

County          Book          Page

_____

Certificate (if registered land)

The Notice of Intent for this project was filed on:

**January 2002**

Date

The public hearing was closed on:

**March 6, 2002**

Date

Title and Date of final Plans and Other Documents:

**Plan of Land for BD Realty Trust**

by John Veracka Jr. R.P.E. dated May 7, 2001

**Revised 02-10-02 & Foundation**

**Plan dated 02-19-02**

## B  *Findings*

Findings pursuant to the Massachusetts Wetlands Protection Act:

Following the review of the above-referenced Notice of Intent and based on the information provided in this application and presented at the public hearing, this commission finds that the area in which work is proposed is significant to the following interests of the Wetlands Protection Act (check all that apply):

☐ Public Water Supply
☐ Private Water Supply
☐ Groundwater Supply
☒ Flood Control
☐ Land Containing Shellfish
☐ Fisheries
☒ Storm Damage Prevention
☒ Prevention of Pollution
☒ Protection of Wildlife Habitat

Furthermore, this Commission hereby finds that the project, as proposed, is:
(check one of the following boxes)

**Approved subject to:**

☐ the following conditions which are necessary, in accordance with the performance standards set forth in the wetlands regulations, to protect those interests checked above. This Commission orders that all the work shall be performed in accordance with the Notice of Intent referenced above, the following General Conditions, and any other special conditions attached to this Order. To the extent that the following conditions modify or differ from the plans, specifications, or other proposals submitted with the Notice of Intent, these conditions shall control.



**Massachusetts Department of Environmental Protection**
Bureau of Resource Protection – Wetlands

# WPA Form 5 - Order of Conditions

*Massachusetts Wetlands Protection Act M.G.L. c. 131, §40*

**B** *Findings (cont.)*

Denied because:

☑ the proposed work cannot be conditioned to meet the performance standards set forth in the wetlands regulations to protect those interests checked above. Therefore, work on this project may not go forward unless and until a new Notice of Intent is submitted which provides measures which are adequate to protect these interests, and a final Order of Conditions is issued.

☑ the information submitted by the applicant is not sufficient to describe the site, the work, or the effect of the work on the interests identified in the Wetlands Protection Act. Therefore, work on this project may not go forward unless and until a revised Notice of Intent is submitted which provides sufficient information and includes measures which are adequate to protect the Act's interests, and a final Order of Conditions is issued. A description of the specific information which is lacking and why it is necessary is attached to this Order as per 310 CMR 10.05(b)(c).

**General Conditions**

1. Failure to comply with all conditions stated herein, and with all related statutes and other regulatory measures, shall be deemed cause to revoke or modify this Order.

2. The Order does not grant any property rights or any exclusive privileges; it does not authorize any injury to private property or invasion of private rights.

3. This Order does not relieve the permittee or any other person of the necessity of complying with all other applicable federal, state, or local statutes, ordinances, bylaws, or regulations.

4. The work authorized hereunder shall be completed within three years from the date of this Order unless either of the following apply:
   (a) the work is a maintenance dredging project as provided for in the Act; or
   (b) the time for completion has been extended to a specified date more than three years, but less than five years, from the date of issuance. If this Order is intended to be valid for more than three years, the extension date and the special circumstances warranting the extended time period are set forth as a special condition in this Order.

5. This Order may be extended by the issuing authority for one or more periods of up to three years each upon application to the issuing authority at least 30 days prior to the expiration date of the Order.

6. Any fill used in connection with this project shall be clean fill. Any fill shall contain no trash, refuse, rubbish, or debris, including but not limited to lumber, bricks, plaster, wire, lath, paper, cardboard, pipe, tires, ashes, refrigerators, motor vehicles, or parts of any of the foregoing.

7. This Order does not become final until all administrative appeal periods from this Order have elapsed, or if such an appeal has been taken, until all proceedings before the Department have been completed.

8. No work shall be undertaken until the Order has become final and then has been recorded in the Registry of Deeds or the Land Court for the district in which the land is located, within the chain of title of the affected property. In the case of recorded land, the Final Order shall also be noted in the Registry's Grantor Index under the name of the owner of the land upon which the proposed work is to be done. In the case of registered land, the Final Order shall also be noted on the Land Court Certificate of Title of the owner of the land upon which the proposed work is done. The recording information shall be submitted to this Conservation Commission on the form at the end of this Order, which form must be stamped by the Registry of Deeds, prior to the commencement of the work.

9. A sign shall be displayed at the site not less than two square feet or more than three square feet in size bearing the words,
   "Massachusetts Department of Environmental Protection"
   [or, "MA DEP"] "File Number

   SE76-1380
   _____
   *Project File Number*

10. Where the Department of Environmental Protection is requested to issue a Superseding Order, the Conservation Commission shall be a party to all agency proceedings and hearings before the Department.

11. Upon completion of the work described herein, the applicant shall submit a Request for Certificate of Compliance (WPA Form 8A) to the Conservation Commission.

12. The work shall conform to the following attached plans and special conditions:

    Final Approved Plans (attach additional plan references as needed) :

    Plan of Land for BD Realty Trust & Foundation Plan
    _____
    *Title*
    May 7, 2001 Rev. 02-10-02 & 02-19-02
    _____
    *Dated*
    John Veracka Jr. R.P.E.
    _____
    *Signed and Stamped by*
    Wareham Conservation Commission & D.E.P.
    _____
    *On file with*



**Massachusetts Department of Environmental Protection**
*Bureau of Resource Protection – Wetlands*

# WPA Form 5 - Order of Conditions

*Massachusetts Wetlands Protection Act M.G.L. c. 131, §40*

**B** *Findings (cont.)*

13. Any changes to the plans identified in Condition # 12 above shall require the applicant to inquire of the Conservation Commission in writing whether the change is significant enough to require the filing of a new Notice of Intent.

14. The Agent or members of the Conservation Commission and Department of Environmental Protection shall have the right to enter and inspect the area subject to this Order at reasonable hours to evaluate compliance with the conditions stated in this Order, and may require the submittal of any data deemed necessary by the Conservation Commission or Department for that evaluation.

15. This Order of Conditions shall apply to any successor in interest or successor in control of the property subject to this Order and to any contractor or other person performing work conditioned by this Order.

16. Prior to the start of work, and if the project involves work adjacent to a Bordering Vegetated Wetland, the boundary of the wetland in the vicinity of the proposed work area shall be marked by wooden stakes or flagging. Once in place, the wetland boundary markers shall serve as the limit of work (unless another limit of work line has been noted in the plans of record) and be maintained until a Certificate of Compliance has been issued by the Conservation Commission.

17. All sedimentation barriers shall be maintained in good repair until all disturbed areas have been fully stabilized with vegetation or other means. At no time shall sediments be deposited in a wetland or water body. During construction, the applicant or his/her designee shall inspect the erosion controls on a daily basis and shall remove accumulated sediments as needed. The applicant shall immediately control any erosion problems that occur at the site and shall also immediately notify the Conservation Commission, which reserves the right to require additional erosion and/or damage prevention controls it may deem necessary.

Special Conditions (Use additional paper if necessary)

    See attached.

_____

_____

_____

_____

_____

_____

**Findings as to municipal law, bylaw, or ordinance**

Furthermore, the

_____
*Conservation Commission*

hereby finds (check one that applies):

☐ that the proposed work cannot be conditioned to meet the standards set forth in a municipal law, ordinance, or bylaw, specifically

_____
*Name and citation of municipal law, bylaw, or ordinance*

Therefore, work on this project may not go forward unless and until a revised Notice of Intent is submitted which provides measures which are adequate to meet these standards, and a final Order of Conditions is issued.

☐ that the following additional conditions are necessary to comply with a municipal law, bylaw, or ordinance, specifically

_____
*Name and citation of municipal law, bylaw, or ordinance.*

The Commission orders that all the work shall be performed in accordance with the said additional conditions and with the Notice of Intent referenced above. To the extent that the following conditions modify or differ from the plans, specifications, or other proposals submitted with the Notice of Intent, the conditions shall control.

Additional conditions relating to municipal law, bylaw, or ordinance:

_____

_____

_____

_____

_____

_____

_____

_____

000000305



**TOWN OF WAREHAM**
CONSERVATION COMMISSION
MEMORIAL TOWN HALL
54 MARION ROAD
Wareham, Massachusetts 02571

BD Realty Trust
Decision - SE76-1380

The project is hereby denied for the following reasons:

The project does not meet the performance standards at 310 CMR 10.28(3), coastal dunes. The project will hinder the landward or lateral migration of the coastal dune.

Also, the applicant was claiming that the project was a redevelopment project within previously degraded Riverfront Area and therefore did not require the Alternatives Analysis that is normally required for work within a Riverfront Area under 310 CMR 10.58. The information submitted did not accurately reflect the previously degraded areas at the site and included areas in the square footage calculations that the Commission does not consider to be degraded, these being pathways through dunes and areas of Phragmite growth. Therefore the Commission was not convinced through the information submitted that an Alternatives Analysis would not be required. The information relative to the methodology of the proposed salt marsh restoration portion of the project was incomplete and untimely in terms of its submittal.

Because of this, the Commission also feels that the project should be denied due to lack of information under 310 CMR 10.05(6)(c).

**Massachusetts Department of Environmental Protection**
Bureau of Resource Protection – Wetlands

# WPA Form 5 - Order of Conditions

*Massachusetts Wetlands Protection Act M.G.L. c. 131, §40*

## B   Findings *(cont.)*

This Order is valid for three years, unless otherwise specified as a special condition pursuant to General Conditions #4, from the date of issuance.

March 26, 2002
*Date*

This Order must be signed by a majority of the conservation commission. The Order must be mailed by certified mail (return receipt requested) or hand delivered to the applicant. A copy also must be mailed or hand delivered at the same time to the appropriate regional office of the Department of Environmental Protection.

Signatures:

On this 8th

day of MARCH

*Month*

2002

*Year*

before me personally appeared

Douglas S. Westgate

to me known to be the person described in and who executed the foregoing instrument and acknowledged that he/she executed the same as his/her free act and deed.

Karen A. Forand    Karen A. Forand
*Notary Public*

September 2, 2005
*My commission expires*

This Order is issued to the applicant as follows:

☐ by hand delivery on

_____
*Date*

☒ by certified mail, return receipt requested, on

March 26, 2002#70001670000327062513
*Date*

## C   Appeals

The applicant, the owner, any person aggrieved by this Order, any owner of land abutting the land subject to this Order, or any ten residents of the city or town in which such land is located, are hereby notified of their right to request the appropriate Department of Environmental Protection Regional Office to issue a Superseding Order of Conditions. The request must be made by certified mail or hand delivery to the Department, with the appropriate filing fee and a completed Appendix E: Request for Departmental Action Fee Transmittal Form, as provided in 310 CMR 10.03(7) within ten business days from the date of issuance of this Order. A copy of the request shall at the same time be sent by certified mail or hand delivery to the conservation commission and to the applicant, if he/she is not the appellant.

The request shall state clearly and concisely the objections to the Order which is being appealed and how the Order does not contribute to the protection of the interests identified in the Massachusetts Wetlands Protection Act (M.G.L. c. 131, §40 and is inconsistent with the wetlands regulations (310 CMR 10.00). To the extent that the Order is based on a municipal bylaw, and not on the Massachusetts Wetlands Protection Act or regulations, the Department of Environmental Protection has no appellate jurisdiction.



**Massachusetts Department of Environmental Protection**
Bureau of Resource Protection – Wetlands

# WPA Form 5 - Order of Conditions

*Massachusetts Wetlands Protection Act M.G.L. c. 131, §40*

**D** **Recording Information**

This Order of Conditions must be recorded in the Registry of Deeds or the Land Court for the district in which the land is located, within the chain of title of the affected property. In the case of recorded land, the Final Order shall also be noted in the Registry's Grantor Index under the name of the owner of the land subject to the Order. In the case of registered land, this Order shall also be noted on the Land Court Certificate of Title of the owner of the land subject to the Order of Conditions. The recording information shall be submitted to the

Wareham
_____
*Conservation Commission*

on the form below, which must be stamped by the Registry of Deeds.

- - - - - - - - - - Detach on dotted line and submit to the Conservation Commission. - - - - - - - - - - - - - -

To:
_____
*Conservation Commission*

Please be advised that the Order of Conditions for the project at

_____
*Project Location*                          *DEP File Number*

has been recorded at the Registry of Deeds of

_____
*County*

and has been noted in the chain of title of the affected property in

_____
*Book*

_____
*Page*

in accordance with the Order of Conditions issued on

_____
*Date*

If recorded land, the instrument number which identifies this transaction is

_____
*Instrument Number*

If registered land, the document number which identifies this transaction is

_____
*Document Number*

_____
*Signature of Applicant*

000000303



Plan of Land
in
# WAREHAM, MASS.
Prepared for
## BD REALTY TRUST
MAY 7, 2001

Scale: 1" = 30'

VAUTRINOT LAND SURVEYING, INC.
Engineers & Land Surveyors
PO Box 144 - Plympton, Ma.
(781)-585-5505    Fax-(781)-585-5520

Drawn By: CTH    VLS-407

**AREAS IN INNER AND OUTER RIPARIAN ZONES:**

1.) DEGRADED AREAS: 26,100 S.F.
    TO BE RESTORED: 24,285 S.F.
    EXISTING CONC. PAVING TO BE
    PARKING LOT ON SALT MARSH= 23,500 S.F.

2.) AREAS TO BE RESTORED: 2,025 S.F.
    AREA OF PROP. CONC. SLAB = 1,500 S.F.
    RESTORE DEGRADED SALT MARSH= 525 S.F.

3.) NEW AREA OF CONSTRUCTION: 1865 S.F.

4.) PROPOSED FOOTPRINT OVER EXISTING SLAB= 1130 S.F.

**NOTES:**
1.) ROOF DRAIN LEADERS TO BE DIRECTED TO DRYWELLS.

2.) ALL GRASS TO BE AMERICAN BEACH GRASS, PLANTED 18" O.C., 2 CULMS PER HOLE.

3.) ALL RESOURCE AREAS DELINEATIONS TAKEN FROM PLAN ACCOMPANYING ABBREVIATED NOTICE OF RESOURCE AREA DELINEATION FOR BD REALTY CORP. PREPARED BY THOMPSON SURVEYING & ENGINEERING INC. DATED MAY 4, 2000. REVISED THRU JUNE 16, 2000, WHICH WAS DETERMINED TO BE ACCURATE BY THE WAREHAM CONSERVATION COMMISSION BY ORDER DATED OCT. 16, 2000.

4.) FEMA FLOOD ZONE = VE(ELEVATION 20), SEE FIRM COMMUNITY PANEL 255223 0007D

5.) ±1% ELEVATIONS REFER TO N.G.V.D. 1929 DATUM.

6.) PROPERTY IS SHOWN AS LOTS B1, B AND AN UNNUMBERED LOT ON PARTIAL ASSESSORS MAP 50B-2.

7.) ++++++ = SHOW FENCE
    ........ = EDGE OF COASTAL DUNE

8.) NO WORK IS TO REDUCE THE DUNE IN EITHER VOLUME OR ELEVATION AND TRUCKED IN IS TO BE COMPATIBLE IN SIZE OF GRAIN AND TEXTURE TO THE NATIVE BEACH SAND.

Locus Map
not to scale

WAREHAM
RIVER

WAREHAM RIVER

WANKINCO AVENUE

AVENUE

BEACH ROAD

SWIFTS

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.: 05-11745RWZ

BARBARA DEIGHTON HAUPT, Trustee )
of BD REALTY TRUST,                )
          Plaintiff              )
                                 )
v.                                 )
                                 )
THE TOWN OF WAREHAM acting by      )
and through the BOARD OF           )
SELECTMEN OF THE TOWN OF           )
WAREHAM, and the BOARD OF          )
SELECTMEN OF THE TOWN OF           )
WAREHAM,                           )
          Defendants            )

## EXPERT REPORT OF LENORE WHITE, WETLANDS SCIENTIST

### I.    Witness

Lenore White
Professional Wetland Scientist
Wetland Strategies, Inc.
5 Main Street Ext., Suite 303
Plymouth, MA  02360

### II.    Introduction

This report and the opinions expressed herein are submitted by Lenore White of Wetland

Strategies, Inc. (WSI), on behalf of Plaintiff, Barbara Deighton Haupt, Trustee of BD Realty

Trust, in the above-referenced matter.  This report is submitted in accordance with Fed. R. Civ.

P. 26(a)(2).

### III.    Witness Qualifications

    A.    General Background[1]

---

[1] A copy of my curriculum vitae is attached hereto as **Exhibit A**.

1

**EXH. B**

I am currently employed by Wetland Strategies, Inc. (WSI) of Plymouth, Massachusetts. I am also the president and owner of Wetland Strategies, Inc. Wetland Strategies, Inc. was incorporated in October of 2005. As the sole employee of WSI, I am responsible for all aspects of the operation of the company. My clients included a diverse group of individuals, developers, engineering firms, attorneys and municipalities. My services include providing clients with expert advice on all aspects of wetlands science and permitting needs including obtaining proper permits, providing regulatory interpretation, and assisting municipalities with implementation and enforcement of the State Wetlands Protection Act.

Prior to owning and working for WSI, I worked as an Environmental Analyst for the Massachusetts Department of Environmental Protection (MADEP) for approximately twenty-three (23) years. Specifically, I was employed by MADEP from October, 1981 through September, 2004. In 1985, I began working within the Wetlands and Waterways Program of MADEP. In this position, I was responsible for implementing and enforcing all aspects of the State Wetlands Protection Act and the regulations promulgated thereunder. My responsibilities while working for MADEP included, but were not limited to the following:

1.  preparing and issuing permits pursuant to the State Wetlands Protection Act regulations and the State Water Quality Standards;

2.  supervising subordinate wetland staff members;

3.  identifying wetland resource areas;

4.  conducting site inspections and public meetings;

5.  testifying as an expert witness; and

6.  preparing and presenting technical outreach sessions.

Since October, 1991 I have been certified as a Professional Wetland Scientist by the

National Society of Wetland Scientists.  <u>See</u> **Exhibit B** – Certification.

B.      <u>List of Publications Authored by Witness Within Last Ten (10)Years</u>

None in the last ten years.

C.      <u>Compensation to be Paid to Witness for Study and Testimony</u>

My hourly rate is billed at $100.00 an hour.  Through the period ending February 28,

2006, I have billed BD Realty Trust a total of $4,422.06 for services rendered.  In addition, BD

Realty Trust paid a $500.00 retainer for my services.  For purposes of testifying as an expert

witness, my hourly rate is $150.00 an hour.

D.      <u>Listing of Other Cases in Which Witness Has Testified as an Expert at Trial or by</u>
        <u>Deposition Within Last Four (4) Years</u>

I testified as an expert witness for the Department of Environmental Protection in the

matter of <u>David Armstrong v. Tom and Nancy Zotos</u> of Marshfield in a case tried before the

Department of Environmental Adjudicatory Law Judge.  I testified as to the accuracy of the

wetland resource areas and whether or not the erection of a stockade fence in the buffer zone was

a permissible activity.

**IV.     Statement of Opinions**

A.      <u>Complete Statement of Opinions and Basis and Reasons Therefor</u>

1.      <u>Background as to Why I Was Retained</u>

In December, 2005, I was retained by the law firm of Phillips & Angley on behalf of the

Plaintiff, Barbara Deighton Haupt, Trustee of BD Realty Trust ("the Trust"), to determine the

wetlands resource area delineation, as defined by the Massachusetts Wetlands Protection Act

("WPA") and the regulations promulgated thereunder, on a 5.35 acre waterfront parcel of land

located off of Swifts Beach Road in Wareham, Massachusetts ("the Premises"), and to render a

report in accordance therewith.  I was retained to provide a report expressing my opinions as to

3

the wetlands resource areas existing on the Premises at the time the Town of Wareham took it by eminent domain in December 2003, which would, in turn, determine where work or activity (as defined by the WPA) could occur on the Premises and whether such work or activity would require permits under the WPA.

Specifically, the scope of the services I was retained to provide included the following:

1.    site inspection of the Premises;

2.    flagging of wetland resource areas on the Premises;

3.    review and analysis of publicly available information regarding the Premises;

4.    review and analysis of historical photographs and video of the Premises;

5.    render a written report of opinions regarding my findings; and

6.    testify at trial.

A determination of the wetland resource areas existing on the Premises at the time of the taking was needed because the classification or type of wetland resource areas on the Premises could affect what work or activity is allowed, the location and scope of such work and the criteria (performance standards) that would apply to such work. All of these concerns could affect the possible uses of the property. Specifically, the primary reason that I was retained was because there were existing plans of the Premises that indicated that there was salt marsh on an area of the Premises that was actively used as a parking lot, a use that is inconsistent with salt marsh performance standards found in the WPA Regulations. Due to the inconsistency between the resource delineation and the existing use of that area, it was imperative to determine whether this portion of the Premises was available for use, from a wetlands perspective, in determining the highest and best use of the Premises as a whole.

2.    <u>Data and Information Which Form the Basis of My Opinions</u>

4

Upon being retained, I reviewed several documents in order to obtain background information about the Premises prior to my conducting a visual site inspection. Specifically, I reviewed the following documents:

- "Plan Accompanying Abbreviated Notice of Resource Area Delineation on Land in Wareham, MA prepared for Glick Realty Corporation", drawn by Thompson Surveying & Engineering, Inc., dated May 4, 2000 and revised through June 19, 2000 ("ANRAD Plan");

- "Plan of Land in Wareham, Mass. Prepared for BD Realty Trust", drawn by Vautrinot Land Surveying, Inc., dated May 7, 2001 and revised through March 28, 2003 ("Vautrinot Plan");

- Second Notice of Intent filing by BD Realty Trust for the permitting of a duplex home on Swift's Beach property, together with attached letter from Alan C. Vautrinot, Jr., and supporting memorandum of Margaret Ishihara, Esq.;

- Letters dated January 31, 2002 and March 6, 2002 from Mario DiGregorio of Horsley & Whitten, Inc. to David Pichette, Wareham Conservation Administrator;

- Order of Conditions from the Wareham Conservation Commission denying the Second Notice of Intent application;

- BD Realty Trust's Request for Superseding Order of Conditions;

- Notice from the Department of Environmental Protection regarding Environmental Notification Form requirement;

- Environmental Notification Form filed by BD Realty Trust on July 29, 2002;

- Letter dated August 27, 2002 from Mario DiGregorio of Horsely & Whitten, Inc. to William T. Gage of the MEPA Unit at the Executive Office of Environmental Affairs;

- Notice of Project Change filed by BD Realty Trust;

- Certificate of the Secretary of Environmental Affairs on the Notice of Project Change dated June 6, 2003;

- Letter dated August 23, 2003 from the Army Corp of Engineers to BD Realty Trust regarding the retention of existing groins;

- Abutters Appeal of Superseding Order of Conditions;

- Town of Wareham Appeal of Superseding Order of Conditions; and

- Stay Order issued by Administrative Law Judge/Administrative Magistrate, Kristen M. Pallis.

See **Exhibit C** – attached hereto.

After reviewing the foregoing documents, I conducted two visual site inspections of the Premises to identify and delineate wetland resource areas. The site inspections occurred on December 12, 2005, and January 10, 2006. During the course of the site inspections, I noted the presence of wetland resource areas on the Premises. My identification and delineation of wetland resource areas on the Premises was based on my knowledge, experience and expertise in identifying and delineating wetland resource areas. The wetland resource areas, as defined by the WPA Regulations, which I identified on the Premises were as follows:

1. salt marsh;

2. bordering vegetated wetland ("BVW");

3. coastal dunes;

4. land subject to coastal storm flowage;

5. barrier beach; and

6. land under the ocean.

While on the Premises on January 10, 2006, I flagged the salt marsh and BVW wetland resource areas. These flags were later surveyed by McKenzie Engineering Group, Inc., and are shown on a plan entitled "Existing Conditions Plan" originally dated January 30, 2006 and revised through March 7, 2006, prepared by McKenzie Engineering Group, Inc. ("the Existing Conditions Plan"). I have reviewed the Existing Conditions Plan and state that it accurately

6

shows the areas of BVW and salt marsh that I identified and flagged on January 10, 2006. Since there was no delineation plan that showed the location of resource areas on the actual date of taking in December, 2003, the purpose of the January, 2006 effort was to determine the location of resource areas at present and then compare these to the delineation information from 2000, including the ANRAD plan, but also DEP and Wareham Conservation Commission files and photographic and video evidence from 2003 in order to establish the location of resource areas as of the date of taking on December 31, 2003.

After conducting the visual site inspections of the Premises, I then reviewed additional historical information about the Premises, including publicly available information. On February 7, 2006, I conducted a review of the files maintained by the Wareham Conservation Commission for the Premises. I reviewed the information available on the Massachusetts Geographical Information System (MAGIS) network of information. In addition, I reviewed historical photographs of the Premises taken in April 2003 through August 2004. Phillips & Angley on behalf of the Trust provided these photographs to me. I also reviewed a video (DVD format) of the Premises as filmed by the Trust on August 31, 2003. I also reviewed the contents of the Department of Environmental Protection's file, number SE 76-1309, on February 21, 2006. In sum, the foregoing documents that I reviewed after my visual site inspection are as follows:

1. Contents of the Department of Environmental Protection's File No. SE 76-1380, including:

   - Photographs of the site taken by Dorothy Blickens on November 14, 2001
   - Letter dated June 27, 2002 by Susan A. Bernstein, Esq. attorney for the abutters
   - Letter dated October 30, 2002 from Department of Environmental Protection to the Executive Office of Environmental Affairs regarding the ENF
   - On-site inspection report of Dorothy Blickens, dated November 14, 2001
   - Letter dated June 30, 2003 from Department of Environmental Protection regarding the Ch. 91 license application

- BRP- SERO Complaint intake form regarding an anonymous complaint of alleged illegal activity at the Premises

2. Contents of the Wareham Conservation Commission's files for the Premises, including:

- A plan of the Premises prepared by Thompson Surveying & Engineering, Inc. titled "Plan Accompanying Abbreviated Notice of Resource Area Delineation" dated May 2, 2000 (unrevised)
- Plans 2 and 3 of 5 accompanying the Ch. 91 license application, prepared by Vautrinot Land Surveying, Inc. (undated)
- Agent's Report, dated 2/6/02 and 3/6/02 of the Premises
- Memorandum from Tom Skinner, Director of Coastal Zone Management dated October 28, 2002 in response to ENF, EOEA # 12857
- Attachment A, Site Description, prepared by Andrew Walsh, ENSR submitted with the Notice of Intent

3. Existing Conditions Plan prepared by McKenzie Engineering Group, Inc. now dated March 28, 2006;

4. Video of the Premises taken by Barbara Deighton Haupt on or about August 31, 2003;

5. Photographs of the Premises provided to me on or about February 2, 2006 by the law firm of Phillips & Angley on behalf of BD Realty Trust showing portions of the Premises in April 2003, May 2003, September 2003 and August 2004; 1950's photo of beach use with snack bar, parking, beach use and undesignated structure and September, 2005 aerial photo of the premises;

6. Superceding Order of Conditions

7. Barrier Beach Inventory Project, Map Mr-5 produced by the Executive Office of Environmental Affairs, Massachusetts Coastal Zone Management, dated April, 1982;

8. Massachusetts Mouth of Coastal River Maps of the Town of Wareham;

9. "Foundation Plan" prepared by Field Engineering Co., Inc., sheets 1-3, dated April 2, 2003 and revised on April 9, 2003; and

10. Federal Emergency Management Agency flood map, panel 255223 0007D, dated July 15, 1992.

See **Exhibit D** attached hereto.

3.    Analysis and Conclusions

Based on my review of the above-noted materials and my site inspections, I have formed an opinion as to the wetland resource areas that existed on the Premises on or about December 31, 2003, the date that the taking occurred.   Each of the types of wetland resource areas I identified on the Premises are discussed individually as follows.

a.    Presence of Coastal Dunes, Land Subject to Coastal Storm Flowage, Barrier Beach and Land Under the Ocean on the Premises

As stated above, I observed the presence of coastal dunes, land subject to coastal storm flowage, barrier beach and land under the ocean as these resource areas are defined by the WPA Regulations.  Based upon my review of the ANRAD Plan, I determined that it was not necessary for me to independently delineate or flag these particular wetland resource areas because the delineation of these wetland resource areas on the ANRAD Plan was consistent with my inspections of the Premises in December 2005 and January 2006.

A coastal dune is a landform that is created by the movement of sand.   The coastal dunes on the Premises are vegetated with a dense cover of beach grass (*Amophila breviligutata*), which has helped to maintain their presence.  Thus, the location of coastal dune has not changed. The Federal Emergency Management Agency (FEMA) defines Land Subject to Coastal Storm Flowage.   The map prepared by FEMA for the Premises is dated July 15, 1992 and has not been revised in the time between the taking and my site observations. Therefore, the delineation of this resource area has not changed.   The delineation of the barrier beach has not changed, as barrier beaches are comprised of coastal dunes and coastal beaches. The beach has not changed, as the wrack line that I observed appears to coincide with the tidal limits as shown on the ANRAD plan. Land Under the Ocean is the land under the tidal creek that runs perpendicular to the shoreline on the east side of the Premises and I observed the creek to be at the same location as shown on the ANRAD plan. As a result, the delineation of coastal dunes, land subject to

coastal storm flowage, barrier beach and land under the ocean as shown on the ANRAD Plan could independently and accurately serve as the basis for depicting these areas on the Existing Conditions Plan.`

Pursuant to the Notice of Intent filings by the Plaintiff, the Wareham Conservation Commission and the subsequent Superceding Order of Conditions issued by the MADEP, the Trust sought to construct a duplex dwelling on the Premises, at the northwesterly corner of the site. The location of the proposed dwelling, as shown on the Vautrinot Plan, is not within coastal dune, salt marsh, barrier beach and land under the ocean as these resource areas are defined by the WPA Regulations. However, the structure is located within land subject to coastal storm flowage, so that a Notice of Intent filing for an order of conditions is required under 310 CMR 10.02(2).

The Massachusetts Wetlands Protection Act has developed performance standards for the different types of wetland resource area in the regulations found at 310 CMR 10.00 to limit adverse effects to such resource areas. The proposal to construct a structure meets the performance standards of the Wetlands Protection Act for the following reasons. The structure is not proposed within or on a dune; it is proposed within 100 feet, or the buffer zone of the dune. It is to be constructed with the lowest horizontal member to be at elevation 21.0. I visually estimated the elevation of the adjacent coastal dunes to be one to two feet above existing grade, or approximately at elevation 6, 7 or 8. This means that the lowest horizontal component of the structure will be approximately 15 feet above the elevation of the dune. As such, the structure will not have an adverse effect on the coastal dune as it will not affect the ability of waves to remove sand nor will not interfere with the landward or lateral migration of the dune. The Wetlands Protection Act does not include any performance standards for Land Subject to Coastal

Storm Flowage.    The practice of the Department of Environmental Protection has been to allow alteration to areas within Land Subject to Coastal Storm Flowage when the performance standards for other overlapping coastal resource areas have been met. In this case, there are no other resource areas at the location of the proposed duplex.  In addition, the Department has a practice of not allowing solid, vertical walls in a flood zone identified as a velocity zone or "V zone" and requires any structure to be placed on pilings above the elevation of the flood zone. The Proposal shows the structure to be located on pilings, above the elevation of the flood zone and does not include the construction of any vertical walls within the flood zone.  The proposed project thus meets the Department's standards in this regard and would be permitted.

      b.     <u>Presence of Salt Marsh on the Premises</u>.

I observed the presence of salt marsh on the Premises on January 10, 2006.  My identification of the salt marsh was based on my visual site inspection and my knowledge of the definition of a salt marsh found in the WPA Regulations at 310 CMR 10.32(2).  The area of salt marsh that I delineated is accurately shown on the Existing Conditions Plan.

Salt marsh is defined as

a coastal wetland that extends landward up to the highest high tide line, that is, the highest spring tide of the year, and is characterized by plants that are well adapted to or prefer living in, saline soils.

My delineation of the salt marsh was established using the existing vegetation.  Specifically, I noted the presence of _Spartina alterniflora_, _Spartina patens_, _Distichlis spicata_ and _Juncus gerardii,_ and used these species as indicators of the edge of the salt marsh. Areas that did not contain these species were not identified as salt marsh.

My visual site inspection indicated that as of January 10, 2006, the areas of salt marsh were inconsistent with the salt marsh depicted on the ANRAD Plan and the Vautrinot Plan.

Specifically, there were either 1) areas which I observed which did not contain any salt marsh on January 10, 2006 but were indicated as containing salt marsh on the ANRAD Plan; or 2) areas which contained salt marsh on January 10, 2006, but which were smaller than and did not extend as far northerly on the Premises as the area referenced as "salt marsh" on the ANRAD Plan.

The discrepancies between the salt marsh that I observed on January 10, 2006 and what was shown on the ANRAD Plan and Vautrinot Plan were inconsistent with my prior experience and knowledge about the existence or formation of salt marsh. This, together with my understanding that my visual site inspections occurred approximately two (2) years <u>after</u> the taking of the Premises, made me determine that it was necessary to also review additional historical information about the Premises in order to more accurately determine the location and extent of salt marsh on the Premises at the time of the taking. This additional research was necessary particularly in light of the fact that the Vautrinot Plan showed an existing parking lot in the same location as the area noted as "salt marsh" on the ANRAD Plan; yet under the WPA, there can be no work or activity in a salt marsh. Thus a designation of an area purportedly consisting of salt marsh but also shown as the location of existing parking are inconsistent concepts and did not make sense. Resolving this inconsistency is necessary to determine whether the area marked as "existing parking area" was available for use under the Wetlands Protection Act and the implementing regulations at 310 CMR 10.00 et. seq.

As discussed herein, it is my opinion that the reference to "salt marsh" as shown on the ANRAD Plan is not an accurate or reliable indicator of the presence and location of salt marsh at the time that the delineation was made in June 2000, or at the time of taking in December 2003. There are several bases for my conclusion.

     i.      <u>The ANRAD Plan Is Unreliable and Was Not Valid as of the Time of the Taking</u>

In June 2000, the Wareham Conservation Commission approved the ANRAD Plan. Generally, once approved, all plans depicting Abbreviated Notice of Resource Area Delineation, such as the ANRAD Plan for the Premises, are valid for three (3) years.   The plans are generally not amended because the physical characteristics of wetland resource areas, such as the type and percentage of vegetative cover, site elevations, and subsurface soil conditions, do not change substantially over the course of three years.   As a result, approved ANRAD plans typically serve as the basis for determining the presence and location of wetland resource areas on a site in relation to any proposed work or activity for a period of three years, even if those delineations were inaccurately surveyed or if conditions subsequently changed on the site.

In this case, there are several problems with relying on the delineation of salt marsh on the ANRAD Plan as approved.  First, the precise location of the salt marsh is vague.  The contour lines of the salt marsh delineations do not connect or are otherwise indeterminate as to the actual location of the boundary of the salt marsh.  Moreover, the flagging done for salt marsh (depicted on the ANRAD Plan as a $\triangleright\triangleleft$ shape with an "SM" notation) does not appear to coincide with the illustration of grass tufts which usually denote salt marsh on such plans. Further, the notation of "salt marsh" with arrows on the ANRAD Plan does not coincide with the "SM" flagging on the ANRAD Plan.

However, even if I were to assume that the ANRAD Plan intended to show the salt marsh as the area shown as grass tufts—that is, the maximum possible extension of salt marsh on what is otherwise an indeterminate plan—based on my observations of the Premises on January 10, 2006, together with the historical visual evidence of the Premises, the ANRAD Plan is inaccurate as to what actually existed on the ground.  Specifically, not only during my January 10, 2006 observations, but also in the photographs and video taken in 2003, I observed that the area drawn

13

with grass tufts on the ANRAD Plan is actually virtually devoid of the presence of the vegetation that is characteristic of salt marsh.

Moreover, based on my understanding that there has been virtually no activity or work done on the Premises since the taking in December 2003, the Premises are presently in a state of flux, such that salt marsh is becoming _more_ extensive on the site, not less so. That is, given that the area of salt marsh which I observed is smaller and more easterly on the Premises than what is shown on the ANRAD Plan, and given that salt marsh and bordering vegetated wetlands are dynamic wetland resource areas that are subject to change in areas of inactivity, my opinion is that the Premises are becoming increasingly covered with salt marsh from a southerly and easterly direction, and that in December 2003 the Premises could not have possibly contained the extent of salt marsh as shown on the ANRAD Plan.

Finally, the ANRAD Plan, having been approved on October 18, 2000, expired on October 18, 2003 and therefore does not serve as the sole basis for determining the extent of salt marsh on the Premises when it was taken in December 2003.

ii.    Delineation of Salt Marsh under the WPA Regulations Must Take Into Account Site Elevation

As part of my review of additional information to determine the presence and location of salt marsh on the Premises at the time of the taking, I reviewed the Wareham Conservation Commission's records relative to the Premises. Specifically, I reviewed an undated document entitled "Attachment A Site Description", which was prepared by Andrew Walsh of ENSR, an environmental consulting firm. In that document, Mr. Walsh concludes that areas of the Premises, which are above the highest high tide line, do not meet the definition of a salt marsh. The basis for Mr. Walsh's conclusion is the definition of salt marsh found in the WPA Regulations at 310 CMR 10.32, which takes into account the elevation of a site when

14

determining whether salt marsh exists.  I concur with Mr. Walsh to the extent that the elevation

of the site must be considered when defining the extent of the salt marsh.  This is so because of

the definition of a salt marsh found in the Wetlands Protection Act regulations at 310 CMR

10.32.  In part, the definition states that a salt marsh extends landward up to the highest high tide

line.  If areas on the Premises are above the elevation of the highest high tide line, then those

areas do not meet the definition of a salt marsh.  The ANRAD plan shows elevations on the

Premises, but I did not rely on the ANRAD plan as an accurate representation of the site

elevations.  This is so because note number 4 on the ANRAD plan states that the Mean High

Water is at elevation 2.7.   The ANRAD plan also shows the elevation of Mean High Water to

be at or near elevation 4.  Because of the apparent inconsistency of the elevations on the

Premises as shown on the ANRAD plan, I did not rely on the ANRAD plan.   Without having

confidence in the elevations shown on the ANRAD plan, and without any other information on

the elevations on the Premises, I relied on the lack of vegetation in determining the extent of the

salt marsh on the Premises.

   iii. <u>Historical Photographs and Video of the Premises Taken Around the Time of the
Taking Refute the ANRAD Plan's Depiction of Salt Marsh</u>

When I reviewed the historical photographs and video of the Premises, I looked for the

presence of salt marsh. From my review of the photographs and video, together with my

knowledge of the Premises, I made several conclusions about the presence and extent of the

wetland resource areas existing at the time the photographs and video were taken (approximately

four to nine months before the taking). Specifically, I concluded from the April, 2003

photograph that the portion of the Premises which is centrally located and just north of the row

of boulders did not meet the definition of a salt marsh pursuant to the definition found at 310

CMR 10.32. I have reached this conclusion because the visual evidence indicates that the area

did not contain any vegetation that is well adapted to or prefers living in saline soils. In fact, as shown in the photograph, the area did not contain any vegetation and is therefore not a coastal wetland. I arrived at the same conclusion that there was an absence of salt marsh in the central area of the Premises after viewing the DVD, because the video shows cars that are parked in the central area of the site, and there is no vegetation that can be seen. In order for this area to be defined as a salt marsh, it must be "characterized by plants that are well adapted to or prefer living in saline soils" 310 CMR 10.32. Whereas this area is not dominated by vegetation typical of that found in salt marsh, it does not meet the definition of a salt marsh.

Based on my observations of what existed in the 2003 photos and video, I conclude that at the time of the taking, the area noted as "Existing Parking Lot" on the Vautrinot Plan was not a salt marsh and did not contain salt marsh.

    iv.    <u>The Wareham Conservation Commission Has Not Enforced Previous Activity in the Area Noted as Salt Marsh on the ANRAD Plan or in the Area Noted as Existing Parking Lot on the Vautrinot Plan</u>

The Wareham Conservation Commission has a duty to enforce the WPA and the WPA Regulations. In the event that the Commission determines that there is an activity in violation of the WPA or the WPA Regulations, it has the authority to issue an Enforcement Order for such violations. <u>See</u> 310 CMR 10.08.

If the area on the Premises which is shown as "salt marsh" on the ANRAD Plan was, in fact, salt marsh, the Commission had a duty to enforce the provisions of the WPA for the alteration of the salt marsh. However, during my review of the files retained by the Wareham Conservation Commission, I noted that during the time that the Trust owned the Premises, the Commission had not issued any Enforcement Orders regarding the use of the Premises for parking. The Vautrinot plan specifically identifies an area of "existing parking lot." It is clear

from the August 31, 2003 video that cars were parked on an area identified on the Vautrinot Plan as salt marsh, and such activity would be considered alteration of a salt marsh in violation of the WPA Regulations.  At a minimum, based on the Commission's review of the Vautrinot Plan attached to the Trust's Notice of Intent to construct a duplex on the Premises, the Commission had constructive notice that there may have been activity consisting of the parking of vehicles on the Premises.   It is my opinion that the Commission's lack of enforcement action is due to the fact that the Commission either did not consider the parking of cars to be an alteration to the salt marsh or, alternatively, that it did not find salt marsh to exist on the Premises which would preclude such activity.   This opinion is consistent with writings in the file of the MADEP.  In the Department's file for this case, I reviewed a letter dated June 27, 2002 to Ms. Dorothy Blickens from an attorney for some parties opposing the NOI filing.  In that letter, the Department is advised that the applicant is operating a "commercial parking business on other portions of the Property, in which vehicles are being parked in wetland areas which are subject to protection."  The file further indicates that the Department contacted the Wareham Conservation Commission, which did not consider it to be an enforcement matter.

      v.    <u>Summary of the Presence of Salt Marsh on the Premises at the Time of the Taking</u>

Based on the foregoing, it is my opinion that the area of the Vautrinot Plan which depicts "existing parking lot" did not consist of salt marsh, as defined by the WPA Regulations, at the time of the taking in December 2003 and therefore would not have been subject to the performance standards for salt marsh.  The parking of cars in this area, as evidenced by the long history of use of same, and historic photographs and videos documents establish that the area was used as a parking lot.   Use of a salt marsh as a parking lot is not a permissible activity pursuant to the State Wetlands Protection Act.  The performance standards for a salt marsh state

17

that a proposed project in a salt marsh or within 100 feet of a salt marsh or in a body of water

adjacent to a salt marsh shall not destroy any portion of the salt marsh or have an adverse effect

on the productivity of the salt marsh.   Parking vehicles on a salt marsh would result in

destroying the vegetation, and thus would not be permitted.  Parking vehicles in a buffer zone to

a salt marsh may be permitted and indeed was allowed, as evidenced by the historical

photographs and videos which document the practice.   The impacts of parking vehicles in a

buffer zone to a salt marsh may include the potential for automobile fluids to leak into the

substrate below the vehicle.   While this is not necessarily an advantage to the land within the

buffer zone, it is not likely to result in destroying the adjacent salt marsh as any fluids would

likely migrate downward due to the permeable nature of the soils in the buffer zone.  To the

extent that paved parking would be required for permitting purposes by the Town or DEP,

McKenzie Engineering has determined that a drainage system could be designed for the site to

handle automobile fluids or other run-off through catch basins and contaminant separation

devices. Furthermore, my observation revealed that the salt marsh was more extensive in

December of 2005 and January of 2006 than was shown on the Vautrinot Plan, which is dated

June, 2000.  I conclude that the historic use of the buffer zone for parking vehicles has not

resulted in any loss of salt marsh because the salt marsh has now spread out further into the

buffer zone.

     c.     Presence of Bordering Vegetated Wetland (BVW) on the Premises

While conducting my visual site observations of the Premises, I observed a bordering

vegetated wetland (BVW) on the Premises, and delineated the edge of the BVW by flagging it

on January 10, 2006.  The area of BVW that I flagged is accurately shown on the Existing

Conditions Plan.  My delineation of the BVW was based on my expertise and the definition of

BVW as found at 310 CMR 10.55.

Bordering vegetated wetland is defined as "freshwater wetlands that border on creeks, rivers, streams, ponds and lakes." 310 CMR 10.55(2). When I delineated the edge of the BVW on January 10, 2006, I noted the presence of several species of vegetation that are typical of freshwater wetlands including *Phragmites* spp, *Aster vimineus*, and *Panicum virgatum*. I used these species and visually estimated where 50% or more of these species occurred to determine the edge of the BVW. The performance standards for work in a BVW are found in the Wetlands Protection Act Regulations at 310 CMR 10.55 (4) (a). The standards state that any proposed work in a BVW shall not destroy or otherwise impair any portion of this area. Notwithstanding the provisions of paragraph 4(a), the issuing authority may allow the alteration of up to 5,000 square feet of BVW, provided the surface area of the lost area is replaced with an equal area of square footage. In addition, the regulations found at 310 CMR 10.53 (3) allow the alteration of more than 5,000 square feet of BVW, provided the activity qualifies as a "limited project". Limited projects are those activities as defined in 310 CMR 10.53 (3) and include, but are not limited to, the construction of a new roadway or driveway where reasonable means of access from a public way to an upland area is not available.

The ANRAD Plan depicts a somewhat different delineation of BVW than what I observed and flagged. Thus, similar to my analysis of salt marsh, I reviewed the historical photographs and video (both taken in 2003) of the Premises to determine whether the ANRAD Plan accurately depicted BVW on the Premises at the time of the taking. However, I could not determine where the edge of the BVW was in 2003 because neither the photographs nor the video showed the area of the BVW in sufficient detail to allow me to make a conclusion about either 1) the extent and location of the BVW at the time of the taking or 2) the accuracy of the

ANRAD Plan for such purposes. While the ANRAD plan is confusing in defining the edge of

the BVW, and while BVW flags BVW B 1 through B5 do not make sense as there is no end flag

for this B series, there is simply not enough conclusive evidence for me to refute the ANRAD

plan. Therefore, assuming the ANRAD plan to be the operative delineation of BVW at the time

of taking (and which plan was incorporated into the Vautrinot Plan), the access way into the

parking area shown on the Vautrinot Plan would pass through a small section of BVW.

Nevertheless, the location of this access way is well known, as it is depicted in the

photographs and 2003 video. The roadway is a clearly defined two track way worn down to hard

ground, caused by long time use of this area as the access area into the existing parking lot. It is

my opinion that this access way would qualify as a limited crossing area and should and would

properly obtain a permit under the WPA and its regulations. This is so because of the regulations

found at 310 CMR 10.53 (3) (e) which state that the construction and maintenance of a new

driveway or roadway is acceptable, where no other means of access from a public way to an

upland area is available. The Vautrinot plan shows that there is no other access to the proposed

duplex. Access from Swifts Beach Road is not possible due to the presence of the coastal dune

and there is no other public way from which to access the Premises. The regulations found at

310 CMR 10.53 (3) (e) make clear that if there is no other means of access, the issuing authority

may issue an Order of Conditions that allows the work. It has been my experience while

employed at the Department of Environmental Protection that these "limited project" access

roadways and driveways were routinely allowed.

     d.     <u>Classification of the Premises as Riverfront Area</u>

I am aware that the MADEP has issued a Superceding Order of Conditions ("SOC")

allowing the Trust to construct a duplex structure on the Premises based upon the purported

location of the Premises in a Riverfront Area, as defined by the WPA Regulations.    I understand

that the appeal of the SOC is still active and has not been resolved.  Nevertheless, the ability to

use this Premises for a structure such as that proposed by the Trust in its second NOI is not

dependent on its qualification as Riverfront Area.

The definition of a Riverfront Area found at 310 CMR 10.58 (2) states, "When a river

flows into coastal waters or an embayment, the river ends where it no longer has primarily

riverine characteristics." Moreover, in accordance with the definition as found at 310 CMR

10.58, the Riverfront Area extends 200 feet from the Mean High Water elevation in coastal

settings.   At the time the ANRAD Plan was issued in June 2000, the Premises was found to exist

within a Riverfront Area as shown on the ANRAD Plan. The ANRAD Plan shows the Riverfront

Area as the Inner Riparian Zone and the Outer Riparian Zone associated with the Wareham

River.  These areas are shown as 100 and 200 feet, respectively, from Mean High Water.

Based on my observations of the site and my knowledge of the Wetlands Protection Act,

I do not agree that the Premises includes any Riverfront Area.  I have reached this conclusion

based on the characteristics of the site, which include the process of tidal action as evidenced by

the wrack line, the presence of coastal dunes and the salt marsh.   The presence of the wrack line

and coastal resource area is evidence that the Premises is within a coastal environment and not a

riverine one.   The definition of the Riverfront Area found at 310 CMR 10.58 (2) (a) states in

part that "A river is a natural flowing body of water that empties to any ocean....".   The

Premises is an oceanfront parcel and therefore cannot border on a river.   Based on these

characteristics, I conclude that the site is primarily influenced by tidal dynamics and would not

be considered to be part of a riverine system. Moreover, in March 2005, MADEP published

maps of Riverfront Areas in coastal settings.   The MADEP maps definitively show that the

21

Premises do not contain a Riverfront Area as of 2005.

Based on the foregoing, I conclude that the Premises did not contain any Riverfront Area at the time the ANRAD Plan was approved in 2000, much less at the time of taking in December 2003. My conclusion is based on my knowledge and experience that general tidal characteristics of the Premises have not changed since the date of ANRAD Plan as evidenced by what I was able to observe in the August 2003 video of the Premises.

Although I do not agree with the ANRAD Plan's or the SOC's interpretation that the Premises contain Riverfront Area, my conclusions about the wetland resource areas on the Premises would not prohibit the permitting of the structure which was approved by the SOC. The proposed duplex is a permissible activity pursuant to the Wetlands Protection Act because the structure is to be located within an area of Land Subject to Coastal Storm Flowage, for which there are no performance standards. There are no vertical walls proposed, and thus the proposed activity would meet the Department's practice of not allowing any vertical walls in a velocity zone. In addition, the structure is proposed to be elevated on pilings above the flood zone elevation, determined by FEMA to be at elevation 20. This design also comports with the Department's practice of allowing structures in a V-zone, provided they are located on pilings above the elevation of the V-zone. There are no other resource areas that would be affected by the location of the duplex.

    e.    <u>The applicability of the Wetlands Protection Act to proposed plans titled "Conceptual Layout Plan Alternative 1 and Alternative 2.</u>

I have reviewed the Conceptual Layout Plans, Alternative 1 (Conceptual Comprehensive Permit Plan) and Alternative 2 (Conceptual Beach Club Plan) prepared by McKenzie Engineering Group, Inc. each dated March 28, 2006. <u>See</u> **Exhibit E** attached hereto. Each plan

22

depicts a conceptual proposal for using the Premises.   Alternative 1 shows two separate

buildings to be used as condominiums with attendant parking spaces.  I understand Alternative 1

is a concept plan for a condominium to be built under the Massachusetts General Law, Chapter

40B, otherwise known as affordable housing.  When reviewing Alternative 1, I assumed the

structure is to be located on pilings with the lowest horizontal member to be at elevation 21.0 or

higher. I also assumed that the condominiums would be located in areas that are within the buffer

zones( within 100 feet) to a coastal dune and bordering vegetated wetland.[2]  As such, it is my

opinion that the structure would be approved under the State Wetlands Protection Act as it meets

all of the conditions generally required for said activity.  No such uses are located within

resource areas under the WPA and its implementing regulations except for land subject to coastal

storm flowage, which has no performance standards and a limited BVW crossing discussed

before and again hereafter.  The proposed structures would not interfere with the lateral or

landward movement of the dunes, as they would be located above the elevation of the adjacent

dunes. The other performance standards for coastal dunes are met as the proposed structures

would not affect the ability of waves to remove sand from the dune, would not disturb vegetative

cover, would not modify the dune form to effect storm or flood damage, and would not cause the

removal of sand form the dunes.  See 310 CMR 10.28(3).   The performance standards for BVW

would be met as well for the proposed use.   There is no activity or work called for within the

---

[2] I also assume for the purposes of this Report, that Alternative Plan 1 and 2 might be located within the buffer zone
to salt marsh, at least on the easterly side of the premises.  Though such a delineation is not shown on these
alternative plans, in that instance, the performance standard for activity within the buffer area to salt marsh can be
satisfied,  Nevertheless, I seriously question the delineation of salt marsh on the premises as shown on the ANRAD
and Vautrinot Plans.  The ANRAD Plan shows no salt marsh flags on the northerly, westerly or southerly side of the
area denoted as "Salt Marsh."  The only salt marsh flags appear on the easterly side of the premises.  Yet as
indicated previously, the contour lines of that salt marsh delineation do not connect or are otherwise indeterminate
as to the actual location of the boundary of the salt marsh.  I have previously determined that salt marsh did not exist
west of the salt marsh delineation line as of the date of taking on December 31, 2003. Yet, there is no closure of the
salt marsh line easterly of the flagged line.   The Vautrinot Plan labels this area easterly of the flag line as "Area of
Degraded Saltmarsh Restoration."  In my opinion, there is insufficient reliable evidence to determine whether the

BVW, only within the buffer zone to the BVW. The performance standards for work in a BVW state that said work shall not destroy or otherwise impair any portion of said area. Whereas the work is proposed within the buffer zone only, there will be no destruction or impairment to the adjacent BVW. Locating the structures within the buffer zone of a salt marsh, if applicable, would also be permissible, as the structure would not destroy any portion of the salt marsh, or adversely affect the productivity of the salt marsh. Assuming also that the proposed parking areas are to be constructed without any structural features or impervious material, it too would be permissible pursuant to the State Wetlands Protection Act. This is so because there is nothing in the Wetlands Protection Act that specifically prohibits parking in Land Subject to Coastal Storm Flowage. In addition, I am not aware of any cases where the Department has not allowed parking within Land Subject to Coastal Storm Flowage.

Alternative number 2 shows the layout of a beach membership use with a parking area with planted islands in the central portion of the Premises within the confines of the parking area shown under the Vautrinot Plan, plus additional parking in the area where the duplex was previously sited, plus various amenities such as picnic tables, kayak racks and temporary toilet facilities. It is my opinion that the proposed parking areas and limited amenities would be approved under the State Wetlands Protection Act as it meets all of the conditions generally required for said activity. No such uses are located within resource areas under the WPA and its implementing regulations except for land subject to coastal storm flowage, which has no performance standards and a limited BVW crossing discussed before and again hereafter. The proposed uses are within the buffer area to BVW and coastal dune ( as to salt marsh, see footnote 2). The performance standards for coastal dunes are met as parking areas would not affect the

---

area easterly of the easterly side line of the "Existing Parking Lot" as shown on the Vautrinot Plan was salt marsh as of the date of taking or even at the time of the ANRAD Plan.

ability of waves to remove sand from the dune, would not disturb vegetative cover, would not

modify the dune form to effect storm or flood damage, would not interfere with the lateral or

landward movement of the dunes and would not cause the removal of sand form the dunes. See

310 CMR 10.28(3).    Locating the parking use within the buffer zone of a salt marsh would also

be permissible, as such use would not destroy any portion of the salt marsh, or adversely affect

the productivity of the salt marsh in compliance with the performance standard for salt marsh

under 310 CMR 10.32(3). Nothing in the Wetlands Protection Act specifically prohibits parking

in Land Subject to Coastal Storm Flowage.   In addition, I am not aware of any cases where the

Department has not allowed parking within Land Subject to Coastal Storm Flowage. The

proposed landscaped islands are permissible as they would not adversely affect the adjacent salt

marsh or bordering vegetated wetlands.   The planting of vegetation is permissible, as it does not

result in any loss or impairment of either the salt marsh or the bordering vegetated wetland. The

performance standards for BVW would be met as well for the proposed use.   There is no activity

or work called for within the BVW, only within the buffer zone to the BVW. The performance

standards for work in a BVW state that said work shall not destroy or otherwise impair any

portion of said area. Whereas the work is proposed within the buffer zone only, there will be no

destruction or impairment to the adjacent BVW.

In both Alternative 1 and 2, the proposed conceptual plan shows that access to the site

would be from Wankinko Avenue.    Assuming that the delineation of the bordering vegetated is

accurately shown on the ANRAD Plan, access to the site would require crossing an area of

bordering vegetated wetland.   I have estimated the area of BVW to be altered by the access to be

approximately 1,500 square feet, though much of this was significantly degraded.   The

regulations found at 310 CMR 10.55 (4) allow the issuing authority to permit the alteration of up

25

to 5,000 square feet of BVW so long as the area filled is replicated at a ratio of 1:1.  Therefore,

provided the proposal included a wetland replication area to be constructed in accordance with

the standards found at 310 CMR 10.55 (4), the project is permissible.

As to all portions of the Premises, the site is not located in priority or estimated habitat

for rare or endangered species nor is the Premises located within an Area of Critical

Environmental Concern.  Thus there are no enhanced or special performance standards or criteria

that apply to the Premises.

D.     Exhibits to be Used as a Summary of or Support for the Opinions

The exhibits which have been used in support of my opinions are attached hereto as

**Exhibits C, D and E**.

L:\LITG\Ditn002\LENORE WHITE REPORTS\LenoreWhite.Report.final.JTA.doc

Submitted under the pains and penalties of perjury this 29th day of March 2006.


Lenore White
Professional Wetland Scientist
Wetland Strategies, Inc.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.: 05-11745RWZ

BARBARA DEIGHTON HAUPT, Trustee    )
of BD REALTY TRUST,                )
          Plaintiff              )
                                 )
v.                                 )
                                 )
THE TOWN OF WAREHAM acting by      )
and through the BOARD OF           )
SELECTMEN OF THE TOWN OF           )
WAREHAM, and the BOARD OF          )
SELECTMEN OF THE TOWN OF           )
WAREHAM,                           )
          Defendants             )

## SUPPLEMENT TO EXPERT REPORT OF BRADLEY C. MCKENZIE, P.E., CIVIL ENGINEER

### I.    Introduction

This supplemental report and the opinions expressed herein are submitted by Bradley C. McKenzie, P.E. of McKenzie Engineering Group, Inc. (MEG), on behalf of Plaintiff, Barbara Deighton Haupt, Trustee of BD Realty Trust, in the above-referenced matter.

This report is submitted in accordance with Fed. R. Civ. P. 26(a)(2) and 26(e), and is a supplement to the Expert Report of Bradley C. McKenzie, P.E., Civil Engineer dated March 29, 2006 ("Original Report"). The basis for submitting this supplemental report is the recently available information contained in the Supplement to the Expert Report of Michael S. Giaimo, Esq. dated September 6, 2006 ("Supplemental Giaimo Report"), the Defendant Town of Wareham's Response to Plaintiff's Request for Admissions, and the Expert Report of Richard Dennis, indicating that a structure can be built on the Premises (as described herein and as

1

EXH. C

depicted on the plan attached hereto) in accordance with the Wareham Zoning By-Law

Floodplain District regulations.  Based on this information, it has been necessary for me to assess

whether there are additional development alternatives for the Premises as of the date of taking.

In my opinion a clubhouse structure could be constructed that could serve as an additional

amenity to the proposed beach club use described in the Expert Report of Steven G. Elliott dated

March 31, 2006.   As a result, I have revised my opinion as to what development alternatives

existed for the Premises at the time of the taking by eminent domain in December 2003, from a

civil engineering design, layout, land planning and permitting perspective, drawing as well upon

the Supplemental Expert Report of Attorney Michael S. Giaimo, Esq.  This feasible development

alternative is described below and should be incorporated into my Original Report as follows.

   IV.    **Statement of Opinions**

   A.    Complete Statement of Opinions and Basis and Reasons Therefore

   1.    Background as to Why I Was Retained

          See Original Report at p.3-4.

   2.    Data and Information Which Form the Basis of My Opinions

Subsequent to my Original Report, I considered the following additional documents

relevant to my opinions herein:

- Supplement to Expert Report of Michael S. Giaimo, Esq.;

- Defendant Town of Wareham's Responses to Plaintiff's Request for Admissions; and

- Expert Report of Richard Dennis.

In addition to this information, I also relied upon the documents and information

previously reviewed in preparing my Original Report, as well as the Existing Conditions Plan

2

and the Alternative No. 2 Conceptual Beach Club Plan that I prepared in conjunction with my Original Report.

    3.    <u>Analysis and Conclusions</u>

Based on my review of the above-noted materials and my site inspections, I have formed an opinion as to what additional development alternatives for the Premises existed at the time of the taking of the Premises by eminent domain in December 2003 from a civil engineering design, layout, land planning and permitting perspective, drawing as well upon the expert opinion and supplemental report of Attorney Michael Giaimo of Robinson & Cole, LLP.

The additional feasible development alternatives is as follows:

*b. Alternative No. 2 – Membership Beach Club With Clubhouse Facility*

A feasible development alternative would consist of a private member Beach Club use with parking and various site amenities on the Premises, including a clubhouse structure. The plan illustrating this alternative is entitled "Dwg. No. C-3 Conceptual Beach "Clubhouse" Building", dated September 19, 2006, prepared by MEG. See **Exhibit 1**-- attached hereto. The plan shows a parking area of approximately 125 parking spaces to be used by members of the Beach Club. The plan also shows a 30' by 60' structure (to be elevated on pilings) which could contain amenities such as individual storage lockers, changing facilities, bathrooms, showers, food storage and seating areas. Other site amenities would include but not be limited to picnic tables and kayak/canoe racks.

The Project would need to comply with all applicable state and federal regulations, including but not limited to the Massachusetts Wetlands Protection Act Regulations (310 CMR 10.00), National Flood Insurance Program Regulatory Requirements (44 CFR 60.3) ("NFIP Regulations") administered by the Federal Emergency Management Agency ("FEMA") and the

Massachusetts State Building Code ("Building Code"). As indicated in the Expert Report of Lenore White dated March 2006, the entire site is located within a FEMA Velocity Zone (V Zone), or Land Subject to Coastal Storm Flowage resource area (elevation 20.0 NGVD). The construction of the proposed building would comply with the following NFIP Regulations for V Zone construction: (1) The proposed building would be elevated on pilings, posts, piers or columns so that the bottom of the lowest horizontal structural member of the lowest floor (excluding the vertical foundation members) is at or above the base flood elevation of 20.0; and (2) The building must be located at the landward of the reach of mean high tide.   The bottom of the lowest horizontal structural member for the clubhouse will be above elevation 20.0 and the building is located approximately 68 feet from mean high tide.

The building and parking areas would also be located within the 100-foot buffer zones to coastal dune and bordering vegetated wetland.  It is Lenore White's opinion that the structure, parking area and other supporting infrastructure would be approved under the Massachusetts Wetlands Protection Act as it meets all of the conditions generally required for said activity in the 100-foot buffer zones to coastal dune and bordering vegetated wetland, as well as salt marsh, to the extent applicable at the date of taking.  Under the WPA Regulations, there are no performance standards for work within the resource area Land Subject to Coastal Storm Flowage.

The proposed beach membership club use (including clubhouse) would meet all of the requirements of the Wareham Zoning ByLaw and other local, state and federal regulations.   As discussed above, Lenore White has determined that the use could be implemented in compliance with the Massachusetts Wetlands Protection Act Regulations (310 CMR 10.00).  Access to the site for the beach club use is the same as for the 40B use set forth in the Original Report and is

4

permittable as a limited project pursuant to 310 CMR 10.53 (3) or as an alteration of BVW under 5000 square feet pursuant to 310 CMR 10.55 (4). At a 1:1 ratio there is sufficient area on the property to undertake any necessary replication. The project would be capable of complying with the Standards of the DEP SMP to the extent that asphalt paving was necessary. The parking lot layout has been designed in compliance with the requirements of the Wareham Zoning By-law in effect as of December 31, 2003 as set forth in the plan notes.

    D.    <u>Exhibits to be Used as a Summary of or Support for the Opinions</u>

The plan entitled "Dwg. No. C-3 Conceptual Beach "Clubhouse" Building", dated September 19, 2006, prepared by MEG attached hereto as **Exhibit 1** and constitute part of the opinions intended to be expressed in this Supplemental Report. This plan is incorporated by reference herein and also constitutes a summary of the opinions expressed herein as well as support therefor.

Submitted and signed this *20th* day of September, 2006.

              Bradley C. McKenzie, P.E.
              Registered Professional Engineer
              McKenzie Engineering Group, Inc.

L:\LITG\Ditn002\BRAD MCKENZIE REPORTS\Brad.McKenzie.Report.Supp.doc

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by (hand) (mail) on *September 20, 2006*

*Brute m. flat*

*and electronic mail*

