UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.: 05-11745RWZ

| | |
|---|---|
| BARBARA DEIGHTON HAUPT, Trustee of BD REALTY TRUST,<br>        Plaintiff | )<br>)<br>)<br>) |
| v. | )<br>) |
| THE TOWN OF WAREHAM acting by and through the BOARD OF SELECTMEN OF THE TOWN OF WAREHAM, and the BOARD OF SELECTMEN OF THE TOWN OF WAREHAM,<br>        Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION IN LIMINE TO EXCLUDE ANY AN ALL TESTIMONY AND EVIDENCE CONCERNING PRIOR USE OF THE PREMISES**

Now comes the Plaintiff, Barbara Deighton Haupt, Trustee of BD Realty Trust ("the Trust"), and opposes Defendants' Motion in Limine to Exclude Any and All Testimony and Evidence Concerning Prior Use of the Premises. For reasons, the Trust states as follows.

**ARGUMENT**

    I.    <u>Prior Use of the Premises Is Relevant To The Extent That It Is Probative of the Wetland Resource Areas That Existed On The Premises On The Date of Taking</u>.

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Civ. P. 401. "All relevant evidence is admissible . . . ." Fed. R. Civ. P. 402.

As a preliminary matter, the Trust does not dispute that whatever local, state or federal regulations that were in place on the date of taking would apply to the Premises notwithstanding

1

any prior failure to enforce by the applicable agencies or governmental entities. In other words, despite the Town's arguments to the contrary, the Trust does not intend to argue that simply because there were no enforcement actions that could have been undertaken (but were not) prior to the Town's taking of the Premises by eminent domain, that the Premises is now somehow immune from the applicability of those laws or that the Town is estopped from contesting the location of wetland resources. Instead, the Trust intends to introduce evidence of the prior use of the Premises because it is probative of the physical site characteristics existing at the time of the taking, as well as probative of the underlying wetland resource areas that may or may not have existed at that time and which impact the underlying uses that could have been made of the property.[1]

The Trust intends to offer evidence about the prior use of the Premises including up through the time that the property was taken by eminent domain. Specifically, the Trust intends to show that "[s]ince the 1950's, the Premises has been used seasonally for beach use and attendant on-site parking, including, at various times a food concession stand and shower and restroom facilities." Joint Pre-Trial Memo., Plaintiff's Contested Issues of Fact #4. The Trust intends to introduce evidence of prior use through oral testimony and documentary evidence in the form of, *inter alia*, historical photographs (some taken in 2003), a video taken in 2003, plans, a lease for the parking lot area[2], assessor's records, and documents filed with the Wareham Conservation Commission relative to the Trust's prior development plans of the Premises which were ongoing at the time of the taking.

---

[1] The underlying uses that could have lawfully been made of the Premises at the time of taking is relevant to the extent that the jury will be asked to determine the fair market value of the highest and best use of the Premises on the date of taking.

[2] The Town has filed a motion in limine to bar the admission of the lease at trial. Trust has opposed this motion.

The rationale behind the Trust's introduction of the prior use of the Premises is two-fold: first, it is probative of the types of wetland resource areas that existed (or did not exist) on the Premises at or around the date of taking, and second, it is probative that the highest and best uses of the Premises proposed by the Trust are not too speculative and can be considered by the jury.

    A.    The Prior Use of the Premises Indicates That There Were No Wetland Resource Areas Which Would Have Barred the Development Scenarios Proposed by the Trust as the Highest and Best Use of the Premises.

The Trust proposes that there are two uses of the Premises that can be considered by the jury as the highest and best use of the Premises in their determination of the monetary damages that are owed to the Trust as just compensation for the taking of its land by eminent domain: either a non-profit beach club use, with attendant parking and clubhouse structure, or a 40-unit residential condominium development under M.G.L. c.40B.[3] In its analysis of the uses that can be considered as the highest and best use of the Premises, the Trust retained Lenore White ("White"), a wetlands scientist, to determine the wetland resource areas that existed on the Premises on the date of taking. In rendering her opinion, White relied on several significant pieces of historical information about the Premises, including the aforementioned photographs and video. Based on this information, White rendered the following opinion in her expert report:

> Specifically, I concluded from the April, 2003 photograph that the portion of the Premises which is centrally located and just north of the row of boulders did not meet the definition of a salt marsh pursuant to the definition found at 310 CMR 10.32. I have reached this conclusion because the visual evidence indicates that the area did not contain any vegetation that is well adapted to or prefers living in saline soils. In fact, as shown in the photograph, the area did not contain any vegetation and is therefore not a coastal wetland. I arrived at the same conclusion that there was an absence of salt marsh in the central area of the Premises after viewing the DVD, <u>because the video shows cars that are parked in the central area of the site, and there is no vegetation that can be seen</u>. In order for this area to be defined as a salt marsh, it must be "characterized by plants that are well adapted to or prefer living in saline soils". 310 CMR 10.32. Whereas this area is not

---

[3] The physical layout of these concepts are illustrated on two development plans that the Trust will introduce at trial. A third highest and best use—as a site for a residential duplex dwelling—is not dependent on the layout of resource areas since the Town has acknowledged that such a use is permissible.

3

>    dominated by vegetation typical of that found in salt marsh, it does not meet the definition of a salt marsh.
>    Based on my observations of what existed in the 2003 photos and video, I conclude that at the time of the taking, the area noted as "Existing Parking Lot" on the Vautrinot Plan was not a salt marsh and did not contain salt marsh.

Expert Report of Lenore White at p. 15-16 (emphasis added).   Thus, to the extent that the Trust's expert relied on the prior use of the Premises as a parking lot and that this use factored into her opinion about the resource areas existing thereon, the prior use of the Premises is relevant at trial because it is probative of the fact that there was no existing salt marsh which would have impeded the development proposed by the Trust.[4]  In short, evidence that the site has been used as a seasonal parking lot is probative of the fact that the site was not a salt marsh, as the Town now claims.

Moreover, the prior use of the Premises, and the fact that the Wareham Conservation Commission failed to enforce any wetlands regulations relative thereto, is equally probative of the fact that there was likely no salt marsh and/or alteration thereof on the Premises.  Though again, not as evidence of an estoppel as feared by the Town.  White rendered an opinion in this regard as well:

>    The Wareham Conservation Commission has a duty to enforce the WPA and the WPA Regulations.  In the event that the Commission determines that there is an activity in violation of the WPA or the WPA Regulations, it has the authority to issue an Enforcement Order for such violations.  See 310 CMR 10.08.
>    If the area on the Premises which is shown as "salt marsh" on the ANRAD Plan was, in fact, salt marsh, the Commission had a duty to enforce the provisions of the WPA for the alteration of the salt marsh.  However, <u>during my review of the files retained by the Wareham Conservation Commission, I noted that during the time that the Trust owned the Premises, the Commission had not issued any Enforcement Orders regarding the use of the Premises for parking</u>.  The Vautrinot plan specifically identifies an area of "existing parking lot."  <u>It is clear from the August 31, 2003 video that cars were parked

---

[4] In fact, it is curious that the Town would seek to exclude the prior uses of the Premises if only because there are references to the historical use within the Town's own wetlands expert's report.  See Expert Report of Robert Daylor at Site Analysis, p. 15.  In the event that this Court allows the Town's motion and excludes evidence of prior uses of the Premises at trial, then such reference shall be equally stricken from all three of the Town's expert reports and the Town shall be barred from allowing their experts to reference prior uses.

<u>on an area identified on the Vautrinot Plan as salt marsh, and such activity would be considered alteration of a salt marsh in violation of the WPA Regulations.  At a minimum, based on the Commission's review of the Vautrinot Plan attached to the Trust's Notice of Intent to construct a duplex on the Premises, the Commission had constructive notice that there may have been activity consisting of the parking of vehicles on the Premises.   It is my opinion that the Commission's lack of enforcement action is due to the fact that the Commission either did not consider the parking of cars to be an alteration to the salt marsh or, alternatively, that it did not find salt marsh to exist on the Premises which would preclude such activity.</u>   This opinion is consistent with writings in the file of the MADEP.  In the Department's file for this case, I reviewed a letter dated June 27, 2002 to Ms. Dorothy Blickens from an attorney for some parties opposing the NOI filing.  In that letter, the Department is advised that the applicant is operating a "commercial parking business on other portions of the Property, in which vehicles are being parked in wetland areas which are subject to protection."   The file further indicates that the Department contacted the Wareham Conservation Commission, which did not consider it to be an enforcement matter.

White Expert Report at 16-17 (emphasis added).  Clearly, evidence of the prior use and the lack of any enforcement of applicable regulations is probative of the fact that there was likely no underlying wetlands resource areas on the Premises at or near the date of taking.

Based on the foregoing, evidence of prior use is relevant and therefore should be admissible at trial.

      B.      <u>Evidence of the Prior Use of the Premises Goes to the Underlying Issue of Whether the Trust's Proposed Highest and Best Uses Are Too Speculative to be Considered By the Jury</u>.

"[T]he owner of land has a right to recover its market value considered in light of the highest and best use to which the land could reasonably be put."  <u>Colonial Acres, Inc. v. Town of N. Reading</u>, 3 Mass. App. Ct. 384, 386 (1975) (citations omitted).  When considering the possible universe of highest and best uses in an eminent domain case, uses that are unduly speculative or conjectural should be excluded from consideration by the jury.  See <u>Skyline Homes, Inc. v. Commonwealth</u>, 362 Mass. 684, 686 (1972).  While a jury "needs protection against being diverted by farfetched hypotheses as to future uses[, citation omitted] [w]hether a

5

particular use, seen as from the time of taking, was so likely to eventuate and so imminent as to deserve being taken into account, is a matter for demonstration, not mere guesswork." Id. at 687.

It is clear from the Town's proposed contested issues of fact (as set forth in the Joint Pre-Trial Memorandum) and the Town's several motions in limine filed herewith, the Town intends to argue that the non-profit beach club use and the 40B residential use are too speculative to be considered by jury as the highest and best use. The reality is, however, that given the prior use of the Premises for several decades as a seasonal parking area, such evidence is highly probative of the reasonable and likely highest and best use of the Premises. That is, the use advocated by the Trust as the highest and best use of the property is consistent with the ongoing and historical use of the Premises for a period of fifty (50) years up to the date of taking. Thus evidence of prior use is relevant and admissible to prove the non-speculative nature of the proposed highest and best uses.

## CONCLUSION

For the foregoing reasons, this Court should deny Defendants' Motion in Limine to Exclude Any and All Testimony and Evidence Concerning Prior Use of the Premises, and allow the Trust to introduce any and all evidence of prior use of the Premises.

Date:  3/6/2007

Plaintiff,
BARBARA DEIGHTON HAUPT, Trustee
of BD REALTY TRUST,
By her attorneys,

  /s/ Kristen M. Ploetz
Jeffrey T. Angley, Esq.
B.B.O. #543958
Kristen M. Ploetz, Esq.
B.B.O. #654549
Phillips & Angley
One Bowdoin Square
Boston, MA 02114
(617) 367-8787

CERTIFICATE OF SERVICE

    I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on this 6th day of March, 2007.

                                                       /S/ Kristen M. Ploetz_____
                                                       Kristen M. Ploetz, Esq.

L:\Ditn002\Motions in limine\opp.exclude.prior.use.final.doc