UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05-11745RWZ

BARBARA DEIGHTON HAUPT, Trustee of
BD REALTY TRUST,

    Plaintiff

v.

TOWN OF WAREHAM acting by and
through the BOARD OF SELECTMEN OF
THE TOWN OF WAREHAM, and the
BOARD OF SELECTMEN OF THE TOWN
OF WAREHAM,

    Defendants

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION *IN LIMINE* TO
BAR OR LIMIT ROBERT DAYLOR'S
TRIAL TESTIMONY REGARDING
WETLANDS ON THE PREMISES

        Plaintiff's motion to limit the testimony of Defendant's expert, Robert Daylor ("Daylor"), based on the Federal Rules of Evidence and the case law of Daubert v. Merrill Dow Pharmacuticals, Inc., 509 U.S. 579 (1993) is without merit. There is simply no basis to challenge Daylor's qualifications as an expert, methodology employed, or his basis for offering an expert opinion.

        Daylor, a professional civil engineer, and his consulting firm were engaged by the Defendants to visit the premises and conduct research regarding the physical, environmental, and regulatory conditions affecting the property at the time of the taking. Affidavit of Robert Daylor, page 5 (attached hereto as Exhibit A). This type of environmental or wetlands consulting is widely accepted and utilized in the fields of land use and development. Daylor has authored numerous publications and testified as an expert in this and other courts. See Affidavit of Robert Daylor, pages 3-4. It is not

intrinsically "unscientific" for experienced environmental engineering professionals such as Daylor to arrive at a conclusion relating to wetlands by evaluating all evidence, including test results, surveys and observations made by others.  This is not the sort of "junk science" with which <u>Daubert</u> was concerned.  Indeed, the Plaintiff has also retained a similarly qualified wetlands expert, Lenore White of Wetland Strategies, Inc. to testify on the same matters as Daylor.

The fulcrum of Plaintiff's motion in limine appears to be the contention, found on page five of that motion, that "nowhere in Daylor's Affidavit does he offer an opinion about the location and extent of wetland resource areas on the site." This statement is fundamentally untrue.  In fact, pages 5-7 of Daylor's Affidavit extensively discuss Daylor's opinion on the delineation and location of wetlands.  See <u>Affidavit of Robert Daylor</u>, pages 5-7.  For example on Pages 5 and 6, Daylor's Affidavit opines that the environmental conditions on the site "were generally know and shown on plans, maps and charts…," and he goes on to cite a plan delineating wetlands areas which was attached as Exhibit 11 to his affidavit.  On page 6, Daylor states:

> "I have determined that the use of the site is very limited because of the presence of protected natural resources.  It is my opinion that as of the date of the taking the following wetland resource areas…existed at the site:"

Daylor's Affidavit concludes by stating, "The attached Site Analysis Report has been prepared by Daylor staff under my direction to document the foundation for my opinions.…" <u>Affidavit of Robert Daylor</u>, page 9.  This Site Report which is explicitly incorporated by reference into Daylor's Affidavit, contains 31 pages of Analysis and 24 exhibits including an entire section titled "Identification of Areas Subject to Wetlands

Jurisdiction." Given the content of this Site Report, it is incomprehensible to argue that Daylor did not offer an opinion on the location and extent of wetlands.

Plaintiff's alternate theory for excluding Daylor's testimony appears to argue that even if Daylor did offer an opinion on the location of wetlands, he has nevertheless not made enough personal on-site observations or that he made them at the wrong time to adequately support his opinion. F.R.E. 703 allows an expert to base his opinion on facts perceived by or made known to him at or before the hearing. This rule also explicitly allows an expert to rely on inadmissible hearsay testimony. The Plaintiff's argument attempting to disqualify Daylor by way of a <u>Daubert</u> challenge for utilizing site reports prepared by his staff, for relying on the observations of others, or failing to personally perform his own soil samples is completely frivolous and contrary to law. Plaintiff cites no case law supporting the <u>Daubert</u> disqualification of an environmental engineering expert offering analogous testimony. Given the extensive documentation reviewed by Daylor (much of it prepared by Daylor's staff under his supervision) and given that an expert may base his opinion on facts "made known to him," there is no grounds to challenge the basis of Daylor's opinions. Even though not required, the fact is that both Daylor and employees under his supervision made personal on-site observations and tests before arriving at an opinion as to the existence of wetlands on the property. Whatever issues Plaintiff takes with the adequacy of Daylor's investigation methods should properly be reserved for cross-examination at the time of trial.

Finally, it should be noted that there is no issues as to prejudice with respect to Daylor issuing a report prior to personally visiting the premises. Even if Daylor were required to have made personal observations before writing a report, there is no

3

possibility of prejudice to Plaintiff because Daylor did in fact visit the site, his conclusions did not change following his site visit and there was no need to supplement Defendants' discovery disclosure. Furthermore, Daylor's personal site visit occurred before his deposition testimony and well in advance of his expected trial testimony.

Defendants,
By their attorneys,

*/s/ signature*

Richard Bowen (BBO# 552814)
Jeffrey T. Blake (BBO# 655773)
Kopelman and Paige, P.C.
101 Arch Street
Boston, MA 02110-1109
(617) 556-0007

308878/3100/0224

# AFFIDAVIT OF ROBERT F. DAYLOR, P.E., P.L.S.

## I. Witness

Robert F. Daylor, P.E., P.L.S., CEO
Daylor Consulting Group, Inc.
Ten Forbes Road
Braintree, MA 02184

## II. Introduction

The opinions expressed and information provided are submitted by Robert F. Daylor, P.E., P.L.S., CEO of the Daylor Consulting Group, Inc, on behalf of the defendants, Town of Wareham acting by and through the Board of Selectmen of the Town of Wareham and the Board of Selectmen of the Town of Wareham.

## III. Witness Qualifications

### A. Background

Robert F. Daylor, is a licensed professional engineer and professional land surveyor and the CEO and founder of the Daylor Consulting Group, Inc. of 10 Forbes Road, Braintree, MA. Mr. Daylor is the Managing Partner of Vanasse & Daylor LLP with principal offices in Fort Myers, FL. In the Commonwealth of Massachusetts he holds professional registrations in civil engineering and land surveying and as a certified soils evaluator. Mr. Daylor has 40 years professional experience including the planning, design and construction of public works and land development projects including many (more than 100) single-family residential projects.

Mr. Daylor holds a Bachelor of Science in Civil Engineering ("BSCE") degree and Master of Science in Civil Engineering ("MSCE") with a concentration on environmental issues from Northeastern University, Boston, MA, and was awarded a Loeb Fellowship in Advanced Environmental Studies by Harvard University. He also has extensive continuing education credits in the fields of environmental studies and community planning, including studies at Harvard, MIT and the University of Pennsylvania. He has also completed accredited management and marketing training by professional organizations.

Mr. Daylor is a frequent lecturer or seminar participant regarding land development issues and environmental regulations. These include lectures at the Harvard Graduate School of Design, MIT Department of City and Regional Planning, Massachusetts Association of Land Surveyors and Civil Engineers, Association of Consulting Engineering Companies, Urban Land

1

Institute, National Association of Industrial and Office Properties, Society for the Marketing of Professional Services, the Massachusetts Association of Conservation Commissions (MACC), the Massachusetts Bar Association, Massachusetts Continuing Legal Education and the Appraisal Institute.

He has been qualified and has testified as an expert witness in numerous environmental and land development cases, many involving hydrology and wetland issues, in the Massachusetts Superior Court, the Massachusetts Land Court, the Appellate Tax Board, the Housing Appeals Committee and the U.S. District Court for the District of Massachusetts. He has appeared as an expert witness over 25 times in eminent domain cases, construction damages cases and permit appeals. He has appeared as an expert over 50 times in administrative trials or adjudicatory hearings, including many before the Massachusetts Department of Environmental Protection ("DEP").

Mr. Daylor is familiar with the MA Wetlands Protection Act, MGL c. 131, § 40 and its regulations at 310 CMR 10.00. He served on the Blue Ribbon Task Force which led to major regulatory changes in 1983 and 1986. He has been a speaker and lecturer at the MACC's annual meeting many times and has participated in other Conservation Commission training sessions. He has continuing pro bono participation in DEP advisory committees on Title V, the Rivers Protection Act, and revisions to Chapter 91.

By virtue of his professional occupation and licensing, he is required to be, and is, thoroughly familiar with the Massachusetts statutes and regulations applicable to the protection of environmental resource areas such as lakes, rivers, streams and wetlands of all types, including but not limited the Massachusetts Wetlands Protection Act, M.G.L. c. 131, § 40, and its implementing regulations as well as the Federal Clean Water Act Section 404- Wetlands regulations. He is also familiar with the Town of Wareham's Zoning Bylaws and Regulations and the Wareham (local) Wetlands Protective Bylaw.

Robert F. Daylor's professional resume is attached as Exhibit 1.

B. **Compensation to be Paid to Witness for Study and Testimony**

Mr. Daylor has been retained by the Town of Wareham, MA based on a proposal for services dated June 5, 2006. Fees for Basic Services will be billed on a Time and Materials basis and compensation has been estimated to be $33,700.00 (labor) for project services, not including expert witness testimony at trial.

Mr. Daylor's billing rate for expert testimony in court is $300.00 per hour.

## C. Listing of Other Cases in Which the Witness has Testified as an Expert at Trial or Deposition Within the Preceding Four (4) Years

| DATE | PLAINTIFF VS. DEFENDANT | CASE |
|---|---|---|
| May 2006 | Plaintiff | Brox Industries vs. Commonwealth of Massachusetts Department of Highways, Middlesex Superior Court No. 01-4154LI 6.6± acre taking from 63.2± acre parcel, Route 3 and Kendall Road, Tyngsborough, MA |
| January 2006 | Plaintiff | S.D.B. Corporation vs. Commonwealth of Massachusetts (Metropolitan District Commission), Suffolk Superior Court C.A. No. 99-5604, Hilltop Street, Neponset River, Dorchester, MA |
| September 2005 | Plaintiff | Joseph Pasquarello, Trustee of C & J Realty Trust vs. Commonwealth of Massachusetts, Suffolk Superior Court C.A. No. 01-3395, Hilltop Street, Neponset River, Dorchester, MA (2.4 acres) |
| August 2005 | Defendant | Amtrak v. 40 Harvard Street Trust, Westwood, MA United States District Court, District of Massachusetts 03CIV (Settled) |
| December 2004 | Plaintiff | Farrell's Dock & Terminal Company v. Massachusetts Bay Transportation Authority, Sleeper Street, 36,529 s.f. property (former Victoria Station), Boston, Massachusetts (Settled at Mediation) |
| November 2004 | Plaintiff | Compaq Computer Corporation, Successor in Interest to Digital Equipment Corporation vs. Metropolitan District Commission, Route 140/Route 70, Boylston, West Boylston, MA, 102 of 400 acres taken |
| September 2004 | Defendant | Village Homes & Williams Brothers vs. Commonwealth of Massachusetts (MHD), Plymouth Superior Court No. 01-1438B, Brooks Street, Carver, MA (30 of 38 acres taken) |
| August 2004 | Defendant | David E. Dicarlo and Helen Dicarlo Reale, Trustees of the Winter Elysium Trust vs. Town of Wrentham, 200 acres, Bennett Street, Wrentham, MA |
| February 2003 | Plaintiff | Whittier Place Condominium Trust v. Commonwealth of Massachusetts Highway Department Suffolk Superior Court, C.A. NO. 99-5607B, Martha Road, Charles Street, Boston (5 acres) Case settled |
| January 2003 | Defendant | Boston & Maine v. Commonwealth of Massachusetts (MHD-CAT) – Suffolk #99-3982, North Point, Cambridge, Case settled |

PLEASE NOTE: There are several pending cases of both Plaintiff and Defendant work related to highway takings for Route 44, Route 146 and Route 20 improvements and a Plaintiff Representation in a MWRA taking case. There have been Answers to Interrogatories exchanged in all of these matters.

3

## D. List of Publications

| | |
|---|---|
| June 13, 2006 | MA Continuing Legal Education<br>"Environmental Planning/Reports and How to Read Them as Part of Closing Documents in a Real Estate Sale" |
| May 2-3, 2006 | Zweig White Land Development Conference<br>"Green Site Design" |
| October 19, 2004 | Lorman Education Services<br>"Current Trends in Stormwater Management" |
| July 30, 2003 | MA Continuing Legal Education<br>"Permits for Projects In and Near Wetlands and Water" |
| July 31, 1998 | MA Continuing Legal Education<br>"Eminent Domain in Massachusetts: The Role of the Expert/Land Use Professionals" |
| May 20, 1998 | Environmental Management and Technology Expo<br>"Everyday Ethics" |
| March 7, 1998 | Massachusetts Association of Conservation Commissions<br>"How to Review Drainage Calculations – Hands On" |
| December 3, 1997 | The Cambridge Institute<br>"Land Use and Development" |
| November 13, 1997 | Mass ALFA Annual Conference<br>"All the Good Sites are Gone" |
| October 12, 1995 | Boston Bar Association<br>"Title 5: Practical Approaches to Problems in Transactions and Property Management – Engineering Perspectives" |
| October 6, 1995 | Suffolk University Law School Advanced Legal Studies<br>"Practical Applications of the New Title 5 Regulations" |

The above is a partial list of papers presented at conferences. Mr. Daylor is a frequent participant in panel discussions and guest lecturer.

4

IV. **Statement of Opinions**

The Town of Wareham, MA, is the owner of a 5.35-acre waterfront property (the "site") bordering the tidal portion of the Wareham River in the Swifts Beach section of Wareham, MA. In June 2006, the Town engaged Daylor Consulting Group, Inc (Daylor) to assess the site's physical conditions and review environmental regulations and previous permitting applicable to the site to assist the Town's appraiser in the determination of the "highest and best use" as of the date of the taking in 2003. The site in question is identified on the Town of Wareham's Assessor's Map, Plat 50B as comprised of Lots B-1, E and an unnumbered lot with a street address of 200 Swifts Beach Road, Wareham.

It is my understanding that on December 31st, 2003, the Town recorded an Order of Taking in the Plymouth County Registry of Deeds related to the subject property ("the taking"). On August 23, 2005, BD Realty Trust filed a Complaint and Jury Claim in United States District Court, District of Massachusetts. This matter is identified as:

Barbara Deighton Haupt, Trustee, BD Realty Trust v. Town of
Wareham et al. U.S. District Court for the District of Massachusetts,
Civil Action No.: 05-11745RWZ.

The action filed by the Plaintiff alleges at Count 1 that the taking by Eminent Domain was made in bad faith and was a taking to prevent BD Realty Trust from constructing a two-family residence on the property for the benefit of local abutters, including one or more Selectmen and their families. It is my further understanding that the action filed alleges at Count 2 that there should be an assessment of damages because the Trust was deprived of its land and property which it alleges were of great value based on the highest and best uses of the site.

Based on my evaluation and review I have determined that:

1. With regard to Count 1, there was no bad faith taking.

First, the environmental conditions on the site that would limit development of this property in 2003 existed before the taking, were generally known and shown on plans, maps and charts showing the area that includes the site dating back to 1893 (See Attachments 1-6, 8-11 and 15-21).

In addition, the document record shows that the prior owner of the property (Glick Realty Corp.) initiated the wetland permitting process to secure a formal determination of the type, location and extent of wetland resources on the site by filing an Abbreviated Notice of Resource Area Delineation (ANRAD) with a plan dated May 4, 2004 (See 2000 ANRAD Plan-

5

Attachment 10). This process was ongoing when the plaintiff purchased the site in August 2000. On October 18, 2000, the Wareham Conservation Commission issued its determination (an Order of Resource Area Delineation-ORAD) identifying the wetland resources on the site.

The formal delineation of these resource areas was subsequently incorporated by the plaintiff's engineer as part of a Notice of Intent permit filing and shown on permitting plans (See 2001 Vautrinot Plan of Land - Attachment 11). The Plaintiff used this determination in applications both before the Wareham Conservation Commission and DEP which issued a Superseding Order of Conditions citing the Plaintiff's own determination of wetland resources.

Second, from my observations, I have determined that the property is actually in use and serving a proper public purpose as a municipal beach and open space. The site is bounded on the west and east by other public beaches and the taking provided an open-space link between these abutting public beach areas creating approximately 2,400-linear feet of continuous beach area for public use. I have observed active use of these beach areas, including the site, by the public. The fact that the access to the site is closed to vehicles and that the Town no longer is parking cars on the property is a recognition of the Wareham Conservation Commission's October 18, 2000 wetland resources determination (ORAD) and the MA DEP's Superseding Order of Conditions (SSOC dated August 12, 2003) requiring that the degraded saltmarsh areas (former parking lot) be fenced off and allowed to re-vegetate naturally.

2. With regard to Count #2, I have determined that the use of the site is very limited because of the presence of protected natural resources. It is my opinion that as of the date of the taking the following wetland resource areas regulated under the local Wetlands Protective Bylaw, the MA Wetlands Protection Act and the Clean Water Act Section 404-Wetlands existed at the site:
- coastal beach;
- coastal dune
- barrier beach
- salt marsh
- bordering vegetated wetland (wet meadow)
- land under the ocean
- land subject to coastal storm flowage
- coastal wetland (federal)
- inland wetland (federal)

However, even with the above-listed protected resources, it is my professional opinion that: (1.) The highest and best use on the date of the taking would have been for the construction of one, modest-sized duplex home constructed on piles elevated above the base flood elevation in accordance with the state building code for construction in flood hazard areas and FEMA requirements,

6

and (2.) That the home would have had to have been located in the area of a former concrete slab, including removal of that slab and re-vegetation of the area beneath the elevated building as a low dune with very limited permeable driveway access.

Plaintiff's Concepts

The action filed alleges that there should be an assessment of damages because the Trust was deprived of its land and property which were of great value. The following are my professional opinions based upon my reviews of the Plaintiff's highest and best use concepts.

This allegation is based on the presentation of two alternatives that plaintiff's current engineer developed for site use. The two development alternatives identified by the plaintiff for use of the site were:

- Two large elevated buildings providing a total of 40 residential condominium units, driveways and parking for 90-vehicles under the provisions of Chapter 40B (Concept 1); and

- Driveways and parking for 120-vehicles as part of a beach club use (Concept 2).

The Plaintiff bases these alternatives on a new delineation of wetland resources performed in her behalf by consultants in 2006. This new delineation reduces the protected wetland areas on site and is in conflict with the Plaintiff's own wetland delineation in force at the actual time of the taking. Just prior to the taking in 2003 the Plaintiff pursued and obtained the above referenced Superceding Order of Conditions from DEP using the more extensive wetland delineation which had been approved by the Wareham Conservation Commission and MA DEP.

To my knowledge, no regulatory agency has ruled on the Plaintiff's 2006 delineation. We performed an extensive current delineation ourselves including soil examinations and do not agree with the Plaintiff's new delineation. We find the wetlands resource areas slightly more extensive than those shown on the Plaintiff's own resource area determination at the time of the taking. This follows logically because of the lack of use as a parking area has allowed the wetlands to revegetate just as cited in the findings of the 2003 DEP Superceding Order of Conditions. It is illogical that the Plaintiff's 2006 delineation could now be claimed by her to be more accurate than the Plaintiff's own delineation at the time of the taking.

However, it is my professional opinion that neither the Chapter 40B residential condominium use nor the beach club use proposed by the Plaintiff can be constructed at this site. Further, such uses in my opinion are speculative and cannot meet the "reasonably probable" standard for their design, regulatory approval and construction. As listed above significant

7

wetland resource areas exist at this site and applicable state and federal wetland regulations so limit the area available for development at the site, as of the date of the taking, that it precludes the concept developments offered as their highest and best use opinion. The two development alternatives propose the filling and alteration of saltmarsh and bordering vegetated wetland (wet meadow) resource areas and the applicable wetland regulatory performance standards 310 CMR 10.32 and 310 CMR 10.55 are: (1.) A project shall not destroy any portion of a saltmarsh and shall not have an adverse effect on the productivity of a salt marsh, and (2.) Any proposed work in a Bordering Vegetated Wetland (wet meadow) shall not destroy or otherwise impair any portion of said area.

### Concept 1 - Chapter 40 B Residential Condominium Project

The Plaintiff has proposed the construction of two (2) elevated buildings providing a total of 40 residential condominium units, driveways and parking for 90-vehicles under the provisions of Chapter 40B (See Concept 1 –Report Attachment 13) as an example of a potential highest and best use of the site. Plaintiff further alleges that there should be an assessment of damages because the Trust was deprived of its land and property which were of great value based on such a residential use alternative.

I have evaluated the proposed Chapter 40B residential condominium use proposed by the plaintiff and I believe that this project cannot be constructed at this site. Chapter 40B allows the Zoning Board of Appeals after certain findings to lay aside, in the issuance of a Comprehensive Permit, local zoning, and limited other local by-laws in order to provide affordable housing. There is no authority to set aside or override State or Federal regulations. The Plaintiff's concept plans would require violation of the State and Federal wetland regulations. The concept shows alteration of protected resources known to the Plaintiff and used by her in regulatory procedures. These very resources are subject to the Wareham Conservation Commission and MA DEP Orders forbidding such alterations. The Plaintiff was a party to these proceedings.

This proposed construction would result in adverse impacts to the wetland resources at the site; the filling (increasing erosion) and alteration (changing the form of) of coastal beach for parking use, alteration of coastal dune for driveway and parking uses and the filling and alteration (destruction) of 6,700±-sf of saltmarsh for building, parking and landscaping uses. This construction would also alter an additional 12,800±-sf of bordering vegetated wetland (wet meadow) subject to the MA Wetlands Protection Act. Further, there is federal Army Corps of Engineer's jurisdiction under the Clean Water Act Section 404-Wetlands (regulations at 33 CFR 322-Permits for Discharges of Dredged or Fill Material into the Waters of the United States). Thus, the proposed filling and alterations are not allowed under the MA Wetland Protection Act Regulations and the proposed filling of saltmarsh and wet meadow is also not allowed under the federal Clean Water Act- Section 404

8

Wetland Regulations. The 40B concept plan does not meet the critical criterion for highest and best use that it be "legally permissible".

### Concept 2 - Beach Club

The Plaintiff has proposed the construction of driveways and parking for 120-vehicles as part of a beach club use (See Concept 2 –Report Attachment 14) as an alternative example of a potential highest and best use of the site. Plaintiff further alleges that there should be an assessment of damages because the Trust was deprived of its land and property which were of great value based on such a beach club use alternative.

I have evaluated the proposed Beach Club use proposed by the Plaintiff and I believe that this project cannot be constructed at this site. This proposed construction would also result in adverse impacts similar to her first concept; the filling and alteration of coastal beach for parking use, coastal dune for driveway and parking uses and 5,900±-sf of saltmarsh for parking uses. This construction would also alter an additional 12,000±-sf of bordering vegetated wetland (wet meadow) subject to the MA Wetlands Protection Act and federal Corps jurisdiction under the Clean Water Act Section 404-Wetlands jurisdiction; activities not allowed under the MA Wetland Protection Act Regulations and not allowed under the federal Clean Water Act- Section 404 Wetland Regulations. No alteration of State and Federally protected salt marsh is allowed under applicable regulations. Only a few "limited projects" are allowed to alter more than 5,000 sq. ft. of bordering vegetated (fresh) wetlands with replacement mitigation. Parking lots are not one of the listed limited projects. Again, this concept cannot meet the "legally permissible" standard for highest and best use as it clearly violates applicable wetland regulations in force on the date of the taking.

The attached Site Analysis Report has been prepared by Daylor staff under my direction to document the foundation for my opinions and to support the Town in its defense in the pending litigation.

Submitted under the pains and penalties of perjury this 30th day of June, 2006

*Robert F. Daylor*
Robert F. Daylor, P.E., P.L.S., CEO
Daylor Consulting Group, Inc.

9

**Daylor Consulting Group Inc.**

Engineers
Surveyors
Scientists
Planners
Landscape Architects

Ten Forbes Road
Braintree/MA 02184
Tel    781.849.7070
Fax   781.849.0096
Web  www.daylor.com

# Site Analysis



# BD REALTY TRUST VS. TOWN OF WAREHAM ET AL

200 SWIFTS ROAD
WAREHAM, MASSACHUSETTS

Submitted to:

Board of Selectmen
Town of Wareham
54 Marion Roadp
Wareham, MA 02571

Submitted by:

Daylor Consulting Group, Inc.
Ten Forbes Road
Braintree, MA 02184

June 29, 2006                                                                                              Job #  1.2627.00

# Table of Contents

1.0   PROJECT OVERVIEW ........................................................................................ 1
   1.1   Introduction ................................................................................................... 1
   1.2   Project Summary .......................................................................................... 1
   1.3   Supplemental Information ............................................................................ 4
2.0   PERMITTING RELATED ISSUES ....................................................................... 8
   2.1   Local Permitting Requirements ................................................................... 8
      2.1.1   Zoning Bylaw ........................................................................................ 8
      2.1.2   Town of Wareham Wetlands Protective Bylaw ................................... 10
   2.2   State Permitting Requirements .................................................................. 10
      2.2.1   MA Wetland Protection Act ................................................................. 10
      2.2.2   Massachusetts Environmental Policy Act ........................................... 11
   2.3   Federal Permitting Requirements .............................................................. 11
   2.4   Local and State Permitting History ............................................................ 12
3.0   SITE ASSESSMENT .......................................................................................... 15
   3.1   Previous Disturbances at the Site ............................................................. 15
   3.2   Datum References ..................................................................................... 15
   3.3   Topography ................................................................................................ 17
   3.4   Identification of Areas Subject to Wetlands Jurisdiction .......................... 17
      3.4.1   Resource Area Assessment and Delineation ..................................... 17
      3.4.2   Overview of the Site Environment ...................................................... 18
   3.5   Findings on the Coastal Wetland Resources Present .............................. 22
      3.5.1   Coastal Wetland Resource Areas ....................................................... 22
      3.5.2   Inland Wetland Resources .................................................................. 24
   3.6   Significance of the Saltmarsh Wetland ..................................................... 25
   3.7   Evaluation of the Projects Proposed at the Site ....................................... 26
      3.7.1   Applicable Performance Standards .................................................... 27
      3.7.2   Evaluation of Proposed Projects ......................................................... 30

## Table of Figures

Figure 1:   Site Location ......................................................................................................... 2

Figure 2:   2001 Aerial Photograph .......................................................................................... 3

Figure 3:   Reserved and Protected Areas ............................................................................ 20

## Table of Tables

Table 1:   Density and Dimensional Regulations ................................................................... 9

Table 2:   Tidal Datum Analysis for 200 Swifts Beach Road, Wareham, MA and Tidal Station #8452660 ............................................................................................................ 16

## List of Attachments

Attachment 1:    Daylor Exhibit A- 2003 Resource Area Delineations

Attachment 2:    1926 Plan of Land Sheet 1 & Sheet 2

Attachment 3:    1931 Subdivision of Lot C

Attachment 4:    1931 Subdivision of Lot D

Attachment 5:    1938 Subdivision of Lots A & B

Attachment 6:    1940 Subdivision of Lot D

Attachment 7:    1948 Subdivision Plan

Attachment 8:    Soil Survey for Plymouth County

Attachment 9:    1977 Subdivision Plan

Attachment 10:   FEMA Flood Insurance Rate Map

Attachment 11:   2000 ANRAD Plan

Attachment 12:   2001 Plan of Land

Attachment 13:   2006 Existing Conditions Plan

Attachment 14:   Alternative #1 Conceptual Comprehensive Permit Plan C1

Attachment 15:   Alternative #2 Conceptual Beach Club Plan C2

Attachment 16:   Swifts Beach, 1893 USGS

Attachment 17:   Swifts Beach, 1941 USGS

Attachment 18:   Swifts Beach, 1953 USGS

Attachment 19:   Swifts Beach, 1967 USGS

Attachment 20:     Swifts Beach, 1901 Coast Chart

Attachment 21:     Swifts Beach, 1911 Navigation Chart

Attachment 22:     Swifts Beach, 1931 Navigation Chart

Attachment 23:     Daylor Exhibit A- 2003 Resource Area Delineations

Attachment 1:      Daylor Exhibit A- 2003 Resource Area Delineations

Attachment 23:     Daylor Exhibit B- 2006 Resource Area Delineations by Plaintiff

Attachment 24:     Daylor Exhibit C- 2006 Resource Area Delineations by Daylor

## 1.0 PROJECT OVERVIEW

### 1.1 Introduction

The Town of Wareham, MA is the owner of 5.35-acres of waterfront property (the "site") bordering the tidal portion of the Wareham River in the Swifts Beach section of Wareham, MA. The site is identified on the Town of Wareham's Assessor's Map, Plat 50B as comprised of Lots B-1, E and an unnumbered lot.

In June 2006, the Town engaged Daylor Consulting Group, Inc (Daylor) to assess the site's physical conditions and permitting history and to assist the Town's appraiser in the determination of the "highest and best use" as of the date of the taking. This work included evaluating the wetland resource area delineations made by others and approved by the Town's Conservation Commission in 2000, prior to the taking. Based on extensive research and fieldwork, Daylor has prepared this Site Evaluation to be used to support the Town in defending itself in litigation entitled:

> Barbara Deighton Haupt, Trustee, BD Realty Trust v. Town of Wareham et al. U.S. District Court for the District of Massachusetts, Civil Action No.: 05-11745RWZ.

In December 31, 2003, the Town took the subject property ("the taking") from BD Realty Trust (Barbara Deighton Haupt, Trustee) by eminent domain. Prior to the taking, Thompson Surveying & Engineering, Inc prepared a site plan (Glick 2000 ANRAD Plan - See Attachment 10) that showed the type, location and extent of wetland resource areas on the site. This plan accompanied an Abbreviated Notice of Resource Area Delineation (ANRAD) submitted on behalf of the (then current) landowner, Glick Realty Corporation (Glick). After the ANRAD submittal and during the period that the Town of Wareham Conservation Commission was considering the ANRAD, BD Realty Trust acquired the property (August 31, 2000). On October 18, 2000, the Commission issued its finding regarding the location, types and extent of wetland resource areas present on and near the site through the issuance of an Order of Resource Area Delineation (ORAD) under the provisions of M.G.L. Chapter 131, section 40, the MA Wetlands Protection Act (the Act) and the Town of Wareham's Wetlands Protective Bylaw (the Bylaw). The type, location and extent of the wetland resource areas present at the site, as formally recognized by the ORAD, were present at the time of the taking in 2003. In 2006, the plaintiff's engineer prepared plans for development and use of the site that have questioned the accuracy and validity of those previous resource area delineations.

### 1.2 Project Summary

The subject site, with a street address of #200 Swifts Beach Road, contains parcels of registered and unregistered land located off of Swifts Beach Road and Wankinco Avenue in Wareham, MA. The site has frontage on Swifts Beach Road to the west, Wankinco Avenue and a way (to the north), approximately 615 linear feet of beach front on the Wareham River and 460-linear feet of frontage on a tidal creek on the east boundary of the site. The location for this site is shown on Daylor Figure 1- Project Locus, based on the U.S. Geological Survey Onset, MA Quadrangle, reproduced here at a scale of 1-inch = 500-feet with the site boundary shown in red. Figure 2- Project Aerial is based on 2001 color aerial