UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.: 05-11745RWZ

| | |
|---|---|
| BARBARA DEIGHTON HAUPT, Trustee of BD REALTY TRUST,<br>        Plaintiff | )<br>)<br>)<br>) |
| v. | )<br>) |
| THE TOWN OF WAREHAM acting by and through the BOARD OF SELECTMEN OF THE TOWN OF WAREHAM, and the BOARD OF SELECTMEN OF THE TOWN OF WAREHAM,<br>        Defendants | )<br>)<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFF'S SUPPLEMENTAL OPPOSITION TO DEFENDANTS' MOTION IN LIMINE TO EXCLUDE ANY AND ALL EVIDENCE AND TESTIMONY OF PLAINTIFF'S PROPOSED USE OF THE PROPERTY AS A BEACH CLUB AND ANY ALLEGED COMPARABLE BEACH CLUB PROPERTIES RELIED UPON BY THE PLAINTIFF**

Now comes the Plaintiff, Barbara Deighton Haupt, Trustee of BD Realty Trust ("the Trust"), and further opposes Defendants' Motion in Limine to Exclude Any and All Evidence and Testimony of Plaintiff's Proposed Use of the Property as a Beach Club and Any Alleged Comparable Beach Club Properties Relied Upon by the Plaintiff. To the extent that this Court addressed and inquired about issues regarding the proposed beach club use at the motions in limine hearing held on March 8, 2007, the Trust finds it necessary to supplement the arguments set forth in Plaintiff's Opposition to Defendants' Motion in Limine to Exclude Any and All Evidence and Testimony of Plaintiff's Proposed Use of the Property as a Beach Club and Any Alleged Comparable Beach Club Properties Relied Upon by the Plaintiff (filed on March 6, 2007). To that end, the Trust further states as follows.

1

# ARGUMENT

I. A Nonprofit Beach Club Use is Not An Unduly Speculative Highest and Best Use and Therefore the Jury Should Be Permitted to Hear Evidence In This Regard.

At the motions in limine hearing held on March 8, 2007, this Court suggested that it might exclude the Trust's evidence that the highest and best use of the Premises is a nonprofit beach club because it is too speculative. Specifically, this Court posited that the use would be too speculative from the economic perspective of a developer in that there might not be enough of a profit to warrant development or entice a developer as proposed by the Trust. The Trust respectfully disagrees with the Court's preliminary analysis of the viability of a nonprofit beach club use as the highest and best use of the Premises. As set forth below, the nonprofit beach club use is not too speculative and therefore it should be presented to the jury at trial.

A. Whether the Nonprofit Beach Club Use Is the Highest and Best Use of the Premises Is An Issue of Fact To Be Considered By the Jury.

A "highest and best use is not measured by the use that the parties themselves would ascribe to the property but rather the use that a third party, in a free and open market in an arms-length transaction, would consider the highest and best." Delta Materials Corp. v. Bagdon, 43 Mass. App. Ct. 307, 312 (1997) (citation omitted). Uses to which a property might be applied or to which the property was reasonably adapted may be considered in arriving at the fair market value of the property. See Delta Materials Corp. v. Bagdon, 43 Mass. App. Ct. at 309 (citation omitted). Only those "[u]ses which explore an unexecuted plan of development in unreasonable detail, and those that are 'unduly speculative or conjectural,' should be excluded." Clifford v. Algonquin Gas Transmission Co., 413 Mass. 809, 814 (1992) (quoting Skyline Homes, Inc. v. Commonwealth, 362 Mass. 684, 686 (1972)) (emphasis added).[1] "'So long as an expert is not

---

[1] A careful analysis of cases interpreting Skyline Homes suggests that the inquiry of whether a use is unduly speculative or conjectural goes only to the issue of the likelihood of obtaining zoning relief and/or subdivision

permitted to explore unreasonably the details of particular plans of development still essentially speculative or is not unfairly precluded from giving testimony bearing upon relevant aspects of value, a judge has reasonable discretion in determining the extent to which the witness may explain the reasons supporting his conclusions.'" Aselbekian v. Mass. Turnpike Auth., 341 Mass. 398, 400-01 (1960) (quoting In re Boston Edison Co., 341 Mass. 86, 92-93 (1960)). "Objections to the testimony of another expert witness on the ground that it was based upon unwarranted assumptions, or too closely upon a particular plan . . . used as a chalk, [go] only to the weight of that testimony." In re Boston Edison Co., 341 Mass. at 93 (citation omitted). In some cases, a plan has its proper place to merely illustrate the *physical* possibility that the land could be developed as proposed by the plaintiff. See Aselbekian, 341 Mass. at 401-02. Whether the plan should be admitted as an exhibit or as a chalk is within the discretion of the judge. See id. at 402.

B.  The Nonprofit Beach Club Use Is Not Too Speculative.

Both the Trust's and the Town's experts agree that a highest and best use has four elements: it must (1) be legally permissible; (2) be physically possible; (3) be financially feasible; and (4) achieve maximum profit. See Expert Report of Steve Elliott at p. 19 (Real

---

approval—neither of which is required for the Trust's proposed highest and best use (provided that this Court or the jury, if so charged, finds that the nonprofit beach club use is an allowed use under the Wareham Zoning Bylaw). This notion is set forth in McLaughlin v. Town of Amherst, 38 Mass. App. Ct. 162, 170 (1995), which provides that it is a plaintiff's burden at trial

> to demonstrate that obtaining approval for that use would not have been 'unduly speculative or conjectural,' [citation omitted] such that it 'would not figure materially in the reckonings of the [hypothetical] willing buyer and seller . . . expecting to pay and receive hard cash.' [citation omitted] [A]nticipation of favorable events [such as obtaining zoning relief and subdivision approval] may not be unduly speculative or conjectural. We are to deal with informed mercantile calculations, not hallucinations, or guesswork. [citation omitted]

38 Mass. App. Ct. at 170 (alterations in McLaughlin) (emphasis added). Clearly, the "speculative" issues that are usually considered are not whether a use is the highest and best use based on any lack of financial feasibility or achievement of maximum profit; those considerations are matters better suited to be weighed by the jury based on the experts' related testimony about opinions of value.

3

Estate Appraisal Terminology, published by the Appraisal Institute, definition of Highest and Best Use). See also Expert Report of Richard Dennis, Sr. at p. 7. Provided that all four criteria are met, the proposed use must be considered as the highest and best use for valuation purposes.

    1.    <u>The Premises Are Suited For A Nonprofit Recreational Beach Club Use</u>.

        a.    <u>The use is legally permissible</u>.

Valuation of unimproved property as it may eventually be developed consistent with zoning laws as a matter of right is common in eminent domain cased. See, e.g. Brush Hill Develop. Inc., v. Commonwealth, 338 Mass. 359, 361-64 (1959). As set forth in the Trust's Motion in Limine for Legal Ruling that a Nonprofit Recreational Beach Club is an Allowed Use Within the R-30 Zoning District Under the Wareham Zoning Bylaw, as well as in the expert report of the Trust's zoning expert, Michael S. Giaimo, Esq., "nonprofit recreational purposes", such as the nonprofit beach club proposed by the Trust, are an allowed use within the R-30 zone. Thus, the proposed nonprofit beach club is "legally permissible" and therefore meets the first prong of the definition of "highest and best use".

In fact, the Town's own real estate expert (Richard Dennis, Sr.) states in his expert report that he agrees with the Trust's position that a beach club would be a legally permissible use under the Wareham Zoning Bylaw:

> <u>This zone District allows use or uses for "Non-profit recreational purposes."</u> The Zoning Bylaw's Definition section does not define recreational. However, as stated in an earlier section of this report, the analyst reaffirms that activities commonly associated with beach use or uses are demonstrably recreational.
> …
> <u>Two such uses suggest themselves for consideration.</u>
> (1) <u>A site where a full "Beach Club" might be developed.</u> A facility with supporting improvements such as changing rooms, toilets or even a Club House all with attendant parking of automobiles.
> (2) <u>A similar "Beach Club" operation which, in condominium fashion, sells limited defined rights to specific portions of the beach.</u> Such a use does not necessarily require improvements such as changing rooms and toilets but definitely would need parking.

4

Expert Report of Richard Dennis, Sr. at p.21 (emphasis added).  Thus, the Town cannot now dispute that from a legal perspective, the nonprofit beach club use is appropriate.[2]

     b.    <u>The use is physically possible</u>.

Moreover, it is clear from the location and layout of the Premises, that the property is physically suited for a nonprofit recreational beach club.  The parties do not dispute that the Premises consist of 5.35 acres of beachfront property on Buzzards Bay in Wareham.  Furthermore, as set forth generally in the Expert Report of Lenore White (wetlands scientist) submitted by the Trust, the Premises did not contain any wetland resource areas in any portion of the Premises that would preclude development of the nonprofit beach club use, including clubhouse structure and attendant parking.  While the Town's wetlands expert disagrees with the Trust's delineation of the wetland resource areas existing on the Premises on the date of taking, this Court has ruled that both the Town's and the Trust's wetlands experts will be permitted to testify at trial as to their opinions about what resources areas existed on the date of taking.  If the jury agrees with the Trust's expert, the nonprofit beach club use would be "physically possible",[3] and therefore meets the second prong of the criteria establishing a highest and best use.

     2.    <u>A Developer Would Make A Sufficient Profit to Warrant Development of the Premises For a Nonprofit Beach Club Use</u>.

         a.   <u>A nonprofit beach club is financially feasible</u>.

The Supplemental Expert Report of Steve Elliott clearly sets forth that if a developer were to purchase the Premises on the date of taking for development as a 250-membership nonprofit recreational beach club, he would realize a 15% return on his initial investment in the

---

[2] Although Daylor states that from a physical and financial perspective the beach club use is not possible, as discussed *infra* these assertions are baseless and without merit.
[3] To the extent that there would be no work within any wetland resource areas, the nonprofit beach club use is also "legally permissible" from a wetland regulations perspective.

5

property upon transfer to the nonprofit operating entity, which entity would oversee management and operation of the beach club going forward. That is, as memberships were sold, the developer would not only recoup his initial purchase price for the Premises and his costs to develop same as a nonprofit beach club, but he would also receive a 15% return or profit ($675,000) on that initial investment. Moreover, aside from the purchase of the undeveloped Premises for $3,125,000, the costs to develop the beach club use are feasible in the sense that it would only cost $700,000 (excluding profit) for construction, marketing, overhead and carrying costs—but again, such costs would be recouped through the sale of memberships to the beach club. See Supp. Expert Report of Steve Elliott at p.26-28. The transaction as envisioned by the Trust's experts is straightforward: a developer (the hypothetical willing buyer) would purchase the Premises as raw land, develop it for a nonprofit beach club use, transfer the developed land to a nonprofit entity or association (formed by the beach club members) that would act as the nonprofit operating entity; and the memberships would be sold for $18,000 to 250 members, with the proceeds being paid back to the developer so that he can recoup his costs and make a profit on his land development venture. See Depo. Trans. Steve Elliott at pp. 56-57; 82-83. Such a scenario does not mean that the beach club use will be operated for a profit. Moreover, for purposes of valuing the highest and best use, the inquiry does not require that the initial developer be a nonprofit entity because under zoning all that is required is that the operation of the beach club be such that there is no profit generated by the use.

  The only objection to the financial feasibility of the proposed development by the Town's expert appraiser, Richard Dennis was that, due to the purported lack of parking at the site based upon the wetlands resource areas identified by the Towns engineer/wetlands expert Robert

6

Daylor, there would be insufficient parking to generate enough memberships to make the club feasible:

> Q [Attorney Angley]: So I take it your issue, then, is that you really couldn't use it [as a beach club] because you would say that you can't get the attendant parking that you need?
> A [Dennis]: … a building the size of a two family house, whatever that might be, would be a cost which would have to be recovered over time. And presumably a sufficient number of members would have to be enticed in order to justify doing that cost and operating and running the club. And it would appear that the sufficient number of members suggested by others for a beach club would be such that there's no parking. No way to support that parking here.
> …
> Q: And that is based upon what Mr. Daylor has informed you about with respect to location of resource areas on the property?
> A: Yes, their studies suggested that the necessary parking for the number of members to make a full beach club valuable e is not available.

Dennis Depo. Trans. at 55-58.

      b.  <u>A nonprofit beach club achieves the maximum profit</u>.

The final prong of the test of whether a use is the highest and best use is whether the use achieves the maximum profit. With discounts for the likelihood of being realized and for futurity, the property may be valued for any potential use that maximizes its value in the marketplace. <u>Skyline Homes, Inc. v. Commonwealth</u>, 362 Mass. 684, 686 (1972). To illustrate why the beach club use—as opposed to the two-family residential use—is the highest and best use, requires a comparison of the profits that would be realized by the two uses:

|  | BEACH CLUB USE | TWO-FAMILY RESIDENCE |
|---|---|---|
| Physically possible | Yes | Yes |
| Legally permissible | Yes | Yes |
| Financially feasible | Yes | Yes |

7

| Profit realized | 15% of $4,500,000 (total retail sellout value of 250 memberships at $18,000 each)[4]= **$675,000 profit** | 20% of $1,000,000 (total cost to develop residence and related site improvements)[5] = **$200,000 profit** |
|---|---|---|

Clearly, between the beach club use and the two-family residence, the beach club use achieves the maximum profit, thereby satisfying the fourth and final prong of the definition of the highest and best use. The Town's expert has never refuted the realized profits proposed by the Trust.

Based on the foregoing, the Trust's proposed highest and best use—the nonprofit recreational beach club—satisfies all four prongs of the definition used by both experts. To that end, the Trust should have the opportunity to present its evidence in this regard at trial which would prove that the use is not speculative in any manner.

    II.    <u>There Is a Strong Demand for Beach Club Uses</u>.

Based upon a market study prepared as part of the appraisers report, the Trust's appraiser has opined in his report that there is a strong demand for a beach club facility in the Wareham locale, given the high demand for ocean access, the location of the site north of the Cape Cod Canal and the ability to avoid the saturation and crowding on Cape Cod itself. <u>See</u> Supp. Expert Report of Steve Elliott at p.16, 23-25. Within the Wareham area, five membership beach clubs have been identified. Of those, only Bowerman's Beach Club has reported sales within a reasonable time period. The sales of record indicated to the Appraiser that such property interests are highly attractive and so rarely sold or transferred. However, the three recent sales of Bowerman's ownership interests allowed sufficient data to provide appropriate sales comparisons to determine the market value of the property as a beach club facility.

---

[4] <u>See</u> Supp. Expert Report of Steve Elliott at p. 26.
[5] <u>See</u> Rebuttal Expert Report of Steve Elliott at p. 9.

The general demand for beach club memberships was demonstrated in Portsmouth New Hampshire in the Spring/Summer of 2002 with the marketing and sale of a proposed 175 family membership "Surf Club" on less than two acres of land on Rye Beach. The amenities were to include a building with bathroom facilities, lounge and function facility, swimming pool, decks and small cabanas for changing and storage, 300 feet of beach frontage and parking with construction commencing April, 2002. Membership fees were set at $15,000 as of April, 2002 with $2,500 annual fees. Before construction commenced, there were 140 reported pre-construction memberships. See Portland Press Herald Seacoast online Article dated Wednesday March 20, 2002 attached here to as Exhibit 1.

Date:   3/15/2007

Plaintiff,
BARBARA DEIGHTON HAUPT, Trustee
of BD REALTY TRUST,
By her attorneys,

 /s/ Kristen M. Ploetz
Jeffrey T. Angley, Esq.
B.B.O. #543958
Kristen M. Ploetz, Esq.
B.B.O. #654549
Phillips & Angley
One Bowdoin Square
Boston, MA 02114
(617) 367-8787

CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on this 15th day of March, 2007.

  /S/ Kristen M. Ploetz
Kristen M. Ploetz, Esq.

This is Google's cache of http://www.seacoastonline.com/2002news/3_20h.htm as retrieved on Feb 15, 2007 02:38:32 GMT.
Google's cache is the snapshot that we took of the page as we crawled the web.
The page may have changed since that time. Click here for the current page without highlighting.
This cached page may reference images which are no longer available. Click here for the cached text only.
To link to or bookmark this page, use the following url: http://www.google.com/search?q=cache:W095mQQciAoJ:www.seacoastonline.com/2002news/3_20h.htm+nonprofit+%22beach+club%22+cost&hl=en&ct=clnk&cd=12&gl=us

Google is neither affiliated with the authors of this page nor responsible for its content.

These search terms have been highlighted: **nonprofit beach club cost**





Portsmouth Herald
Exeter News-Letter
Hampton Union
Rockingham News
Dover Community News
York Weekly
York County Coast Star

Portsmouth, NH    Wednesday, March 20, 2002



Click Here to Receive Our Daily Headlines

**Port. Herald**
Today's News
Archives
Business
Cartoons
Classifieds
Columnists
Crossword
Editorials
Employment
Health
Living
Lottery
Maine News
Our Times
Photographers
Reporters
Sports
Spotlight
Weather

**Public Records**
Birth Notices
Dist. Court
Obituaries
Police Logs
Prop. Sold

**Weeklies**
Dover Com. News
Exeter News-Letter
Hampton Union
Rock. News
York County Coast Star
York Weekly

**Entertainment**
Concerts
Datemaker
Dining
Exhibits
Features
Menu Guide

# PORTSMOUTH HERALD



An artist's rendering shows The Surf Club, a proposed **beach club** in Rye. Membership is already soaring toward its 175-family limit. Construction is expected to begin April 20.
Courtesy graphic


Search new and used cars


The Point and Click dining guide for the Seacoast


Search, find, and buy your next home.


Find a job on the Seacoast


Coupons and deals

## Surf's up at new club on beach

By **Larissa Mulkern**, *lmulkern@seacoastonline.com*

RYE BEACH — Summer may be 93 days away, but membership sales at a new **beach club** are already heating up.

The appeal of hassle-free parking and comfortable, family-friendly accommodations is helping sell memberships at the new club weeks before construction begins.

The Surf Club, a **nonprofit** private **beach club**, will begin renovations at the former Pirate's Cove Restaurant location next month. The Planning Board gave the project a conditional go-ahead at a meeting last week. Construction is expected to begin April 20, following the usual 30-day period of public appeal allowed by the town.

**Movie Times**
**Music**
**Nightlife**
**Recipes**
**Theatre**
**TV Times**

**Tourism**
**Attractions**
**History**
**Parks/Beaches**
**Photo Gallery**
**Summer Events**

**Local Resources**
**Churches**
**Event Calendar**
**Real Estate**
**Local Links**
**Mortgage**
**Shop for a Car**
**Towns**
**Yellow Pages**

**About Us**
**Advertising**
**Circulation**
**Comm. Printing**
**Contact Info**
**Employment**
**Logos/Link**
**Media Kit**
**Photo Reprints**
**Place An Ad**
**Site Index**
**Site Search**
**Subscribe**

Founding member and builder Richard Green, of Green & Company Building Corp., North Hampton, said the club will limit initial members to 175 families in an effort to prevent overcrowding. The club has already has 140 members.

"We may decide later to add, but we want to make sure members are able to use the facility comfortably," Green said.

Through the end of March, memberships **cost** $13,000 for ownership initiation, plus $2,500 a year in annual fees. Next month, the initiation fee rises to $15,000, said Green. If a member decides to leave the club, initiation fees are returned at the market value of the membership, which is likely to rise, he added.

Member Tom Blais said stimulating interest in memberships last August was slow at first, but even the events of Sept. 11 and an economic recession failed to squelch growing interest in the project. Parking and beach access added to the appeal, he said.

"I think it's the affordable access to the beach, and when you consider getting a parking space and the ability to leave things there in the cabana ... The summer is so short. Short, but glorious. To know you have a place to go and meet friends and family in a safe and comfortable environment brings everybody together," said Blais.

The Surf Club, located on less than two acres, will be roughly 5,000 square feet with amenities including a competition swimming pool, outdoor decks, a large outdoor grilling area, bathroom facilities, a lounge and a function facility for member events. Individual 3-by-4-foot cabanas will provide members private changing and locked storage areas.

Members will be able to bring their own steaks, burgers and beer for cooking and dining on the outside decks, and a snack shack will also serve light breakfast and lunch during the day.

Green said members thus far come from across the Seacoast and New Hampshire, with a number of members from out of state.

"Many are people who wanted to be members at the existing Rye **Beach Club**, which has an 18-plus-year waiting list. Everybody started realizing they'd never be members and some of us said, 'Why don't we try to build our own club?' We investigated our own site and come up with this. This is a **nonprofit** project all the way around," said Green, adding that the company will build the club at **cost**, with no profit.

The club, with 300 feet of frontage, will not impede public access on the beach, Green said.





*Click here for more news*

*Click here to send this article to a friend*



Seacoast Online is owned and operated by Seacoast Newspapers. Copyright © 2002 Seacoast Online. All rights reserved. Please read our Copyright Notice and Terms of Use. Seacoast Newspapers is a subsidiary of Ottaway Newspapers, Inc., a Dow Jones Company.