UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05-11745RWZ

BARBARA DEIGHTON HAUPT, Trustee of
BD REALTY TRUST,

    Plaintiff

v.

TOWN OF WAREHAM acting by and
through the BOARD OF SELECTMEN OF
THE TOWN OF WAREHAM, and the
BOARD OF SELECTMEN OF THE TOWN
OF WAREHAM,

    Defendants

DEFENDANTS' REPLY TO
PLAINTIFF'S SUPPLEMENTAL
OPPOSITION TO DEFENDANTS'
MOTION *IN LIMINE* TO EXCLUDE
ANY AND ALL EVIDENCE AND
TESTIMONY OF PLAINTIFF'S
PROPOSED USE OF THE PROPERTY
AS A BEACH CLUB AND ANY
ALLEGED COMPARABLE BEACH
CLUB PROPERTIES RELIED UPON
BY THE PLAINTIFF

Now come the defendants in the above captioned matter and hereby move this Court to exclude any and all evidence of plaintiff's proposed use of the subject property as a non-profit beach club and any of the alleged comparable sales of beach clubs relied upon by the plaintiff's expert appraiser. For reasons therefor, the defendants state that notwithstanding plaintiff's eleventh hour attempt to demonstrate that a non-profit beach club is not speculative, the plaintiff has failed to provide the Court with any comparable sales data or any evidence to support valuation of the property based on any alternative means of arriving at a valuation. Therefore, this Court should, in its gatekeeper role, find that that any valuation regarding a non-profit beach club is as a matter of law unreliable and should be excluded. For further reasons therefor, the defendants state as follows.

I.    INTRODUCTION

1

This is an eminent domain case arising out of the defendants taking of plaintiff's beach front property in the Town of Wareham. Plaintiff has brought this action pursuant to M.G.L. c. 79, claiming that the pro tanto awarded by the Town did not justly compensate her for the value of the taken property. As a result, plaintiff has engaged an expert appraiser who has opined that the highest and best use of the property would have been as a 250 membership non-profit beach club with an estimated value of $3,125,000.00.

II.     Relevant Facts

In reaching a valuation for the non-profit beach club, plaintiff's appraiser used the so-called sales comparison approach to valuation. The sales comparison approach relies on a comparative analysis of sales of similar properties. See Plaintiff's Appraiser's Supplemental Expert Report p. 20. In this matter, neither plaintiff nor plaintiff's appraiser was able to locate any sales of beach clubs to use in a comparison analysis. See Deposition Plaintiff at pp. 49-51. Indeed, when questioned during a deposition, plaintiff's appraiser admitted that "it turned out there were virtually no sales of beach club properties available." Deposition of Steven Elliot at p. 54. Additionally, after further examination at his deposition, plaintiff's appraiser admitted that there was no comparable information to use in analyzing the developability of the subject property as a non-profit beach club. Exhibit C, Elliot Depo. at p. 58.

Notwithstanding this lack of a market for non-profit beach clubs, plaintiff proposes that the development of the Property would be undertaken as follows. Plaintiff is not a non-profit but rather intends to sell the Property to a developer who will build the beach club and attempt to sell each of the 250 units to individual owners who will in turn,

incorporate themselves as a non-profit beach club. See Exhibit C, Elliot Depo. at pp. 81-85.

On March 6, 2007, the defendants filed a motion *in limine* to exclude any evidence regarding the proposed nonprofit beach club because plaintiff has completely failed to provide any comparable sales data to support its claimed value. In response to defendants' motion, plaintiff argued that no comparable sales data was necessary and this Court should grant it much leeway in valuing the proposed use because the property was unique. At the motions *in limine* hearing held on March 8, 2007, this Court was highly suspect of plaintiff's ability to demonstrate that a nonprofit beach club would be the highest and best use, especially as plaintiff has proposed. Specifically, the Court posited that the use would be too speculative from the economic perspective of a developer as proposed by the plaintiff.

In response, the plaintiff has now submitted a Supplemental Opposition to Defendants' Motion *in Limine* to Exclude Any and All Evidence and Testimony of Plaintiff's Proposed Use of the Property as a Beach Club and Any Alleged Comparable Beach Club Properties Relied Upon by the Plaintiff ("Supplemental Opposition"). In its Supplemental Opposition, the plaintiff now attempts to argue that its proposed beach club use is not speculative because there is actually beach club operating in Rye New Hampshire that was developed as a non profit beach club.[1] See Plaintiff's Supplemental Opposition at Exhibit A.

III. ARGUMENT

---

[1] It should be noted that the plaintiff does not rely upon this New Hampshire Beach Club as a comparable in arriving at a value for their proposed highest and best use but rather merely attach a 2002 internet article from a local New Hampshire newspaper which give very limited specifics on the proposed beach club. Indeed, whether the club was actually built and units sold are unknown.

Based on the unsubstantiated and wholly speculative nature of plaintiff's appraiser's comparable property analysis with respect to the proposed non-profit beach club, this Court should exercise its gate keeper function and exclude any and all evidence of plaintiff's appraiser's so-called comparable sales analysis.  See Bailey v. United States, 325 F.2d 571, 572 (1st Cir. 1963)(stating [w]hether transactions involving other lands are . . . sufficiently similar property are . . . addressed to the sound discretion of the trial court"); see also Algonquin Gas Transmission Co. v. 60 Acres of Land, 855 F. Supp. 449 (1994); United States v. Nickerson, 2 F.2d 502 (1st Cir. 1924).

"No two pieces of property are exactly alike, and much must be left to the discretion of the presiding judge, who, in the first instance, is to determine whether there is such general similarity between the land sold and the land taken that the selling price of the former will furnish a fair criterion of the market value of the latter.  In other works, [she] is to decide whether the evidence of the sale of such land will aid and assist the jury properly to fix the value of the land in controversy; or whether, upon the whole, the land sold was not shown to be sufficiently similar to the land in question and, therefore, the introduction of evidence of the actual sale of such land would tent only to mislead and confuse the jury." Iris v. Town of Hingham, 303 Mass. 401, 408-409 (1939); see also Valley Paper Company v. Holyoke Housing Authority, 346 Mass. 561, 569 (1963).  In those cases where the Court finds that the comparable sales proffered by an expert are so vastly different that each sale has "lost its probative weight as evidence . . . the jury should not be permitted to surmise or speculate as to the [alleged similarities]." Haufler v. Commonwealth, 372 Mass. 527, 533 (1977).

4

In this matter plaintiff's basis for contending that the Property could be used as a non-profit beach club is based on a two step analysis: 1) that there is a market for non-profit beach clubs; and 2) that the property could be sold to a developer who would risk investing in the Property and expending the necessary funds to develop a beach club and then sell 250 individual units to members who would then incorporate and run the club as a non-profit. In its Supplemental Opposition, plaintiff has again failed to produce any evidence that either step in the analysis is anything more than rank speculation.

As a threshold matter plaintiff's eleventh hour disclosure of a purported comparable property from Rye New Hampshire ("New Hampshire Beach Club") should be stricken from the record. <u>See</u> <u>Supplemental Opposition Exhibit A</u>. Defendants are significantly prejudiced in preparing a defense since, at this late hour, they are unable to confirm whether the New Hampshire Beach Club was ever built, under what circumstances, whether units have in fact been sold. It appears that plaintiff's own appraiser was not involved in finding this alleged comparable, but rather this is a last minute "hail Mary pass" thrown by counsel for the plaintiff to attempt to convince the Court that its proposed highest and best use of the property is not speculative.

Even if the Court does consider plaintiff's latest proffer, it does not address the obvious deficiencies in plaintiff's theory. Indeed, plaintiff's Supplemental Opposition highlights the very speculative nature of its proposed use of the property. The New Hampshire beach club that plaintiff now proffers to Court as evidence to demonstrate that a non profit beach club is not speculative is not comparable to the plaintiff's proposed use and this Court should not consider it in any manner. This is so because the plaintiff proposes to sell the property to a developer, who will in turn, develop the property and

sell 250 memberships to people who will in turn incorporate as a non profit corporation and run the beach club. In the New Hampshire beach club, the development of the beach club "is a nonprofit project all the way around . . . the [developer] will build the club at cost, with no profit." See Supplemental Opposition Exhibit A p. 2. In other words, the developer, who is also the founding member of the nonprofit will not make any profit on building the club. In the plaintiff's proposed scenario, the developer is to make approximately $600,000.00 for developing the property. Therefore, plaintiff's recent proffer is not comparable and this Court should ignore it.

Additionally, the relevant comparable sales transaction for determining the value of the property as proposed by the plaintiff is the sale of ocean front property to a developer for development into a nonprofit beach club. Assuming, *arguendo*, that the New Hampshire beach club is comparable to plaintiff's proposed use, the relevant comparable transaction would be the price the developer paid for the raw land. Plaintiff has not provided the Court or defendants with any transactions that can remotely be considered relevant to the price a developer would pay for raw land to develop a nonprofit beach club. Even considering plaintiff's latest proffer, plaintiff has failed to establish either: 1) that there is a market for non-profit beach clubs; and 2) that the property could be sold to a developer who would risk investing in the Property and expending the necessary funds to develop a beach club and then sell 250 individual units to members who would then incorporate and run the club as a non-profit.

Thus, without at least some sales data from the sale of properties to developers who are willing to risk building a non-profit beach club or sales data from the sale of a non-profit beach club or evidence that a market even exists for a non-profit beach club, it is

6

wholly speculative to place a value on this Property for use as a non-profit beach club. The comparables proffered by the plaintiff—the sale of three individual club memberships—is not remotely comparable to the sale of land to a developer. Additionally, because plaintiff's so-called comparables in this matter are not non-profit clubs developed with multiple contingencies, they are so dissimilar to the proposed highest and best use that the introduction of the sales price of these comparables would only tend to mislead and confuse the jury. Accordingly, this Court should exclude all testimony and evidence regarding the use of the property for a non-profit beach club. Iris v. Town of Hingham, 303 Mass. 401, 408-409 (1939).

Furthermore, plaintiff's argument that this Court should grant it much leeway in valuing the property as a nonprofit beach club because the property is unique, further highlights the problem with plaintiff's proposed highest and best use. Specifically, plaintiff is unable to present any evidence of the value of ocean front property as sold to a developer for development into a nonprofit beach club and are thus unable to proffer an opinion of value based on any acceptable alternative method of valuation.

Assuming, *arguendo*, that the property is unique. Under relevant Massachusetts eminent domain law, plaintiff could have valued the property using one of three methods. "They are: 1. The current cost of reproducing a property less depreciation from deterioration and functional and economic obsolescence. 2. The value which the property's net earning power will support, based upon a capitalization of net income. 3. The value indicated by recent sales of comparable properties in the market." Correia v. New Bedford Redevelopment Authority, 375 Mass. 360, 362 (1978).

Where, as claimed by the plaintiff in this matter, "(t)he properties may be of a type, not frequently bought or sold, but usually acquired by their owners and developed from the ground up, so that the cost of land plus the reproduction cost (less depreciation where appropriate) of improvements may be more relevant than in the ordinary case." Id. at 363.  Thus, an alternative valuation technique in this matter could have been the cost to reproduce less depreciation.  Plaintiff's failure to avail itself of this method further highlights the speculative nature of plaintiff's proposed highest and best use and the flaw in plaintiff's analysis, i.e. that there is a market for the sale of ocean front property to developers for development of nonprofit beach clubs.

As detailed above, the reproduction cost method would require that plaintiff find comparable sales of ocean front property to a developer for development into a nonprofit beach club and then add the cost of the proposed structure and other improvements.  The common denominator in the two valuation techniques available to the plaintiff is the sale of ocean front property to developers for development of a nonprofit beach club. Plaintiff's failure to locate any such sales is indicative of the speculative nature of plaintiff's proposed highest and best use of the property.

In other words, plaintiff's inability to find any comparable sales transactions clearly demonstrates that there is no market for land sold to developers for the construction of a nonprofit beach club.  Based on plaintiff's complete failure to provide the Court or defendants with any competent evidence to establish either: 1) that there is a market for non-profit beach clubs; and 2) that the property could be sold to a developer who would risk investing in the Property and expending the necessary funds to develop a beach club and then sell 250 individual units to members who would then incorporate and run the

8

club as a non-profit, this Court should exclude all testimony and evidence regarding the use of the property for a non-profit beach club. <u>Iris</u> v. <u>Town of Hingham</u>, 303 Mass. 401, 408-409 (1939).

                                            Defendants,

                                            By their attorneys,

                                            /s/ Jeffrey T. Blake
                                            Richard Bowen (BBO# 552814)
                                            Jeffrey T. Blake (BBO# 655773)
                                            Kopelman and Paige, P.C.
                                            101 Arch Street
                                            Boston, MA  02110-1109
                                            (617) 556-0007

309758/WARH/0224