UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05-11745RWZ

BARBARA DEIGHTON HAUPT, Trustee of
BD REALTY TRUST,

      Plaintiff

v.

TOWN OF WAREHAM acting by and
through the BOARD OF SELECTMEN OF
THE TOWN OF WAREHAM, and the
BOARD OF SELECTMEN OF THE TOWN
OF WAREHAM,

      Defendants

DEFENDANTS' EMERGENCY
MOTION FOR STATUS HEARING

DEFENDANTS' MOTION TO EXCLUDE PLAINTIFF'S EXPERTS' TESTIMONY

Now come the defendants in the above-captioned action, and hereby move this

Honorable Court to exclude, pursuant to Fed. R. Civ. P. 37(c)(1), the expert testimony of

Steven Elliot, Lenore White and Bradley McKenzie ("plaintiff's experts").  As grounds

for this motion, the defendants state that plaintiff has grossly failed to comply with the

disclosure provisions of Fed. R. Civ. P. 26(2)(A-C), and the defendants would be unfairly

prejudiced by the testimony of the above named plaintiff's experts.  The defendants

further rely upon the following Memorandum of Reasons.

MEMORANDUM OF REASONS

1.     This is an eminent domain case arising out of the defendants taking of plaintiff's

beach front property in the Town of Wareham.  Plaintiff has brought this action pursuant

to M.G.L. c. 79, claiming that the pro tanto awarded by the Town did not justly

compensate her for the value of the taken property.  As a result, plaintiff has engaged the

services of numerous experts who have opined that the highest and best use of the

property would have been as a 250 membership non-profit beach club with an estimated

value of $3,125,000.00.

2.      Plaintiff has engaged Steven Elliot as an appraiser, Lenore White as a Wetland

Expert, and Bradley McKenzie as an engineer.

3.      Plaintiff timely disclosed the identity of her experts to the defendants.

4.      Fed.R.Civ.P 26(a)(2)(B) provides that an expert disclosure shall, unless otherwise

stipulated or directed by the Court "be accompanied by a written report prepared and

signed by the witness."

5.      The plaintiff provided a Rule 26 expert report concerning the above named

experts.

6.      Since that time, the parties have conducted the depositions of all the experts and

the discovery deadline has long since expired.

7.      Indeed, the trial of this matter is scheduled for April 9, 2007.

8.      On March 30, 2007, counsel for the plaintiff left a voice mail message for counsel

for the defendants claiming that a supplementation to the expert report of Lenore White

was necessary and would be electronically transmitted that day.

9.      Due to technical difficulties, defendants' counsel did not receive the

supplementation of Lenore White's expert report until April 2, 2007.  A true and accurate

copy of White's Supplementation is attached hereto as Exhibit A.

10.     At that time defendants counsel not only received a supplementation of Lenore

White's report but also a supplementation of Bradley McKenzie's report which purports

to rely on Ms. White's revised opinion. A true and accurate copy of McKenzie's Supplemental Report is attached hereto as <u>Exhibit B</u>.

11. Additionally, counsel for the defendants also received a Second Supplement to Steven Elliot's report which does not rely upon either the changes in the McKenzie Report or the White Report, but rather, now references a comparable property that was built in New Hampshire in 2002. A true and accurate copy of Elliot's Second Supplemental Report is attached hereto as <u>Exhibit C</u>. This "new comparable" was available for Mr. Elliot's review and inclusion well prior to his submission of his first report.

12. Since the defendants will be severely prejudiced if the Court allows the inclusion of plaintiff's numerous eleventh hour supplementations, and the mere fact that supplementation is necessary, implies that any prior reports of the above named experts are unreliable, this Court should exclude all expert reports of Steven Elliot, Lenore White, and Bradley McKenzie. This is so because recognizing the importance of expert testimony in modern civil practice, the Civil Rules provide for extensive pretrial disclosure of expert testimony. "This sort of disclosure is consonant with the federal court's desire to 'make a trial less of a game of blindman's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practical extent.'" <u>Thibeault</u> v. <u>Square D Company</u>, 960 F.2d 239, 244 (1st Cir. 1992). "In the arena of expert discovery - a setting which often involves complex factual inquiries - Rule 26 increases the quality of trials by better preparing attorneys for cross-examination." <u>Thibeault</u>, 960 F.2d at 244. "In short, Rule 26 promotes fairness both in the discovery process and at trial." <u>Id.</u>

13.     "This circuit has recommended a straightforward approach to ensure that the spirit of open discovery embodied in Rule 26 is not undermined either by evasion or by dilatory tactics." Thibeault, 960 F.2d at 244. "[D]istrict courts possess the power to impose sanctions without first issuing a firm discovery deadline or an admonitory order." Thibeault, 960 F.2d at 245 (case citations omitted).

14.     "[P]enalties can be imposed in response to a party's subversion of the trial process, even if the responsible party was guilty of laxity rather than bad faith." Thibeault, 960 F.2d at 245. "[S]anctions recognize that a litigant's ... disregard for obligations inherent in the conduct of litigation, harm not only the system but the other participants in the process." Anderson, 900 F.2d at 395.

15.     This Honorable Court has the discretionary power to preclude expert testimony due to the lateness of expert identification. Doe v. Gaughan, 808 F.2d 871, 876 (1st Cir. 1986); U.S. v. Palmer, 956 F.2d 3, 7 (1st Cir. 1992); Anderson v. Beatrice Foods Co., 900 F.2d 388, 395 (1st Cir. 1990).

16.     The defendants have been and will be severely prejudiced by the plaintiff's failure to timely disclose the required expert information. Defense counsel received the latest disclosure a mere 7 days from the commencement of and long after the timely filing of their own expert reports. The defendants are left with limited or no opportunity to investigate, evaluate and rebut this new information.

17.     The plaintiff has offered no valid justification for her delay in supplying the information required under rules, and should not be allowed to profit to the detriment of the defendants from their lack of disclosure.

<u>CONCLUSION</u>

For the reasons stated above, the defendants respectfully request that this Honorable Court preclude all expert testimony of Steven Elliot, Lenore White and Bradley McKenzie.

DEFENDANTS,

By their attorneys,

/s/ Jeffrey T. Blake
Richard Bowen (BBO# 552814)
Jeffrey T. Blake (BBO# 655773)
Kopelman and Paige, P.C.
 Town Counsel
101 Arch Street
12th Floor
Boston, MA 02110-1109
(617) 556-0007

311262/WARH/0224

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.: 05-11745RWZ

BARBARA DEIGHTON HAUPT, Trustee )
of BD REALTY TRUST,                              )
          Plaintiff                            )
                      )
v.                                                              )
                      )
THE TOWN OF WAREHAM acting by           )
and through the BOARD OF                     )
SELECTMEN OF THE TOWN OF              )
WAREHAM, and the BOARD OF              )
SELECTMEN OF THE TOWN OF              )
WAREHAM,                                           )
          Defendants                        )

## CORRECTED EXPERT REPORT OF LENORE WHITE

I.    Introduction

      This corrected report and the opinions expressed herein are submitted by Lenore

White, of Wetland Strategies, Inc., on behalf of Plaintiff, Barbara Deighton Haupt,

Trustee of BD Realty Trust, in the above-referenced matter.

      This report is submitted in accordance with Fed. R. Civ. P. 26(a)(2) and 26(e)(2),

and is a supplement to the Expert Report of Lenore White, of Wetland Strategies, Inc.

dated March 29, 2006 ("Original Report") for the purpose of correcting information

determined to be incorrect on or about Thursday March 22, 2007.

. II.    Statement of Opinions

A.     Complete Statement of Opinions and Basis and Reasons Therefore

1.     Background as to Why I Was Retained.

       See Original Report.

2.     Data and Information Which Form the Basis of My Opinions

In addition to the documents and information previously reviewed in preparing

my Original Report, I considered the following additional documents relevant to my

opinions herein:

- Revised Concept Plans C-1, C-2 and C-3 prepared by McKenzie Engineering Group, Inc.

3.     Analysis and Conclusions

In my Original report, I stated that "while the ANRAD plan is confusing in

defining the edge of the BVW, and while BVW flags BVW B 1 through B5 do not make

sense as there is no end flag for this B series, there is simply not enough conclusive

evidence for me to refute the ANRAD plan.  Therefore, assuming the ANRAD plan to be

the operative delineation of BVW at the time of taking (and which plan was incorporated

into the Vautrinot Plan), the access way into the parking area shown on the Vautrinot

Plan would pass through a small section of BVW.  I went on to state that "It is my

opinion that the proposed parking areas and limited amenities would be approved under

the State Wetlands Protection Act as it meets all of the conditions generally required for

said activity.  No such uses are located within resource areas under the WPA and its

implementing regulations except for land subject to coastal storm flowage, which has no

performance standards and a limited BVW crossing discussed before and again hereafter"

which was estimated at 1,500 square feet.  (See Original Report, Pg. 20 and 25).

On Thursday March 22, 2007 while looking at an overlay of the ANRAD Plan

over Concept Plan C-2 and then also looking at the C-1 and C-3 Concept Plans prepared

by McKenzie Engineering Group, Inc, I realized that an additional portion of BVW as

shown on the ANRAD Plan (which I assumed to be correct for the purposes of this

matter), would be located within the layout of parking spaces on the Concept Plans. This

discovery requires a slight modification of my report because in my Original Report I

estimated that only 1,500 square feet of BVW as shown on the ANRAD Plan would have

to be altered, due to the access road into the site. While those 1,500 square feet of BVW

alteration remains accurate for the limited access way into the site, McKenzie

Engineering has now calculated the square footage of additional BVW impacts due to

parking layout, each of which additional alteration areas are stated on each revised

concept plan, and the total of limited access and parking alteration do not exceed 5000

square feet. Consequently, I correct my Original Report by stating that the total

estimated area of BVW to be altered by the access road into the site and parking will be

approximately 4,925 square feet for the 40B use shown on the Revised C-1 Plan, 4,875

square feet for the Beach Club use shown on the Revised C-2 Plan and 4,875 square feet

for the Beach Club with building use shown on the Revised C-3 Plan. Nevertheless, my

opinion about the permissibility of the various Concept Plans remains unchanged, since,

as discussed in my Original Report, the regulations found at 310 CMR 10.53 (3) allow

the alteration of more than 5,000 square feet of BVW, for limited access projects such as

to gain access to a site (Original Report pg. 20) and the regulations found at 310 CMR

10.55 (4) allow the issuing authority to permit the alteration of up to 5,000 square feet of

BVW so long as the area filled is replicated at a ratio of 1:1 (Original Report pg 19 and

3

25). The proposal still includes a wetland replication area to be constructed in accordance with the standards found at 310 CMR 10.55 (4), so under that provision or as a limited project, the concept plans are permissible.

Submitted under the pains and penalties of perjury this 30th day of March, 2007.


Lenore White
Professional Wetland Scientist
Wetland Strategies, Inc.

4

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.: 05-11745RWZ

| | |
|---|---|
| BARBARA DEIGHTON HAUPT, Trustee | ) |
| of BD REALTY TRUST, | ) |
| Plaintiff | ) |
| | ) |
| v. | ) |
| | ) |
| THE TOWN OF WAREHAM acting by | ) |
| and through the BOARD OF | ) |
| SELECTMEN OF THE TOWN OF | ) |
| WAREHAM, and the BOARD OF | ) |
| SELECTMEN OF THE TOWN OF | ) |
| WAREHAM, | ) |
| Defendants | ) |

## SECOND SUPPLEMENT TO EXPERT REPORT OF BRADLEY C. MCKENZIE, P.E., CIVIL ENGINEER

### I.  Introduction

This second supplemental report and the opinions expressed herein are submitted by

Bradley C. McKenzie, P.E. of McKenzie Engineering Group, Inc. (MEG), on behalf of Plaintiff,

Barbara Deighton Haupt, Trustee of BD Realty Trust, in the above-referenced matter.

This report is submitted in accordance with Fed. R. Civ. P. 26(a)(2) and 26(e)(2) , and is

a supplement to the Expert Report of Bradley C. McKenzie, P.E., Civil Engineer dated March

29, 2006 ("Original Report").  The basis for submitting this supplemental report is the recent

discovery as described in the Corrected Expert Report of Lenore White indicating that the

Concept Plans will result in some additional alteration of bordering vegetated wetland related to

certain parking spaces located along and near the entry way into the site.  Based on this

information, it has been necessary for me to correct the Concept Plans to show this additional

1

area of impacts in relation to the lay out of parking spaces and to assess whether there is sufficient area for replication of any additional impacted BVW.

**IV.**    **Statement of Opinions**

A.    Complete Statement of Opinions and Basis and Reasons Therefore

1.    Background as to Why I Was Retained

See Original Report at p.3-4.

2.    Data and Information Which Form the Basis of My Opinions

Subsequent to my Original Report, I considered the following additional documents relevant to my opinions herein:

- Overlay of 2000 ANRAD Plan onto Concept Plans C-1, C-2 and C-3.

- Corrected Expert Report of Lenore White; and

- Revised Concept Plans C-1, C-2 and C-3 prepared by McKenzie Engineering Group, Inc. attached hereto.

3.    Analysis and Conclusions

I have reviewed an overlay of the 2000 ANRAD Plan over the various Concept Plans C-1, C-2 and C-3 prepared by McKenzie Engineering Group, Inc. It appears that additional portion of BVW as shown on the ANRAD Plan (which was assumed by WSI to be correct for the purposes of this matter), would be located within the layout of parking spaces on the Concept Plans. I have calculated this additional area on each of the revised Concept Plans (revision date March 30, 2007). I have revised the Concept Plans to show this potential additional BVW alteration and have reviewed the plans to determine if there is a sufficient area to undertake additional BVW replication. I have determined that, as shown on the revised Concept Plans, there is sufficient area for 1:1 replication. As stated in my Original report, mu opinion has not changed that both the beach club use and the 40B use are permittable as a limited project

2

pursuant to 310 CMR 10.53 (3) or as an alteration of BVW under 5000 square feet pursuant to 310 CMR 10.55 (4). At a 1:1 ratio there is sufficient area on the property to undertake any necessary replication.

     B.    Exhibits to be Used as a Summary of or Support for the Opinions

The Revised C-1, C-2 and C-3 Concept Plans attached hereto as Exhibit 1, Exhibit 2 and Exhibit 3 each prepared by MEG constitute part of the opinions intended to be expressed in this Supplemental Report. These plan is incorporated by reference herein and also constitutes a summary of the opinions expressed herein as well as support therefor.

Submitted and signed this 36TH day of March, 2007.

Bradley C. McKenzie, P.E.
Registered Professional Engineer
McKenzie Engineering Group, Inc.

L:\LITG\Dtm002\BRAD MCKENZIE REPORTS\Brad.McKenzie.Report.Supp.03.26.07.doc

3







UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05-11745RWZ

| | |
|---|---|
| BARBARA DEIGHTON HAUPT, Trustee of BD Realty Trust, <br>          Plaintiff <br> v. <br><br> THE TOWN OF WAREHAM acting by And through the BOARD OF SELECTMEN OF THE TOWN OF WAREHAM, and the BOARD OF SELECTMEN OF THE TOWN OF WAREHAM, <br>          Defendants | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## SECOND SUPPLEMENTAL EXPERT REPORT OF STEVEN G. ELLIOTT, SRA, MRA REAL ESTATE APPRAISER

**I.**      **Witness**

Steven G. Elliott, SRA, MRA
Elliott, Gottschalk & Associates
78 Thomas Street
Ashland, MA 01721

**II.**      **Statement of Opinions**

This second supplemental report and the opinions expressed herein are submitted by

Steven G. Elliott of Elliott, Gottschalk & Associates, on behalf of the Plaintiff, Barbara Deighton

Haupt, Trustee of BD Realty Trust, in the above referenced matter.

This second supplemental report is submitted in accordance with Fed. R. Civ. P. 26(a)(2)

and 26(e), and is a supplement to the Expert Report of Steven G. Elliott, SRA,MRA Real Estate

Appraiser dated March 31, 2006 ("Original Report") and Supplemental Expert Report of Steven

G. Elliott, SRA, MRA Real Estate Appraiser dated September 20, 2006 ("First Supplemental

Report"). The basis for submitting this supplement report is the online newspaper article of the Portsmouth Herald, published on March 20, 2002 on Seacoastonline.com, which was recently made available to me by counsel for Plaintiff. See **Exhibit A** attached hereto. Upon reviewing this article, I then undertook a preliminary title search and reviewed the present assessed value for the Rye Beach property referenced in the article. As a result of this recently acquired information, I find it necessary to supplement my prior opinions to the extent that the information I have obtained further supports and validates my opinion as to the highest and best uses of the Premises as of the date of taking as set forth in my Original Opinion and First Supplemental Opinion.

Specifically, the article refers to a proposed beach club to be known as The Surf Club of Rye, Inc. According to the article, approvals were sought from the town to construct a non-profit, private beach club on the 2.26 acre parcel of land that housed the Pirate's Cove restaurant. The concept was to initially create a beach club with 175 family memberships. The initial pricing was $13,000, which was increased after 140 members had signed up. The price was then increased to $15,000. In addition there was a $2,500 annual fee. The club includes a clubhouse, swimming pool, four bathroom facilities, cooking/grilling facilities, snack bar and 3' x 4' individual cabanas for members. The property was acquired on April 15, 2002 for $3,000,000 and is currently assessed for $4,354,600. I have spoken with the developer, Mr. Michael Green of Green and Company who confirmed the information in the article and further confirmed the purchase price and the fact they currently have 177 memberships. In addition, the current cost of a membership is $17,500 and the annual fee is $2,600. He also indicated that the cost to demolish the existing facility and construct the new facilities was approximately $2,000,000. I have also obtained a copy of the deed and assessor's cards. See

2

**Exhibit B and C** attached

hereto.

This is a highly comparable property in terms of the Premises (200 Swifts Beach Road,

Wareham, Massachusetts) proposed use as a non-profit beach club. The Premises site is superior

in terms of acreage and beach frontage. The proposed facility is also similar in size to the

9,000+/- square foot facility that was created for the Surf Beach Club.

Signed and submitted this __2ⁿᵈ__ day of April, 2007.

Steven G. Elliott, SRA, MRA

3

**EXHIBIT A**

Portsmouth Herald Local News: Surf's up at new club on beach    Page 1 of 2

This is Google's cache of http://www.seacoastonline.com/2002news/3_20h.htm as retrieved on Feb 15, 2007 02:38:32 GMT.
Google's cache is the snapshot that we took of the page as we crawled the web.
The page may have changed since that time. Click here for the current page without highlighting.
This cached page may reference images which are no longer available. Click here for the cached text only.
To link to or bookmark this page, use the following url: http://www.google.com/search?q=cache:W095mQQciAoJ:www.seacoastonline.com/2002news/3_20h.htm+nonprofit+%22beach+club%22+cost&hl=en&ct=clnk&cd=12&gl=us

Google is neither affiliated with the authors of this page nor responsible for its content.

These search terms have been highlighted: nonprofit beach club cost



# Seacoastonline

Portsmouth, NH    Wednesday, March 20, 2002



Portsmouth Herald
Exeter News-Letter
Hampton Union
Rockingham News
Dover Community News
York Weekly
York County Coast Star

**Port. Herald**
Today's News
Archives
Business
Cartoons
Classifieds
Columnists
Crossword
Editorials
Employment
Health
Living
Lottery
Maine News
Our Times
Photographers
Reporters
Sports
Spotlight
Weather

**Public Records**
Birth Notices
Dist. Court
Obituaries
Police Logs
Prop. Sold

**Weeklies**
Dover
Com. News
Exeter
News-Latter
Hampton Union
Rock. News
York County
Coast Star
York Weekly

**Entertainment**
Concerts
Datemaker
Dining
Exhibits
Features
Menu Guide





An artist's rendering shows The Surf Club, a proposed **beach club** in Rye. Membership is already soaring toward its 175-family limit. Construction is expected to begin April 20.
Courtesy graphic

## Surf's up at new club on beach

By Larissa Mulkern, lmulkern@seacoastonline.com

RYE BEACH — Summer may be 93 days away, but membership sales at a new beach club are already heating up.

The appeal of hassle-free parking and comfortable, family-friendly accommodations is helping sell memberships at the new club weeks before construction begins.

The Surf Club, a nonprofit private beach club, will begin renovations at the former Pirate's Cove Restaurant location next month. The Planning Board gave the project a conditional go-ahead at a meeting last week. Construction is expected to begin April 20, following the usual 30-day period of public appeal allowed by the town.


Search new and used cars.


The Point and Click dining guide for the Seacoast


Search, find, and buy your next home.


Find a job on the Seacoast


Coupons and deals

Portsmouth Herald Local News: Surf's up at new club on beach                Page 2 of 2

Movie Times
Music
Nightlife
Recipes
Theatre
TV Times

Tourism
Attractions
History
Parks/Beaches
Photo Gallery
Summer Events

Local Resources
Churches
Event Calendar
Real Estate
Local Links
Mortgage
Shop for a Car
Towns
Yellow Pages

About Us
Advertising
Circulation
Comm. Printing
Contact Info
Employment
Logos/Link
Media Kit
Photo Reprints
Place An Ad
Site Index
Site Search
Subscribe

Founding member and builder Richard Green, of Green & Company Building Corp., North Hampton, said the club will limit initial members to 175 families in an effort to prevent overcrowding. The club has already has 140 members.

"We may decide later to add, but we want to make sure members are able to use the facility comfortably," Green said.

Through the end of March, memberships cost $13,000 for ownership initiation, plus $2,500 a year in annual fees. Next month, the initiation fee rises to $15,000, said Green. If a member decides to leave the club, initiation fees are returned at the market value of the membership, which is likely to rise, he added.

Member Tom Blais said stimulating interest in memberships last August was slow at first, but even the events of Sept. 11 and an economic recession failed to squelch growing interest in the project. Parking and beach access added to the appeal, he said.

"I think it's the affordable access to the beach, and when you consider getting a parking space and the ability to leave things there in the cabana ... The summer is so short. Short, but glorious. To know you have a place to go and meet friends and family in a safe and comfortable environment brings everybody together," said Blais.

The Surf Club, located on less than two acres, will be roughly 5,000 square feet with amenities including a competition swimming pool, outdoor decks, a large outdoor grilling area, bathroom facilities, a lounge and a function facility for member events. Individual 3-by-4-foot cabanas will provide members private changing and locked storage areas.

Members will be able to bring their own steaks, burgers and beer for cooking and dining on the outside decks, and a snack shack will also serve light breakfast and lunch during the day.

Green said members thus far come from across the Seacoast and New Hampshire, with a number of members from out of state.

"Many are people who wanted to be members at the existing Rye Beach Club, which has an 18-plus-year waiting list. Everybody started realizing they'd never be members and some of us said, 'Why don't we try to build our own club?' We investigated our own site and come up with this. This is a nonprofit project all the way around," said Green, adding that the company will build the club at cost, with no profit.

The club, with 300 feet of frontage, will not impede public access on the beach, Green said.

*Click here for more news*

*Click here to send this article to a friend*



**SeacoastSHOPS.com**

Seacoast Online is owned and operated by Seacoast Newspapers.
Copyright © 2002 Seacoast Online. All rights reserved. Please read our
Copyright Notice and Terms of Use. Seacoast Newspapers is a subsidiary of
Ottaway Newspapers, Inc., a Dow Jones Company.



Seacoast Yellow Pages



Seacoast Dates .com



Post a Job $145

**EXHIBIT B**

03/26/2007  12:05    6835641516    TOWN OF RYE NH    PAGE  02/87
BOOK 3755  PAGE 2465  SUffix    Docket 32384  Town RY  This image for  at scan04 at Rockingham County on 02/04/10

BK3755PG2465



SEE PLANS
3units
(For 2003)

173/35

3,000.000

STATE OF NEW HAMPSHIRE

536699 $46000.00

## SURF CLUB OF RYE CONDOMINIUM
## WARRANTY DEED

032384

**KNOW ALL MEN BY THESE PRESENTS**, That Sorrento Incorporated (a/k/a Sorrento, Inc.), a New Hampshire corporation, of 1200 Ocean Boulevard, Rye, County of Rockingham, State of New Hampshire,

**For Consideration Paid**, grants to The Surf Club of Rye, Inc., a New Hampshire not for profit corporation, of 1200 Ocean Boulevard, Rye, County of Rockingham, State of New Hampshire,    72ι3

**with Warranty Covenants**    1200 Ocean Blvd, Rye, NH,

A certain condominium unit, being Unit #1, at Surf Club of Rye Condominium, as shown on a Site Plan of land entitled "Condominium Site Plan, Surf Club of Rye Condominium, Rye, New Hampshire for Sorrento Incorporated" by James Verra and Associates, Inc. dated January 21, 2002 as revised through April 1, 2002, recorded in the Rockingham County Registry of Deeds as Plan # D-29746 , and as depicted on the Floor Plans entitled ' 'Condominium Floor Plan Unit 1, Surf Club of Rye Condominium, Rye, New Hampshire, for Sorrento Inc. 1200 Ocean Boulevard, Rye, New Hampshire, County of Rockingham' prepared by Ambit Engineering, Inc dated February, 2002, revised through 2/12/02 and recorded at said Registry as Plan # D-29747, together with an undivided interest in the Common Area of said Condominium and the right in common with others to use the Common Area, and the exclusive right to use the Limited Common Area assigned to said Unit, as established by Condominium Declaration Surf Club of Rye Condominium dated April 15, 2002 and recorded in the Rockingham County Registry of Deeds on April 16, 2002, at Book 3755, Page 2455.

Said Unit is hereby conveyed subject to restrictions, conditions, and other provisions of the Condominium Declaration and By-Laws for Surf Club of Rye Condominium as recorded in the Rockingham County Registry of Deeds as well as the provisions of New Hampshire RSA 356-B relating to unit ownership of real property as the Statute is written as of the date hereof and as it may be further amended.

Being a portion of the same premises conveyed to Sorrento Incorporated, by Warranty Deed of Wallis Sands Restaurant, Inc., dated July 14, 1967, and recorded in the Rockingham County Registry of Deeds at Book 1867, Page 509.

3258
59
60

By Mistake the Dec. 2002 +
Spring 2003 Bills All got
Changed to Surf Club. only
#1 Should have

ROCKINGHAM COUNTY
REGISTRY OF DEEDS

2002 APR 16  AH 9:52

03/26/2007  12:05   6039641516          TOWN OF RYE NH                    PAGE  03/07
Book 3755  Page 2466  Suffix   Docket 32384   Town RY  This image for   at scan04  at Rockingham County on 02/04/18

BK3755PG2466

Signed this 15th day of April 2002

                                    Sorrento Incorporated

                                    *D. Sealmaxxxxx*
                                    By:
                                    Its: President

STATE OF NEW HAMPSHIRE
ROCKINGHAM, SS.

        The foregoing instrument was acknowledged before me this
day of _____, 2002, by _____ President of
Sorrento Incorporated, and as such President, being duly authorized
executed this deed for the purposes herein contained on behalf of
the corporation.

                                    _____
                                    Notary Public/Justice
                                    My commission expires:

        Acknowledgment of Declarant

By execution hereof the undersigned, The Surf Club of Rye, Inc.,
Declarant in the above referenced Condominium Declaration Surf
Club of Rye Condominium does hereby acknowledge that subject to
and with the benefit of the terms and conditions contained in
said Declaration, Sorrento Incorporated is the owner of Unit 2
and Unit 3 of the above referenced Condominium and that Sorrento,
Inc. does hereby continue to hold title to said units and the
undivided interests appurtenant thereto, subject to all the
terms, conditions and restrictions contained therein.

                                    The Surf Club of Rye, Inc..

                                    _____
                                    By: Richard W. Green
                                    Its: Vice President, Duly Authorized

STATE OF NEW HAMPSHIRE
ROCKINGHAM, SS.

        The foregoing instrument was acknowledged before me this
15th day of April, 2002, by Richard W. Green, Vice
President of The Surf Club of Rye, Inc., and as such Vice
President, being duly authorized executed this deed for the
purposes herein contained on behalf of the corporation.

                                    _____
                                    Notary Public/Justice of Peace
                                    My commission expires:

\\Server\dpoulos\Surf Club\Deed.wpd

                        2

**EXHIBIT C**

# 1200 OCEAN BOULEVARD



| | |
|---|---|
| **MBLU :** | 173/ 035/ 001/ / / |
| **Location:** | 1200 OCEAN BOULEVARD |
| **Owner Name:** | SURF CLUB OF RYE INC |
| **Account Number:** | 003258 |

 ## Parcel Value

| Item | Assessed Value |
|---|---|
| Buildings | 4,078,200 |
| Extra Building Features | 27,000 |
| Outbuildings | 249,400 |
| Land | 0 |
| **Total:** | **4,354,600** |

 ## Owner of Record

SURF CLUB OF RYE INC
PO BOX 1148
HAMPTON, NH 03843

 ## Ownership History

| Owner Name | Book/Page | Sale Date | Sale Price |
|---|---|---|---|
| SURF CLUB OF RYE INC | 3755/2465 | 4/15/2002 | 3,00( |
| SORRENTO INCORPORATED | 1867/0509 | 7/14/1967 | 7( |

 ## Land Use (click here for a list of codes and descriptions)

| Land Use Code | Land Use Description |
|---|---|
| 0326 | REST/CLUBS |

 ## Land Line Valuation

| Size | Zone | Assessed Value |
|---|---|---|
| 2.26 AC | GRES | 0 |

## Construction Detail

| Item | Value |
|---|---|
| Style | Condo Retail |
| Model | Ind/Comm |

| | |
|---|---|
| Occupancy | 1 |
| Grade | Average +25 |
| Stories | 1 Story |
| Exterior Wall 1 | Wood Shingle |
| Roof Structure | Gable/Hip |
| Roof Cover | Asph/F Gls/Cmp |
| Interior Wall 1 | Drywall/Sheet |
| Interior Floor 1 | Hardwood |
| Heat Fuel | Oil |
| Heat Type | Forced Air-Duc |
| AC Type | Central |
| Bedrooms | Zero Bedrooms |
| Bathrooms | Zero Bathrms |



## Building Valuation

| Item | Value |
|---|---|
| Living Area | 7,983 square feet |
| Replacement Cost | 4,078,185 |
| Year Built | 2002 |
| Depreciation | 0% |
| Building Value | 4,078,200 |



## Outbuildings (click here for a list of codes and descriptions)

| Code | Description | Units |
|---|---|---|
| PAV1 | PAVING-ASPHALT | 40000 |
| FN2 | FENCE-5' CHAIN | 1000 |
| BTH1 | BATH HOUSE/CAB | 1720 |
| SPL3 | GUNITE | 3000 |
| CNP2 | GOOD QUALITY | 256 |
| WDK | WOOD DECK | 3500 |
| PAT2 | PATIO-GOOD | 3200 |



## Extra Features (click here for a list of codes and descriptions)

| Code | Description | Units |
|---|---|---|
| SPR1 | SPRINKLERS-WET | 12000 |
| CLR1 | COOLER | 256 |



## Building Sketch (click here for a list of codes and descriptions)

APR-02-2007 MON 02:54 PM PHILLPS & ANGLEY        FAX NO. 16172278992        P. 14

Case 1:05-cv-11745-RWZ    Document 52-4    Filed 04/02/2007    Page 13 of 13    Page 3 of 3

PARCEL SUMMARY ( MBLU : 173/ 035/ 001/ / /; Location:1200 OCEAN BOULEVA...



## Subarea Summary (click here for a list of codes and descriptions)

| Code | Description | Gross Area | Living Area |
|------|-------------|-----------|-------------|
| BAS | First Floor | 7883 | 7883 |
| CRL | Crawl Space | 956 | 0 |
| FBM | Basement, Finished | 6927 | 0 |
| FHS | Half Story, Finished | 200 | 100 |
| FOP | Porch, Open | 150 | 0 |
| UAT | Attic, Unfinished | 3790 | 0 |
| WDK | Deck, Wood | 1512 | 0 |
| | | ——— | ——— |
| | Total | 21418 | 7983 |

Powered by **Vision Appraisal Technology**