UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.: 05-11745RWZ

| | |
|---|---|
| BARBARA DEIGHTON HAUPT, Trustee of BD REALTY TRUST, <br>     Plaintiff <br><br> v. <br><br> THE TOWN OF WAREHAM acting by and through the BOARD OF SELECTMEN OF THE TOWN OF WAREHAM, and the BOARD OF SELECTMEN OF THE TOWN OF WAREHAM, <br>     Defendants | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE PLAINTIFF'S EXPERTS' TESTIMONY

Now comes the Plaintiff, Barbara Deighton Haupt, Trustee of BD Realty Trust ("the Trust"), and opposes Defendants' Motion to Exclude Plaintiff's Experts' Testimony. For reasons, the Trust states as follows.

1. Pursuant to Fed. R. Civ. P. 26(e), a party is under a duty to supplement or correct a disclosure made under Fed. R. Civ. P. 26(a) as follows:

> A party who has made a disclosure under subdivision (a) or responded to a request for discovery with a disclosure or response <u>is under a duty to supplement or correct the disclosure or response</u> to include information thereafter acquired . . . in the following circumstances:
> (1) A party is under a duty to supplement at appropriate intervals its disclosures under subdivision (a) <u>if information disclosed is incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing</u>. With respect to testimony of an expert from whom a report is required under subdivision (a)(2)(B) the duty extends both to information contained in the report and to information provided through a deposition of the expert, and any additions or other changes to this information shall be disclosed by the time the party's disclosures under Rule 26(a)(3) are due.

1

> (2) A party is under a duty seasonably to amend a prior response to an interrogatory, request for production, or request for admission if the party learns that the response is in some material respect incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.

Fed. R. Civ. P. 26(e) (emphasis added).

    2. In the instant case, Plaintiff, the Trust has recently filed the following supplemental or corrective information as follows:

- Corrected Expert Report of Lenore White;
- Second Supplement to Expert Report of Bradley C. McKenzie, P.E. Civil Engineer; and
- Second Supplemental Expert Report of Steven G. Elliott, SRA, MRA Real Estate Appraiser.

The bases for the recently filed opinions is set forth below.

    3. The Trust's wetlands expert, Lenore White ("White"), while preparing for the trial scheduled for April 9, 2007, discovered that she had made an error in her Original Expert Report which was previously filed with the Town. In her Original Expert Report, White had estimated that only 1,500 square feet (i.e. the access road) of bordering vegetated wetland (BVW) would be altered by any of the Trust's proposed development plans. However, on March 22, 2007, while preparing for trial, White determined that there was actually a greater area of BVW that would be altered by the various proposed plans. Specifically, the error was related to a very narrow issue, namely that there was an additional area of impacted BVW located in the layout of the parking areas depicted on the original concept plans prepared by McKenzie Engineering. White determined that depending on which of the Trust's three concept plans was considered, between 4,875 and 4,925 square feet of BVW would instead be altered.

4. Under the Massachusetts wetlands regulations, there are performance standards associated with any alteration of BVW as follows: 310 CMR 10.53(3) allows the alteration of more than 5,000 square feet of BVW for limited access projects (i.e. to gain access to a site) and 310 CMR 10.55(4) allows the Department of Environmental Protection to permit the alteration of up to 5,000 square feet of BVW so long as the area filled is replicated at a ratio of 1:1. Because White now determined that more than 1,500 square feet of BVW was going to be altered, she felt it was necessary to <u>correct</u> a small portion of her prior deposition testimony and expert disclosure in advance of trial. This small change is noted in the Corrected Expert Report of Lenore White which was attached to the Town's present motion.

5. White did not, however, change her opinion in any <u>material</u> respect. That is, even White's <u>corrected</u> opinion states that the Trust's various development proposals—as originally proposed and shown on the concept plans—nonetheless comply with state wetlands regulations. In other words, White's testimony has always been, and continues to be, that the various proposed development schemes (beach club with or without structure and/or 40B residential development) are permissible as a matter of law under the applicable wetlands regulations. White's testimony does <u>not</u> state in any fashion that the number of parking spaces must be reduced or that the proposed structures must be moved in order to comply with wetlands regulations. As a result, the Trust's proposed highest and best use of the Premises has not been changed.

6. White corrected her testimony as soon as she realized it was incorrect. The Town has not been prejudiced by this late but necessary correction. There was only a minor issue which was corrected. In fact, Town counsel disclosed to the Trust's counsel that it was already aware of the minor BVW flaw in White's Original Expert Report—certainly the only reason why

3

the Town was already aware of this error was because its own expert had discovered it himself. One can imagine that the Town intended to use this knowledge to cross-examine White at trial. Certainly, by having White acknowledge what the Town already apparently knew cannot put the Town in any different position than it already was, as it still has an opportunity to question White's credibility about her purportedly "unreliable" testimony, for what ultimately will be a matter for the jury's consideration.

7. Furthermore, White's realization that there was an error as to the one limited area of BVW on the Premises does not undermine or call into question any other portion of her prior expert testimony. Indeed, the Town had an opportunity to and did depose White about all other aspects of her Original Expert Report which have not been corrected in any way. Certainly there is no prejudice to the Town with respect to the unchanged portions of White's testimony. Thus, the jury should be permitted to hear White's entire opinion about the status of wetlands resource areas on the Premises as the Trust was merely attempting to comply in good faith with the disclosure requirements set forth in Fed. R. Civ. P. 26.

8. As a result of White's corrected testimony, it was equally necessary to correct the previous development/concept plans prepared by McKenzie Engineering in order to reflect the additional areas of BVW which would be altered by the various development proposals and to depict and confirm the ability to replicate on the Premises any altered BVW. These plans were provided to the Town contemporaneously with White's Corrected Report.

9. The three revised concept plans merely provide a visual depiction of White's corrected testimony, and add additional color-blocking to aid in the review of the plans. There have been no changes whatsoever to the layout or design of the improvements comprising the proposed highest and best uses. There were no changes to any other wetland resource area

delineations. The changes in the revised concept plans merely depict the areas of BVW which would be impacted (as set forth in White's Corrected Report) and the areas of replication that would be feasible on the site. The Town cannot be said to be prejudiced by a mere graphic representation of White's testimony, which the Town has already conceded it knew about.

10. Moreover, the Trust does not intend to use the concept plans as anything more than chalks at trial. The Town cannot be said to be prejudiced in any way from the Trust's intent to use the plans at trial to merely describe and portray the feasibility of the Trust's proposed highest and best use. The plans are intended to merely aid the jury in its understanding of White's testimony and the feasibility of the proposed highest and best use. Thus, the revised plans and all of Brad McKenzie's previously stated testimony should be permitted to go to the jury.

11. Additionally, the recent submission of the Second Supplemental Report of Steve Elliott ("Elliott") should not bar his testimony at trial in any fashion. Elliott's Second Supplemental Report was merely submitted to show the feasibility of a nonprofit beach club use, which this Court specifically called into question at the motions in limine hearing on March 8, 2007. The basis for Elliott's supplemental testimony was information contained in a newspaper article about the Surf Club of Rye Beach in New Hampshire, of which the Town has been aware since the motions in limine hearing, as well as Elliott's recent personal conversation with the nonprofit developer of the Surf Club which provided additional information beyond what was contained in the article.

12. Notwithstanding the late discovery and review by Elliott of the information related to the Surf Club, there has been no change or correction in Elliott's prior testimony about the fair market value of the highest and best use of the Premises. In other words, Elliott

continues to maintain that the highest and best use of the Premise is as a nonprofit recreational beach club with 250 memberships, with attendant parking and clubhouse facility. Elliott also continues to hold the position that the value of this use is $3,125,000. The Second Supplemental Report merely states that the development of the Rye Surf Club, as well as the number and current cost of its memberships, "further supports and validates [his] opinion as to the highest and best use of the Premises as of the date of taking as set forth in [his] Original Opinion and First Supplemental Opinion." <u>See</u> Second Supp. Report at p. 2. Elliott does not state that the Surf Club is *actually* being used as a comparable sale to support his prior opinion, only that it happens to be a highly comparable property with respect to the Trust's proposed beach club use.

13. Thus, it is impossible to fathom just how the Town could be prejudiced by this supplemental opinion, particularly where the Town's real estate appraiser has <u>never</u> opined or submitted a rebuttal opinion about the value of a nonprofit beach club on the Premises. Indeed, it appears that the Town's position has always been that a nonprofit beach club is either not a permissible use under zoning and/or would be barred or at least not feasible due to lack of parking by the presence wetlands on the Premises. The Town has never indicated that it disputes any of the Trust's <u>values</u> of the beach club. Rather, it simply maintains that it cannot be done for these other reasons. Why the Town thinks that it will now be prejudiced by information that is merely supportive of a use that they have never even agreed can be done in the first place is dubious at best. The Trust should be permitted to at least reference the Rye Surf Club to the extent that this Court has called into question the feasibility of such a use.

14. In addition to the foregoing, the Trust, understanding that the Town is not receptive to the Trust's recent submissions, has offered to have Town counsel contact and communicate with White, Elliott and McKenzie this week to ask any questions it feels that are

6

necessary to further understand the recent filings. By giving the Town an opportunity to communicate with the Trust's experts one last time in advance of trial certainly does not prejudice the Town if these experts are permitted to testify on behalf of the Trust.

15. Despite the Town's arguments to the contrary, the recent filings of White, Elliott and McKenzie <u>do not</u> imply that their prior reports or testimony are unreliable.[1] Again, Lenore's corrected testimony merely corrects a minor portion of her comprehensive wetlands opinion. McKenzie's supplement merely amends the previously submitted plans to incorporate the minor change in BVW testimony that White has now submitted. Elliott's supplement merely provides further support for his prior and <u>continued</u> position as to the fair market value of the highest and best use of the Premises. If nothing else, these recent submissions provide further support for the reliability of these experts' testimony because they either make one small correction within a vast opinion, or otherwise show that there is additional support for an opinion that was already supported by other reasonable, rational and reliable data. Not only is the Town not prejudiced by these reports, but the Town still has an opportunity to—and the Trust expects that it will—to draw attention at trial to the recent filings. It is up to the jury, and not this Court, to determine whether this undermines the credibility of the witnesses.

16. Finally, the Trust has the burden of proving the fair market value of the highest and best use of the Premises on the date of taking. If the Trust is precluded from having its experts testify <u>fully</u> in accordance with all disclosed opinions, the Trust will be unreasonably prejudiced from being able to sustain its burden at trial. Given that there is no prejudice to the Town by allowing the experts to testify even as to the most recently supplemented or corrected

---

[1] Moreover, the Town's present motion appears to be nothing more than a pre-trial tactic aimed at preventing the Trust from presenting its case to the jury. If the Town were truly negatively affected by the supplemental and corrected testimony, it would be seeking to exclude only these limited issues, not the entire testimony of the experts, which, as stated above, has not been changed or added to in any material or substantive manner. The Trust should not be prejudiced from presenting the expert testimony as a result of the Town's tactics.

testimony, the Trust should not be unreasonably prevented from presenting its case at trial. Indeed, it is the only way to ensure that the Trust receives the full and fair market value for the taking of her land by the Town. To allow the Town's present motion would be to deny the Trust her constitutional rights to fair and adequate compensation for the taking of her property.

## CONCLUSION

Based on the foregoing, this Court should deny Defendants' Motion to Exclude Plaintiff's Experts' Testimony, and allow all of the Trust's experts to testify at trial fully in accordance with their opinions as set forth in their expert reports and supplements and/or corrections thereto.

|  |  |
|---|---|
| Date: April 3, 2007 | Plaintiff,<br>BARBARA DEIGHTON HAUPT, Trustee of BD REALTY TRUST,<br>By her attorneys,<br><br>/s/ Kristen M. Ploetz<br>Jeffrey T. Angley, Esq.<br>B.B.O. #543958<br>Kristen M. Ploetz, Esq.<br>B.B.O. #654549<br>Phillips & Angley<br>One Bowdoin Square<br>Boston, MA 02114<br>(617) 367-8787 |

### CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on this 3rd day of April, 2007.

/S/ Kristen M. Ploetz
Kristen M. Ploetz, Esq.

L:\Ditn002\opp.mot.exclude.plaintiffs.expert.testimony.JTA.doc