UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.: 05-11745RWZ

| | |
|---|---|
| BARBARA DEIGHTON HAUPT, Trustee | ) |
| of BD REALTY TRUST, | ) |
|       Plaintiff | ) |
| | ) |
| v. | ) |
| | ) |
| THE TOWN OF WAREHAM acting by | ) |
| and through the BOARD OF | ) |
| SELECTMEN OF THE TOWN OF | ) |
| WAREHAM, and the BOARD OF | ) |
| SELECTMEN OF THE TOWN OF | ) |
| WAREHAM, | ) |
|       Defendants | ) |

**PLAINTIFF'S PROPOSED JURY INSTRUCTIONS**

Plaintiff, Barbara Deighton Haupt, Trustee of BD Realty Trust, hereby submits her

proposed jury instructions for trial as follows.

1. This is a civil action brought by the Plaintiff, Barbara Deighton Haupt, Trustee of BD Realty Trust, against the Defendant, Town of Wareham acting by and through the Board of Selectmen of the Town of Wareham, and the Board of Selectmen of the Town of Wareham.

   The action arises out of the exercise of the power of eminent domain, which is the right of the Defendant to take private property for public use. The Plaintiff's right to use and enjoy her property is subject to the Defendant's right of eminent domain. This right of eminent domain, provided for in Article 10 of the Massachusetts Declaration of Rights, grants the Defendant the power to take private property for public use, provided that the Plaintiff receives reasonable compensation for the property taken.

   You are not to question the Defendant's right to take the Plaintiff's property, which I instruct you is a right provided for in the Constitution of this Commonwealth.

2. Here, the Defendant took the Plaintiff's property by right of eminent domain on December 31, 2003. Pursuant to M.G.L. c. 79, the Plaintiff seeks an assessment of damages incident to the Defendant's taking of her property. M.G.L. c. 79, § 14, provides in pertinent part that "[a] person entitled to an award of . . . damages under this chapter . . . may petition for the assessment of such damages . . . ."

3. In this case, the Defendant, in the exercise of the power of eminent domain took from the Plaintiff the property described in the order of the taking. The property was for a public purpose, that is, for general municipal purposes. The premises taken are described in the Order of Taking.

The Constitution of the Commonwealth of Massachusetts provides that "whenever the public exigencies require that the property of any individual should be appropriated to public uses, he shall receive a reasonable compensation therefor."

Massachusetts courts have interpreted this as requiring that the owner be paid the fair market value of the property as of the date of the taking.

The Plaintiff is entitled to damages for the fair market value of the property taken at the date of the taking.

**You, the jury, will determine the fair market value of that property as of the date of the taking, December 31, 2003.**

4. "Fair market value" is defined as the highest price that a hypothetical willing buyer will pay and a hypothetical willing seller will accept in a free and open market, neither party having any compulsion to act and both acting prudently with full knowledge of all the uses to which the property may reasonably be put.

The fair market value is determined with reference to the highest and best use of the property; that is, the reasonable and probable use that supports the highest present value as of the date of the taking. Highest and best use is determined by an analysis of the history of the property, the current use, the potential uses, the applicable zoning and the market requirements and demands.

If the property was offered for sale for a reasonable period of time in the open market in competition with other properties similar in size, use and location, what would the hypothetical seller agree to accept to consummate the sale. A reasonable time within which to find a buyer depends upon existing conditions and circumstances including the nature and character of the property and the use for which the property is acceptable. The property should be valued as if a shrewd developer, knowing the market and in no hurry to sell, was developing the property. That figure negotiated by these knowledgeable parties is the fair market value of the property.

5. In determining the fair market value of the property taken, you may consider all the uses to which the property could reasonably be put, including the values of potential uses of the land taken. You may consider the following factors:

- the view of the particular premises and of the surrounding area;
- a description of the physical characteristics of the property and its situation in relation to points of importance or significance in the area;

- the price at which similar comparable land has sold at or about the time of the taking;
- a consideration of all of the uses for which the land was adapted or adaptable and for which it was available at the time of the taking;
- the highest and best use of the property; and
- the opinion of competent experts as to its value.

You must, however, exclude from the calculation possible uses that are unduly speculative or conjectural.

6.  You should consider possible uses not yet approved with discounts for the likelihood of their being realized and their futurity.

7.  The rules of evidence ordinarily do not permit a witness to testify as to [his/her] opinion or conclusions. However, there is an exception in certain types of cases.  A witness who by education, training and experience has acquired a special knowledge in [his/her] profession may state an opinion in the area of [his/her] expertise.

The testimony of a real estate appraiser as to the fair market value constitutes  [his/her] opinion based upon education, study, experience, investigation, knowledge of the property, the state of the market in the area and all other reasons given for [his/her] opinion.  There was also testimony from other experts in this case related to the highest and best use of the Premises.

You should consider each expert opinion received in evidence in this case and give it such weight as you think it deserves. You should decide whether the opinion of a witness was expressed with or without sufficient investigation or knowledge of the material facts to form an accurate opinion and whether the reasons and theories are sound or unsound. You may accept or reject an expert's opinion or give it as much weight as you think it deserves.

8.  There are three methods of calculating fair market value: comparable sales, income capitalization (income derived from the use to which the property is put), and depreciated replacement cost. Once you have determined what the highest and best use was for the property taken, you must then determine its fair market value on the date of the taking. During the trial, you heard various appraisers, using one or more of the three methods of valuation, testify as to the fair market value of the Plaintiff's property.  Specifically, the experts in this case relied on the comparable sales method to estimate fair market value.

9.  When a parcel of land is taken by eminent domain you may consider the original price the Plaintiff paid for the property, provided that
    a.  the sale was not too remote in time;
    b.  the sale was a voluntary transaction between the parties; and
    c.  there have been no substantial changes in the condition of the property since the sale.
    Such evidence, however, is not conclusive and is to be considered with all other evidence of the value of the property.

10. When a parcel of land is taken by eminent domain, you may consider evidence of the price at which similar property is sold or has been sold. During the trial, you heard testimony from experts who relied on the Comparable Sales method in calculating the fair market value of the Plaintiff's property. Under the Comparable Sales method, the value of the Plaintiff's property is determined considering the recent sale of comparable properties.

11. In considering the weight, if any, given to the testimony regarding comparable sales, you must determine whether the sale property is sufficiently similar to the Plaintiff's property so as to accurately reflect its market value. You must first consider whether the comparable property is similar to the Plaintiff's in size, location, general adaptability and nature of use or improvements.

    Proximity in place and time are important factors for you to consider. The sale of the comparable property must have occurred within a reasonable time before or after the takings so as to furnish a test of present value. You may consider sales of properties which are somewhat different in time, location, zoning, improvements and uses. However, you must first determine whether the similarities between the properties are outweighed by the dissimilarities such that the sale price is not a valid indicator of fair market value. Just as you may consider the unique or special purpose of a property in determining its fair market value, so also may you consider evidence that the land was not suitable for a special or particular purpose.

12. Pursuant to 310 CMR 10.32(2), of the regulations implementing the Massachusetts Wetlands Protection Act, salt marsh is defined as "a coastal wetland that extends landward up to the highest high tide line, that is, the highest spring tide of the year, <u>and</u> is characterized by plants that are well adapted to or prefer living in, saline soils." (emphasis added)

13. Pursuant to 310 CMR 10.05(6)(a)(3) of the regulations implementing the Massachusetts Wetlands Protection Act, which were in effect at the time of the issuance of the Order of Resource Area Delineation ("ORAD"), an "Order of Resource Area Delineation shall be effective for three years."

14. Pursuant to 310 CMR 10.05(6)(d) of the regulations implementing the Massachusetts Wetlands Protection Act, which were in effect at the time of the issuance of the ORAD, "Except as provided in M.G.L. c. 131, § 40 for maintenance dredging, an Order or Notification of Non-Significance shall be valid for three years from the date of its issuance; provided, however, that the issuing authority may issue an Order for up to five years where special circumstances warrant and where those special circumstances are set forth in the Order.

15. Pursuant to 33 CFR 330.3(a) of the regulations implementing Section 404 of the Federal Clean Water Act, "Discharges of dredged or fill material into waters of the United States outside the limits of navigable waters of the United States that occurred before the phase-

in dates which extended Section 404 jurisdiction to all waters of the United States. The phase-in dates were: After July 25, 1975, discharges into navigable waters of the United States and adjacent wetlands; after September 1, 1976, discharges into navigable waters of the United States and their primary tributaries, including adjacent wetlands, and into natural lakes, greater than 5 acres in surface area; and after July 1, 1977, discharges into all waters of the United States, including wetlands."

16. Pursuant to 33 CFR 330.3(b) of the regulations implementing Section 404 of the Federal Clean Water Act, and pursuant to the Massachusetts Programmatic General Permit, the following do not require further permitting under Section 404 of the Federal Clean Water Act: "structures or work completed before December 18, 1968, or in waterbodies over which the DE [district engineer] had not asserted jurisdiction at the time the activity occurred, provided in both instances, there is no interference with navigation."

17. Pursuant to a Notice issued by the Army Corp of Engineers on January 15, 2002 in the Federal Register, the Corps reissued all existing Nationwide Permits (NWPs), General Conditions, and definitions with some modifications, and one new General Condition, to become effective on March 18, 2002, with all NWPs having an expiration date of March 19, 2007.  The Notice further provides as follows:

> *Maintenance*. Activities related to: (i) the repair, rehabilitation, or replacement of any previously authorized, currently serviceable, structure, or fill, or of any currently serviceable structure or fill authorized by 33 CFR 330.3, provided that the structure or fill is not to be put to uses differing from those uses specified or contemplated for it in the original permit or the most recently authorized modification.  Minor deviations in the structure's configuration or filled areas including those due to changes in materials, construction techniques, or current construction codes or safety standards which are necessary to make repair, rehabilitation, or replacement are permitted, provided the adverse environmental effects resulting from such repair, rehabilitation, or replacement are minimal. Currently serviceable means useable as is or with some maintenance, but not so degraded as to essentially require reconstruction.

BARBARA DEIGHTON HAUPT,
Trustee of BD REALTY TRUST,

Date:                                        By her attorneys,

 /s/ Kristen M. Ploetz          
Jeffrey T. Angley, Esq.
B.B.O. #543958
Kristen M. Ploetz, Esq.
B.B.O. #654549
Phillips & Angley
One Bowdoin Square
Boston, MA 02114
(617) 367-8787

CERTIFICATE OF SERVICE

    I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on this 13th day of April, 2007.

                        _____/S/ Kristen M. Ploetz_____
                             Kristen M. Ploetz, Esq.