UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.: 05-11745RWZ

BARBARA DEIGHTON HAUPT, Trustee )
of BD REALTY TRUST, )
      Plaintiff )
 )
v. )
 )
THE TOWN OF WAREHAM acting by )
and through the BOARD OF )
SELECTMEN OF THE TOWN OF )
WAREHAM, and the BOARD OF )
SELECTMEN OF THE TOWN OF )
WAREHAM, )
      Defendants )

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR NEW TRIAL/REMITTITUR AND/OR MOTION TO AMEND JUDGMENT**

Now comes the Plaintiff, Barbara Deighton Haupt, Trustee of BD Realty Trust ("the Trust"), and opposes Defendants' Motion for New Trial/Remittitur and/or Motion to Amend Judgment. For reasons, the Trust states as follows.

**ARGUMENT**

    I.    Legal Standards of Review

    A.    Motion for New Trial Under Fed. R. Civ. P. 59(a)

The party moving for remittitur "'bears a heavy burden of showing that an award is grossly excessive, inordinate, shocking to the conscience of the court, or so high that it would be a denial of justice to permit it to stand.'" Porter v. Cabral, No. C.A. 04-11935, 2007 WL 602605 *1, *8 (D. Mass. Feb. 21, 2007) (citation omitted).[1] Similarly, the remedy of a new trial is

---
[1] Even if this Court grants the Defendants' motion for remittitur, "[t]he First Circuit applies the 'least intrusive standard' in calculating a remittitur [citation omitted] Under that standard, the jury award should be reduced to the

1

"sparingly used" and the standards that the moving party must overcome are "demanding". Porter v. Cabral, 2007 WL 602605 at *1.

A motion for a new trial "should only be granted 'if the outcome is against the clear weight of the evidence such that upholding the verdict will result in a miscarriage of justice.'" Id. See also Bell v. Potter, 234 F.Supp.2d 91, 100 (D. Mass. 2002) ("A new trial may be granted if the clear weight of the evidence does not support the verdict.") (citation omitted). "An *excessive* award of damages is also grounds for a new trial." Bell, 234 F. Supp.2d at 100 (emphasis added) (citation omitted). However, a jury's verdict must be accorded deference, and "it should not be overturned except 'under most compelling of circumstances' where it is seriously erroneous." Id. (citations omitted). Indeed,

> [a] motion for a new jury trial enlists the sound discretion of the district court. '[A] trial judge cannot displace a jury's verdict merely because [s]he disagrees with it or would have found otherwise in a bench trial,' or because 'a contrary verdict may have been equally-or even more easily-supportable' on the evidence. 'Rather, it must appear that the verdict is 'against the clear weight of the evidence.'' Otherwise put, it must appear that there has been a 'manifest miscarriage of justice.'

Luson Int'l Distribs., Inc. v. Fabricating and Prod. Mach., Inc., 966 F.2d 9, 12 (1st Cir. 1992) (internal citations omitted). When reviewing a jury's award of damages, the district court must "review the evidence in the light most favorable to the prevailing party and to grant remittitur or a new trial on damages only when the award 'exceeds any rational appraisal or estimate of the damages that could be based upon the evidence before it.'" Porter v. Cabral, 2007 WL 602605 at *8 (citation omitted). Further, "[a] district court's discretion is limited by the parties' rights to have a jury make the ultimate fact determinations in the case." Porter, 2007 WL 602605 at *1. See also Castillo v. Autokirey, Inc., 379 F.3d 4, 13 (1st Cir. 2004) (On appeal, the First Circuit Court of Appeals will find that the "district court abused its discretion only if the jury verdict

---

highest amount at which it is not excessive." Huber v. JLG Indus., Inc., 344 F.Supp.2d 769, 777 (D. Mass. 2003). Notably, the standard is not the highest amount of damages to which any particular expert may have testified.

exceeds 'any rational appraisal or estimate of the damages that could be based on the evidence before the jury.'") (citation omitted).

As set forth below, Defendants cannot sustain their burden to obtain a remittitur or new trial.

B.  Motion to Amend Judgment Under Fed. R. Civ. P. 59(e)

A motion to amend judgment is also to be addressed within the discretion of the district court. See Kalman v. Berlyn Corp., 706 F.Supp. 970, 974 (D. Mass. 1989) (citations omitted).[2] "The most common grounds for allowing a Rule 59(e) motion are 'for manifest error of law or of fact, or for newly discovered evidence.'" Id. (citation omitted). However, "[i]n order to prevail on a Rule 59(e) motion based on manifest error of law or fact, the moving party must make a showing of some substantial reason that the court is in error." Id.

Again, as stated herein, Defendants fail to meet their burden of showing that they are entitled to an amended judgment.

II.  There Is No Basis For Reducing The Amount Of Damages Awarded To Plaintiff.

A.  The Evidence Supports The Jury's Verdict That The Fair Market Value Of The Premises Is $1,550,000.

Defendants assert that the jury's verdict of $1,550,000 as the fair market value of the highest and best use of the Premises cannot stand because the highest value assigned to the Premises by any expert at trial was $1,200,000. Defendants misunderstand and misstate the law that is applicable to damages that can be awarded in eminent domain proceedings.

A trier of fact "is 'authorized to determine damages in an amount to which no expert testified by rejecting the precise amounts to which each expert testified.'" Portland Natural Gas

---

[2] The U.S. Supreme Court has noted that the "draftsmen of Rule 59(e) 'had a clear and narrow aim[,] . . . to 'mak[e] clear that the district court possesses the power' to rectify its own mistakes in the period immediately following the entry of judgment.'" Kalman v. Berlyn Corp., 706 F.Supp. 970, 974 (D. Mass. 1989) (citations omitted).

3

Transmission Sys. v. 19.2 Acres of Land, 318 F.3d 279, 284 (1st Cir. 2003) (condemnation action quoting Nichols on Eminent Domain, § 17.1 and citing Loschi v. Mass. Port Auth., 361 Mass. 714 (1972)).  In Loschi, the taking authority moved for a new trial on the basis that the damages awarded to the petitioner were in "substantially greater in amount than the highest opinion of money value placed in evidence." 361 Mass. at 715.  The trial court denied the motion, which was later upheld by the Massachusetts Supreme Judicial Court, and thus the damages returned by the jury were allowed to stand.  See id. at 716.  In their decision, the SJC stated that

> A recognized authority has stated that the award may not be in excess of the amount claimed by the owner nor should it be less than the lowest estimate of value testified to by a witness, but the further statement is added that a difference of opinion between the jury and the witnesses does not necessarily dictate setting aside the award especially where there is 'other evidence' upon which the award has been based. Nichols, Eminent Domain (Rev.3d) § 17.3.  The jury may use their general knowledge and experience in evaluating property and are not required to follow blindly the opinions of experts.

Id. (emphasis added).  See also Young Men's Christian Assoc. of Quincy v. Sandwich Water Dist., 16 Mass. App. Ct. 666, 672 n.7 (1983) ("The fact that a jury may come back with a figure higher than the opinion of any witness does not necessarily imply that its verdict is excessive.").  The Loschi court determined that there was "meaningful and significant evidence other than the opinions of value expressed by the two witnesses" which supported the jury's valuation, including color photographs and detailed information given by the witnesses as to the nature of the property.  See 361 Mass. at 716.[3]  See also Portland Natural Gas, 318 F.3d at 284 (holding that the judge in the bench trial "was entitled to reject the experts' valuation and to use her independent judgment to determine value.").

---

[3] Unlike the parties' experts in the instant matter, the experts in the Loschi case used the income capitalization method approach to value which takes into account the rental value of property.  The Loschi court found that in addition to the color photographs and testimony about the nature of the property, the jury could have also concluded that the rents charged by the petitioner for the land taken were too low and therefore the experts had reached a disproportionately low opinion of the property's value which warranted the jury's finding that the fair market value was in excess of the expert's own testimony. See 361 Mass. at 716.  As discussed at p. 5-6 infra, the jury in this case could have made a similar determination regarding the basis of Plaintiff's real estate expert's opinion.

4

In the instant matter, there was not only testimony given by two real estate experts (one for Plaintiff, and one for Defendants), but also additional evidence that likely played into the jury's evaluation of the fair market value of the highest and best use of the Premises. This additional evidence included numerous aerial photographs depicting the nature of the beachfront property that was taken by the Town, a video of the site taken by the Plaintiff only a few months before the taking showing the significant and exceptional beachfront features of and views from the property. Moreover, the Plaintiff herself described the nature of the property as did several of her experts. Thus, as in Loschi, there was meaningful and significant evidence other than the opinions expressed by Plaintiff's and Defendants' real estate experts which could have informed, and indeed did inform, the jury's decision.

Furthermore, the valuation approach of the defendant's own real estate appraisal expert, Richard Dennis, Sr. offered the jury a rational and viable method for the ultimate award granted by the jury. At trial the real estate appraisers for both parties noted the difficulty in locating comparable sales data due to the unique nature of the property. Mr. Dennis' solution to this problem was to divide the property into two parcels: a one acre buildable lot and an adjoining 4.35 acre parcel of conservation land. He then separately valued the one acre buildable lot at $600,000 and the conservation land at $30,000 per acre. Mr. Dennis' assigned values were challenged at trial. Mr. Elliot, the plaintiff's appraiser, noted that the site was zoned for and permitted for a duplex use, which would bring a value of $1,200,000. Moreover, Mr. Dennis offered the jury a wide range of valuations for conservation land for four properties at $5,923 per acre, $19,000 per acre, $45,000 per acre and $66,434 per acre respectively. In addition, there was evidence that the $45,000 value per acre might be as high as $100,000 per acre because of a

5

discrepancy in the size of the parcel as stated in the deed.[4]  Finally, there was evidence before the jury that the Town of Wareham had made a taking of an 8,500 square foot parcel of land of beachfront land directly abutting the Plaintiffs property simultaneously with the taking of Plaintiffs property for $30,000.  The resulting valuation was approximately $150,000 per acre.

The jury's determination of the highest and best use of the property as "Residential Duplex with Beach Front" is consistent with the dual valuation approach of Mr. Dennis.  The jury was certainly free to attribute its own value to this use and there was a wide range of values to choose from. By way of example, the jury could have found that the duplex portion was worth $1,200,000 based on Mr. Elliott's testimony, and that the remaining 4.35 acres of beach front had a value of approximately $80,460 per acre based on the other testimony and evidence that it received via both parties' witnesses.  In other words, it is plausible that the jury may have decided to give one value to the residential duplex portion of the property, as did Defendants' expert, and a separate value to the remaining excess land or "beach front", also like Defendants' expert, yet stop short of following "blindly" his appraisal of the monetary value for each portion.  In so doing, the jury would have used their "general knowledge and experience in evaluating property", which is permissible under Loschi, even if it means that they arrive at a higher value than any opinion expressed at trial.

Upon reviewing the evidence *in a light most favorable to Plaintiff*, there is no basis for reducing or negating the jury's award of damages merely because it is greater than Mr. Elliott's expressed opinion of value for a duplex.  Given that the property consists of 5.35 acres of beach front property, the dual valuation approach of the Defendants' expert, the wide range of values offered by him, the alternative duplex value offered by Mr. Elliot and the jury's ability to

---

[4] The property in question was located on George Washington Blvd in Hull Massachusetts.  The deed indicated that the property contained 4.5 acres.  The stated sale price on the deed was $450,000.  This would have resulted in a price of $100,000 per acre for this conservation land.

examine photographic and video evidence and make their own independent judgment of value, the weight of the evidence was in favor of the jury's verdict. There is nothing about a $1,550,000 verdict that shocks the conscience or is grossly excessive. Thus, the verdict must be upheld.

> B. There Is No Evidence In The Record To Suggest That The Jury Was Mislead Or Confused In Reaching Their Verdict.

Unfortunately, "'there is no legally cognizable mechanism for inquiring into the heads of jurors to determine their basis in awarding damages.'" Midwest Precision Servs., Inc. v. PTM Indus. Corp., 887 F.2d 1128, 1140 (1st Cir. 1989) (quoting the district court). Defendants assert that the jury was either mislead or confused in reaching their verdict. Unlike Defendants, the Plaintiff is not willing to underestimate the careful considerations of the jury in reaching its verdict. There is nothing unclear about the jury's verdict form. The jury determined that the highest and best use of the Premises was a residential duplex with beach front. This conclusion is fully consistent with the evidence, and was made despite several days' worth of testimony by Plaintiff that the highest and best use of the Premises was as a beach club use with parking area. While the Plaintiff was disappointed that her proposed highest and best use was not accepted by the jury, she must respect it.

The jury made its determination that the highest and best use was solely as a residential duplex with beach front. If the jury had meant to also include "parking" or a "beach club" as part of the highest and best use, it is certain that they would have so stated on their verdict form. The competing highest and best uses advocated by the parties were certainly well-framed, particularly where the jury had made specific inquiry to the court as to whether a combination of duplex and beach club uses could be considered. At trial the parties had agreed that a duplex use was an allowed use at the site. It was also agreed that the site had over 600 linear feet of beach

7

front land. It is simply fanciful to assert that the jury was confused or mislead because the jury chose a use that was agreed by both parties as a permissible use.

As to assigning a value to the highest and best use, the jury was of equally sound mind. As stated above, the manner by which the jury arrived at a value of $1,550,000 will never be known for certain, but because they have the authority to weigh all of the evidence before them to reach a value, including the testimony of the two real estate experts, and are permitted to use their general knowledge and experience in evaluating the property, they are entitled to reach a value that may exceed the testimony of any given appraiser. See Loschi, 361 Mass. at 716.

Based on the foregoing, there is nothing in the record to indicate that the jury was confused or mislead in finding that the value of the residential duplex with beach front was $1,550,000.

C. The Statements Made During Plaintiff's Closing Argument Are Irrelevant Based On The Jury's Finding That The Highest And Best Use Of The Premises Was A "Residential Duplex With Beach Front".

Defendants assert that certain misstatements of law were made during Plaintiff's closing argument. Plaintiff denies any such misstatement. In addition, Defendant is barred from complaining of any alleged misstatement because the defendants failed to object during Plaintiff's closing argument. The standard for reviewing the statements is plain error. See Porter v. Cabral, 2007 WL 602605 at *6.

> Under this standard, a forfeited objection may be reviewed only if '(1) an error was committed; (2) the error was 'plain' (i.e. obvious and clear under current law); (3) the error was prejudicial (i.e. affected substantial rights); and (4) review is needed to prevent a miscarriage of justice.' [citation omitted] 'Plain error is a 'rare species in civil litigation,' encompassing only those errors that reach the 'pinnacle of fault' envisioned by the standard set forth above.' Id.

The misstatements that the Plaintiff purportedly made about the grandfathering regulations of the Army Corps of Engineers (ACOE) during its closing argument, and the fact

8

that the Court did not note the error to the jury, are not prejudicial error. Moreover, any misstatement is irrelevant given the fact that the jury's verdict as to the highest and best use of the property did not include parking. The only instance where the ACOE regulation would have become relevant is if the jury had found that the highest and best use of the property included the parking of cars in the area shown on the various plans submitted by Plaintiff at trial. It was Plaintiff's argument that the use of those portions of the parking lot area below highest high tide would have been grandfathered under the ACOE regulation. However, because the jury did not accept any parking lot use into their determination of the highest and best use of the property, any alleged misstatement about the ACOE regulation by Plaintiff is both moot and irrelevant.

Furthermore, notwithstanding any misstatement during the closing argument, both the Plaintiff's and the Defendants' wetlands experts were examined about the ACOE regulation during trial. To that end, the jury had already heard ample testimony about the applicability of the grandfathering regulation prior to any misstatement that may have been made, and were therefore able to assign any weight to the viability of the parking lot use as they deemed appropriate given the status of the law.

Thus, Defendants' argument that the misstatement of the ACOE regulation somehow entitles them to remittitur, a new trial or an amendment of the judgment is without merit as a matter of fact and law.

> D. The Court's Response To The Jury's Question During Deliberations Are Irrelevant Based On The Jury's Finding That The Highest And Best Use Of The Premises Was A "Residential Duplex With Beach Front".

Similarly, the Defendants' assertion that the Court's affirmative answer to the one jury question presented to the Court during its deliberation—whether the jury could consider a residential use combined with a beach club parking use—constitutes a basis to reduce the award

9

of damages or order a new trial is completely unwarranted based on the verdict actually reached by the jury. Even assuming *arguendo*, for purposes of this opposition only, that the Defendants are correct that the Premises could not be used simultaneously as a residential duplex and as an area for beach parking, it is of no moment because the jury ultimately did not find that combination of uses to be the highest and best use of the property despite the Court's response to the jury's question. Rather, the jury instead found that the highest and best use of the Premises was as a residential duplex with beach front, and nothing more. This is the highest and best use that both parties must live with. Defendants' argument that the "excess" $350,000 translates into a use that must necessarily include parking flies completely in the face of the jury's explicit expression of the highest and best use. Indeed, the Defendants' argument requires that they believe that the jury has either misstated their answer to Special Verdict Question #1, or that, after days of hearing testimony about the possibility of parking on the Premises, the jury would fail to include it as part of their response to Question #1. As discussed *supra*, there is no basis in the record to support either theory. Thus, there is no basis to reduce the amount of damages, submit the matter for a new trial or amend the judgment.

**CONCLUSION**

For the foregoing reasons, this Court should <u>deny</u> Defendants' Motion for New Trial/Remittitur and/or Motion to Amend Judgment, and allow the jury's verdict and award of damages to stand at $1,550,000 (plus interest and costs as determined by this Court).

Date:  5/10/2007

Plaintiff,
BARBARA DEIGHTON HAUPT, Trustee
of BD REALTY TRUST,
By her attorneys,

   /s/ Kristen M. Ploetz_____
Jeffrey T. Angley, Esq.
B.B.O. #543958
Kristen M. Ploetz, Esq.
B.B.O. #654549
Phillips & Angley
One Bowdoin Square
Boston, MA 02114
(617) 367-8787

CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on this 10th day of May, 2007.

      /S/ Kristen M. Ploetz_____
Kristen M. Ploetz, Esq.

L:\Ditn002\opp.mot.new.trial.remittitur.final.doc